## SETTLEMENT STATEMENT

| | |
|---|---|
| **BORROWER:** | Key Therapeutics, LLC, a Delaware limited liability company 232 Market Street Building K Flowood, MS 39232 Attn: Robert W. Sims |
| **LENDER:** | The Citizens Bank of Philadelphia 301 West Main Street Carthage, MS 39501 Attn: Paula Brown |
| **GUARANTOR:** | Robert W. Sims 203 Winter Teal Court Madison, MS 39110 |
| **REAL PROPERTY GRANTOR:** | S-7 Properties, LLC, an Alabama limited liability company 232 Market Street Building K, Number 252 Flowood, MS 39232 Attn: Robert W. Sims |
| **REAL PROPERTY COLLATERAL:** | Unit 804, San Carlos Condominium, 365 E Beach Blvd., Gulf Shores, AL 36542 |
| **TRANSACTION:** | Renewal and extension of Loan No. 33113125 |
| **CLOSING DATE:** | June 6, 2025 |

### I.    Funds Due from Borrower and to Lender at Closing

| Due From Borrower | Description | Due To Lender |
|---|---|---|
| $46,519.84 | Interest | $46,519.84 |
| $17,812.50 | First Renewal Loan Interest Payment | $17,812.50 |
| $16.50 | Credit Report Fee | $16.50 |
| $450.00 | Documentation Fee | $450.00 |
| $5,000.00 | Origination Fee | $5,000.00 |
| $1,230.00 | Mortgage Tax | |
| $45.00 | Recording Fee (Mortgage) | |
| $19.00 | Recording Fee (Assignment of Rents) | |
| $10.00 | E-Recording Fee | |
| $50.00 | Filing Fee (Delaware UCC-1) | |
| $2,953.83 | Filing Fee (Tennessee UCC-1) | |
| $6,025.83 | 2024 Real Property Taxes (Real Property Collateral) | |
| $71.14 | 2024 Personal Property Taxes (Real Property Collateral) | |
| $150.00 | Title Search | |
| $1,026.00 | Title Insurance Premium | |
| $343.75 | Lender's Attorneys' Fees (Phelps Dunbar, L.L.P. Invoice 1418287) | |
| $27,500.00 | Lender's Estimated Attorneys' Fees (Phelps Dunbar, L.L.P.) | |
| $109,223.39 | Totals | $69,798.84 |

The Citizens Bank of Philadelphia
Key Therapeutics, LLC
Renewal Loan 33113125

PD.49519300.1

**EXHIBIT B**

| II. | **Funds into Closing** | |
|---|---|---|
| | From Borrower (see Section V below) | $109,223.39 |
| | Total Funds into Closing | $109,223.39 |

| III. | **Disbursements from Closing** | |
|---|---|---|
| | Interest to The Citizens Bank of Philadelphia | $46,519.84 |
| | First Renewal Loan Interest Payment to The Citizens Bank of Philadelphia | $17,812.50 |
| | Credit Report Fee to The Citizens Bank of Philadelphia | $16.50 |
| | Documentation Fee to The Citizens Bank of Philadelphia | $450.00 |
| | Origination Fee to The Citizens Bank of Philadelphia | $5,000.00 |
| | Mortgage Tax to Baldwin County, AL | $1,230.00 |
| | Recording Fee (Mortgage) to Phelps Dunbar, L.L.P. | $45.00 |
| | Recording Fee (Assignment of Rents) to Phelps Dunbar, L.L.P. | $19.00 |
| | E-Recording Fee to Phelps Dunbar, L.L.P. | $10.00 |
| | Filing Fee (Delaware UCC-1) to Phelps Dunbar, L.L.P. | $50.00 |
| | Filing Fee (Tennessee UCC-1) to Phelps Dunbar, L.L.P. | $2,953.83 |
| | 2024 Real Property Taxes (Real Property Collateral) to Baldwin County, AL | $6,025.83 |
| | 2024 Personal Property Taxes (Real Property Collateral) to Baldwin County, AL | $71.14 |
| | Title Search to Phelps Dunbar, L.L.P. | $150.00 |
| | Title Insurance Premium to Phelps Dunbar, L.L.P. | $1,026.00 |
| | Lender's Attorneys' Fees to Phelps Dunbar, L.L.P. (Invoice 1418287) | $343.75 |
| | Lender's Estimated Attorneys' Fees to Phelps Dunbar, L.L.P. | $27,500.00 |
| | Total Disbursements from Closing | $109,223.39 |

| IV. | **Amounts to be Handled and Paid Outside of Closing** |
|---|---|

Each party shall be responsible for all costs and expenses incurred by such party, and all such costs and expenses not included herein shall be paid by such responsible party outside of closing.

| V. | **Debit and Disbursement by Lender** |
|---|---|

Notwithstanding anything to the contrary contained herein, at Borrower's request and/or to the extent Borrower fails to deliver all funds due from Borrower at closing, Borrower hereby authorizes Lender to debit said funds from Borrower's and/or Guarantor's deposit accounts and thereafter disburse the funds in accordance herewith.

| VI. | **Accuracy of Closing Statement; Execution** |
|---|---|

Each party represents that, to the best of its knowledge, this Settlement Statement (as it applies to such party) is true, correct, and complete in all material respects. This Settlement Statement may be executed in one or more counterparts, each of which shall constitute an original. Scanned, emailed, and faxed copies of this Settlement Statement (and all signatures thereon) shall have the same force and effect as an original.

*[Signature page follows.]*

IN WITNESS WHEREOF, the undersigned parties have executed this Settlement Statement as of the Closing Date.

| BORROWER: | LENDER: |
|---|---|

**Key Therapeutics, LLC**

By:_____

Name: Robert W. Sims

Title: Member/Manager

**The Citizens Bank of Philadelphia**

By:_____

Name:_____

Title:_____

**GUARANTOR:**

_____

Robert W. Sims, individually

**REAL PROPERTY GRANTOR:**

**S-7 Properties, LLC**

By:_____

Name: Robert W. Sims

Title: Member/Manager

PD.49519300.1

[redacted]

# LIMITED LIABILITY COMPANY RESOLUTION TO BORROW / GRANT COLLATERAL

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,500,000.00 | 06-06-2025 | 06-06-2026 | [redacted]3125 | 1C2A / 3801 | *** | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

Company: KEY THERAPEUTICS, LLC
232 MARKET ST BUILDING K NUMBER 252
FLOWOOD, MS 39232

Lender: The Citizens Bank of Philadelphia
Carthage Branch
301 West Main Street
Carthage, MS 39051
(601) 267-4525

I, THE UNDERSIGNED, DO HEREBY CERTIFY THAT:

**THE COMPANY'S EXISTENCE.** The complete and correct name of the Company is KEY THERAPEUTICS, LLC ("Company"). The Company is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Delaware. The Company is duly authorized to transact business in the State of Mississippi and all other states in which the Company is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which the Company is doing business. Specifically, the Company is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. The Company has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. The Company maintains an office at 232 MARKET ST BUILDING K NUMBER 252, FLOWOOD, MS 39232. Unless the Company has designated otherwise in writing, the principal office is the office at which the Company keeps its books and records. The Company will notify Lender prior to any change in the location of the Company's state of organization or any change in the Company's name. The Company shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to the Company and the Company's business activities.

**RESOLUTIONS ADOPTED.** At a meeting of the members of the Company, duly called and held on **June 6, 2025**, at which a quorum was present and voting, or by other duly authorized action in lieu of a meeting, the resolutions set forth in this Resolution were adopted.

**MANAGER.** The following named person is a manager of KEY THERAPEUTICS, LLC:

| NAMES | TITLES | AUTHORIZED | ACTUAL SIGNATURES |
|---|---|---|---|
| ROBERT W. SIMS | Member/Manager | Y | X [signature] (Seal) |

**ACTIONS AUTHORIZED.** The authorized person listed above may enter into any agreements of any nature with Lender, and those agreements will bind the Company. Specifically, but without limitation, the authorized person is authorized, empowered, and directed to do the following for and on behalf of the Company:

**Borrow Money.** To borrow, as a cosigner or otherwise, from time to time from Lender, on such terms as may be agreed upon between the Company and Lender, such sum or sums of money as in his or her judgment should be borrowed, without limitation.

**Execute Notes.** To execute and deliver to Lender the promissory note or notes, or other evidence of the Company's credit accommodations, on Lender's forms, at such rates of interest and on such terms as may be agreed upon, evidencing the sums of money so borrowed or any of the Company's indebtedness to Lender, and also to execute and deliver to Lender one or more renewals, extensions, modifications, refinancings, consolidations, or substitutions for one or more of the notes, any portion of the notes, or any other evidence of credit accommodations.

**Grant Security.** To mortgage, pledge, transfer, endorse, hypothecate, or otherwise encumber and deliver to Lender any property now or hereafter belonging to the Company or in which the Company now or hereafter may have an interest, including without limitation all of the Company's real property and all of the Company's personal property (tangible or intangible), as security for the payment of any loans or credit accommodations so obtained, any promissory notes so executed (including any amendments to or modifications, renewals, and extensions of such promissory notes), or any other or further indebtedness of the Company to Lender at any time owing, however the same may be evidenced. Such property may be mortgaged, pledged, transferred, endorsed, hypothecated or encumbered at the time such loans are obtained or such indebtedness is incurred, or at any other time or times, and may be either in addition to or in lieu of any property theretofore mortgaged, pledged, transferred, endorsed, hypothecated or encumbered.

**Execute Security Documents.** To execute and deliver to Lender the forms of mortgage, deed of trust, pledge agreement, hypothecation agreement, and other security agreements and financing statements which Lender may require and which shall evidence the terms and conditions under and pursuant to which such liens and encumbrances, or any of them, are given; and also to execute and deliver to Lender any other written instruments, any chattel paper, or any other collateral, of any kind or nature, which Lender may deem necessary or proper in connection with or pertaining to the giving of the liens and encumbrances.

**Negotiate Items.** To draw, endorse, and discount with Lender all drafts, trade acceptances, promissory notes, or other evidences of indebtedness payable to or belonging to the Company or in which the Company may have an interest, and either to receive cash for the same or to cause such proceeds to be credited to the Company's account with Lender, or to cause such other disposition of the proceeds derived therefrom as he or she may deem advisable.

**Further Acts.** In the case of lines of credit, to designate additional or alternate individuals as being authorized to request advances under such lines, and in all cases, to do and perform such other acts and things, to pay any and all fees and costs, and to execute and deliver such other documents and agreements as the manager may in his or her discretion deem reasonably necessary or proper in order to carry into effect the provisions of this Resolution. The following person or persons are authorized to request advances and authorize payments under the line of credit until Lender receives from the Company, at Lender's address shown above, written notice of revocation of such authority: **ROBERT W. SIMS, Member/Manager of KEY THERAPEUTICS, LLC.**



## LIMITED LIABILITY COMPANY RESOLUTION TO BORROW / GRANT COLLATERAL

Loan No: ███3125                      (Continued)                              Page 2

**ASSUMED BUSINESS NAMES.** The Company has filed or recorded all documents or filings required by law relating to all assumed business names used by the Company. Excluding the name of the Company, the following is a complete list of all assumed business names under which the Company does business: **None.**

**NOTICES TO LENDER.** The Company will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (A) change in the Company's name; (B) change in the Company's assumed business name(s); (C) change in the management or in the Managers of the Company; (D) change in the authorized signer(s); (E) change in the Company's principal office address; (F) change in the Company's state of organization; (G) conversion of the Company to a new or different type of business entity; or (H) change in any other aspect of the Company that directly or indirectly relates to any agreements between the Company and Lender. No change in the Company's name or state of organization will take effect until after Lender has received notice.

**CERTIFICATION CONCERNING MANAGERS AND RESOLUTIONS.** The manager named above is duly elected, appointed, or employed by or for the Company, as the case may be, and occupies the position set opposite his or her respective name. This Resolution now stands of record on the books of the Company, is in full force and effect, and has not been modified or revoked in any manner whatsoever.

**CONTINUING VALIDITY.** Any and all acts authorized pursuant to this Resolution and performed prior to the passage of this Resolution are hereby ratified and approved. This Resolution shall be continuing, shall remain in full force and effect and Lender may rely on it until written notice of its revocation shall have been delivered to and received by Lender at Lender's address shown above (or such addresses as Lender may designate from time to time). Any such notice shall not affect any of the Company's agreements or commitments in effect at the time notice is given.

**IN TESTIMONY WHEREOF,** I have hereunto set my hand and attest that the signature set opposite the name listed above is his or her genuine signature.

I have read all the provisions of this Resolution, and I personally and on behalf of the Company certify that all statements and representations made in this Resolution are true and correct. This Limited Liability Company Resolution to Borrow / Grant Collateral is dated June 6, 2025.

THIS RESOLUTION IS DELIVERED UNDER SEAL AND IT IS INTENDED THAT THIS RESOLUTION IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

CERTIFIED TO AND ATTESTED BY:

X _____ (Seal)
ROBERT W. SIMS, Member/Manager of KEY THERAPEUTICS, LLC

NOTE: If the manager signing this Resolution is designated by the foregoing document as one of the managers authorized to act on the Company's behalf, it is advisable to have this Resolution signed by at least one non-authorized manager of the Company.

LaserPro, Ver. 25.1.20.003 Copr. Finastra USA Corporation 1997, 2025.  All Rights Reserved.  - DE-MS  C:\LPRO\CFI\LPL\C13.FC  TR:52652  PR:62



## LIMITED LIABILITY COMPANY RESOLUTION TO GRANT COLLATERAL

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,500,000.00 | 06-06-2025 | 06-06-2026 | ████3125 | 1C2A / 3801 | *** | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** KEY THERAPEUTICS, LLC
232 MARKET ST BUILDING K NUMBER 252
FLOWOOD, MS 39232

**Lender:** The Citizens Bank of Philadelphia
Carthage Branch
301 West Main Street
Carthage, MS 39051
(601) 267-4525

**Company:** S-7 Properties, LLC
232 Market St Ste K
Flowood, MS 39232-3339

---

**I, THE UNDERSIGNED, DO HEREBY CERTIFY THAT:**

**THE COMPANY'S EXISTENCE.** The complete and correct name of the Company is S-7 Properties, LLC ("Company"). The Company is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Alabama. The Company is duly authorized to transact business in the State of Mississippi and all other states in which the Company is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which the Company is doing business. Specifically, the Company is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. The Company has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. The Company maintains an office at 232 Market Street Building K, Number 252, Flowood, MS 39232-3339. Unless the Company has designated otherwise in writing, the principal office is the office at which the Company keeps its books and records. The Company will notify Lender prior to any change in the location of the Company's state of organization or any change in the Company's name. The Company shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to the Company and the Company's business activities.

**RESOLUTIONS ADOPTED.** At a meeting of the members of the Company, duly called and held on **June 6, 2025**, at which a quorum was present and voting, or by other duly authorized action in lieu of a meeting, the resolutions set forth in this Resolution were adopted.

**MANAGER.** The following named person is a manager of S-7 Properties, LLC :

| NAMES | TITLES | AUTHORIZED | ACTUAL SIGNATURES |
|---|---|---|---|
| Robert W. Sims | Sole Member/Managing Member | Y | X _____ (Seal) |

**ACTIONS AUTHORIZED.** The authorized person listed above may enter into any agreements of any nature with Lender, and those agreements will bind the Company. Specifically, but without limitation, the authorized person is authorized, empowered, and directed to do the following for and on behalf of the Company:

**Grant Security.** To mortgage, pledge, transfer, endorse, hypothecate, or otherwise encumber and deliver to Lender any property now or hereafter belonging to the Company or in which the Company now or hereafter may have an interest, including without limitation all of the Company's real property and all of the Company's personal property (tangible or intangible), as security for the payment of any loans, any promissory notes, or any other or further indebtedness of KEY THERAPEUTICS, LLC to Lender at any time owing, however the same may be evidenced. Such property may be mortgaged, pledged, transferred, endorsed, hypothecated or encumbered at the time such loans are obtained or such indebtedness is incurred, or at any other time or times, and may be either in addition to or in lieu of any property theretofore mortgaged, pledged, transferred, endorsed, hypothecated or encumbered. The provisions of this Resolution authorizing or relating to the pledge, mortgage, transfer, endorsement, hypothecation, granting of a security interest in, or in any way encumbering, the assets of the Company shall include, without limitation, doing so in order to lend collateral security for the indebtedness, now or hereafter existing, and of any nature whatsoever, of KEY THERAPEUTICS, LLC to Lender. The Company has considered the value to itself of lending collateral in support of such indebtedness, and the Company represents to Lender that the Company is benefited by doing so.

**Execute Security Documents.** To execute and deliver to Lender the forms of mortgage, deed of trust, pledge agreement, hypothecation agreement, and other security agreements and financing statements which Lender may require and which shall evidence the terms and conditions under and pursuant to which such liens and encumbrances, or any of them, are given; and also to execute and deliver to Lender any other written instruments, any chattel paper, or any other collateral, of any kind or nature, which Lender may deem necessary or proper in connection with or pertaining to the giving of the liens and encumbrances.

**Further Acts.** To do and perform such other acts and things and to execute and deliver such other documents and agreements as the manager may in his or her discretion deem reasonably necessary or proper in order to carry into effect the provisions of this Resolution.

**ASSUMED BUSINESS NAMES.** The Company has filed or recorded all documents or filings required by law relating to all assumed business names used by the Company. Excluding the name of the Company, the following is a complete list of all assumed business names under which the Company does business: **None.**

**NOTICES TO LENDER.** The Company will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (A) change in the Company's name; (B) change in the Company's assumed business name(s); (C) change in the management or in the Managers of the Company; (D) change in the authorized signer(s); (E) change in the Company's principal office address; (F) change in the Company's state of organization; (G) conversion of the Company to a new or different type of business entity; or (H) change in any other aspect of the Company that directly or indirectly relates to any agreements between the Company and Lender. No change in the Company's name or state of organization will take effect until after Lender has received notice.



## LIMITED LIABILITY COMPANY RESOLUTION TO GRANT COLLATERAL
Loan No: ▓▓3125      **(Continued)**      **Page 2**

**CERTIFICATION CONCERNING MANAGERS AND RESOLUTIONS.** The manager named above is duly elected, appointed, or employed by or for the Company, as the case may be, and occupies the position set opposite his or her respective name. This Resolution now stands of record on the books of the Company, is in full force and effect, and has not been modified or revoked in any manner whatsoever.

**CONTINUING VALIDITY.** Any and all acts authorized pursuant to this Resolution and performed prior to the passage of this Resolution are hereby ratified and approved. This Resolution shall be continuing, shall remain in full force and effect and Lender may rely on it until written notice of its revocation shall have been delivered to and received by Lender at Lender's address shown above (or such addresses as Lender may designate from time to time). Any such notice shall not affect any of the Company's agreements or commitments in effect at the time notice is given.

**IN TESTIMONY WHEREOF,** I have hereunto set my hand and attest that the signature set opposite the name listed above is his or her genuine signature.

I have read all the provisions of this Resolution, and I personally and on behalf of the Company certify that all statements and representations made in this Resolution are true and correct. This Limited Liability Company Resolution to Grant Collateral is dated June 6, 2025.

THIS RESOLUTION IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS RESOLUTION IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

CERTIFIED TO AND ATTESTED BY:

X_____(Seal)
    Robert W. Sims, Sole Member/Managing Member
    of S-7 Properties, LLC

NOTE: If the manager signing this Resolution is designated by the foregoing document as one of the managers authorized to act on the Company's behalf, it is advisable to have this Resolution signed by at least one non-authorized manager of the Company.

LaserPro, Ver. 25.1.20.003 Copr. Finastra USA Corporation 1997, 2025. All Rights Reserved. - AL/MS  C:\LPRO\CFI\LPL\C15.FC  TR-52602  PR-82



# BAR CODE COVER SHEET FOR MORTGAGE

This Bar Code Cover Sheet should be used for scanning and indexing the Mortgage on Unit 804 in the San Carlos Condominiums located at 365 E Beach Blvd., Gulf Shores, AL 36542 (Parcel: 66-05-21-2-000-161.000.94).

**Loan Number:** ███3125
**Borrower:** KEY THERAPEUTICS, LLC
**Grantor:** S-7 PROPERTIES, LLC
**Lender:** THE CITIZENS BANK OF PHILADELPHIA

**RECORDATION REQUESTED BY:**
The Citizens Bank of Philadelphia
Carthage Branch
301 West Main Street
Carthage, MS  39051

**WHEN RECORDED MAIL TO:**
The Citizens Bank of Philadelphia
Carthage Branch
301 West Main Street
Carthage, MS  39051

**SEND TAX NOTICES TO:**
S-7 Properties, LLC
232 Market St Ste K
Flowood, MS  39232-3339

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE ONLY

# MORTGAGE

**MAXIMUM LIEN.  The lien of this Mortgage shall not exceed at any one time $820,000.00.**

**THIS MORTGAGE dated June 6, 2025, is made and executed between S-7 Properties, LLC , whose address is 232 Market Street Building K, Number 252, Flowood, MS  39232-3339 (referred to below as "Grantor") and The Citizens Bank of Philadelphia, whose address is 301 West Main Street, Carthage, MS  39051 (referred to below as "Lender").**

**GRANT OF MORTGAGE.**  For valuable consideration, Grantor mortgages, grants, bargains, sells and conveys to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, **(the "Real Property") located in Baldwin County, State of Alabama:**

See Exhibit "A", which is attached to this Mortgage and made a part of this Mortgage as if fully set forth herein.

**The Real Property or its address is commonly known as  365 E Beach Blvd., Unit 804, Gulf Shores, AL  36542.**

**RENEWAL AND EXTENSION.  This Mortgage renews and extends the Mortgage recorded as Doc # 2120608 in the Office of the Judge of Probate of Baldwin County, Alabama.**

**THE REAL PROPERTY DESCRIBED ABOVE DOES NOT CONSTITUTE THE HOMESTEAD OF THE GRANTOR.**

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property.  In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (A)  PAYMENT OF THE INDEBTEDNESS AND  (B)  PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGAGE.  THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**GRANTOR'S WAIVERS.**  Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.**  Grantor warrants that:  (a) this Mortgage is executed at Borrower's request and not at the request of Lender;  (b) Grantor has the full power, right, and authority to enter into this Mortgage and to hypothecate the Property;  (c) the provisions of this Mortgage do not conflict with, or result in a default under any agreement or other instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or order applicable to Grantor;  (d) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and  (e) Lender has made no representation to Grantor about Borrower (including without limitation the creditworthiness of Borrower).

**PAYMENT AND PERFORMANCE.**  Except as otherwise provided in this Mortgage, Borrower shall pay to Lender all Indebtedness secured by this Mortgage as it becomes due, and Borrower and Grantor shall strictly perform all Borrower's and Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.**  Borrower and Grantor agree that Borrower's and Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.**  Until the occurrence of an Event of Default, Grantor may  (1)  remain in possession and control of the Property;  (2)  use, operate or manage the Property; and  (3)  collect the Rents from the Property.

**Duty to Maintain.**  Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.**  Grantor represents and warrants to Lender that:  (1)  During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property;  (2)  Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing,  (a)  any breach or violation of any Environmental Laws,

**MORTGAGE**
**(Continued)**

Loan No: ███3125

Page 2

(b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**No Prohibited Activities.** Grantor is not engaged in, and the Property shall not be used in connection with, any Prohibited Activities. Neither Borrower nor Grantor shall make any payments to Lender from funds derived from Prohibited Activities. Grantor will include in any agreement for the use, occupancy, or possession of the Property a provision expressly prohibiting any person using, occupying, or possessing the Property from engaging in or permitting others to engage in any Prohibited Activities on the Property. If Grantor becomes aware that any such person is likely engaged in or permitting Prohibited Activities on or at the Property, Grantor shall terminate the agreement and take all actions permitted by law to discontinue or cause the discontinuance of such Prohibited Activities. Borrower and Grantor shall keep Lender fully advised of actions and plans to comply with this section. Borrower and Grantor agree to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage. Notwithstanding any provision in this Mortgage or any Related Documents to the contrary, no direct or indirect disclosure to Lender and no knowledge of Lender of the existence of any Prohibited Activities shall estop Lender or waive any right of Lender to invoke any remedy under the Mortgage or any Related Documents for any Prohibited Activities.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any restructuring of the legal entity (whether by merger, division or otherwise) or any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Alabama law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue

**MORTGAGE**
**(Continued)**

as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of twenty (20) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain flood insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan. Flood insurance may be purchased under the National Flood Insurance Program, from private insurers providing "private flood insurance" as defined by applicable federal flood insurance statutes and regulations, or from another flood insurance provider that is both acceptable to Lender in its sole discretion and permitted by applicable federal flood insurance statutes and regulations.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of any Event of Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**MORTGAGE**

Loan No: ███3125

**(Continued)**

Page 4

---

**Survival of Representations and Warranties.**  All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**CONDEMNATION.**  The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.**  If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award.  Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.**  If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property.  The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.**  The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.**  Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property.  Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.**  The following shall constitute taxes to which this section applies:  (1)  a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage;  (2)  a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage;  (3)  a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and  (4)  a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

**Subsequent Taxes.**  If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either  (1)  pays the tax before it becomes delinquent, or  (2)  contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.**  The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.**  This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.**  Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property.  In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement.  Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest.  Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property.  Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.**  The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.**  The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.**  At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve  (1)  Borrower's and Grantor's obligations under the Note, this Mortgage, and the Related Documents, and  (2)  the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor.  Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.**  If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense.  For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.**  If Borrower and Grantor pay all the Indebtedness when due, and Grantor otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property.  Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.**  Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.**  Borrower fails to make any payment when due under the Indebtedness.

**Default on Other Payments.**  Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**MORTGAGE**

Loan No: ███3125                                    **(Continued)**                                    Page 5

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**Default in Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's ability to repay the Indebtedness or Borrower's or Grantor's ability to perform their respective obligations under this Mortgage or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Grantor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Borrower's or Grantor's existence as a going business or the death of any member, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Borrower or Grantor under the terms of any other agreement between Borrower or Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower or Grantor to Lender, whether existing now or later.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Borrower or Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty that Borrower would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Borrower or Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Nonjudicial Sale.** Lender shall be authorized to take possession of the Property and, with or without taking such possession, after giving notice of the time, place and terms of sale, together with a description of the Property to be sold, by publication once a week for three (3) successive weeks in some newspaper published in the county or counties in which the Real Property to be sold is located, to sell the Property (or such part or parts thereof as Lender may from time to time elect to sell) in front of the front or main door of the courthouse of the county in which the Property to be sold, or a substantial and material part thereof, is located, at public outcry, to the highest bidder for cash. If there is Real Property to be sold under this Mortgage in more than one county, publication shall be  made in all counties where the Real Property to be sold is located. If no newspaper is published in any county in which any Real Property to be sold is located, the notice shall be published in a newspaper published in an adjoining county for three (3) successive weeks. The sale shall be held between the hours of 11:00 a.m. and 4:00 p.m. on the day designated for the exercise of the power of sale under this Mortgage. Lender may bid at any sale had under the terms of this Mortgage and may purchase the Property if the highest bidder therefore. Grantor hereby waives any and all rights to have the Property marshalled. In exercising Lender's rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise

**MORTGAGE**

becomes entitled to possession of the Property upon default of Borrower or Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Borrower and Grantor hereby waive any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or Borrower and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law. With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Property, this Mortgage will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the State of Alabama. In all other respects, this Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Mississippi without regard to its conflicts of law provisions. However, if there ever is a question about whether any provision of this Mortgage is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Mortgage has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of Mississippi.**

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Grantor signing below is responsible for all obligations in this Mortgage. Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Mortgage.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**MORTGAGE**
**Loan No:** ███3125           **(Continued)**           **Page 7**

**Prohibited Activities.** Notwithstanding anything to the contrary in this Mortgage, neither Borrower nor Grantor shall be entitled to receive any notice of or right to cure an Event of Default related to any Prohibited Activities.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Alabama as to all Indebtedness secured by this Mortgage.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means KEY THERAPEUTICS, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means S-7 Properties, LLC .

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage.

**Lender.** The word "Lender" means The Citizens Bank of Philadelphia, its successors and assigns.

**Mortgage.** The word "Mortgage" means the Mortgage recorded as **Doc # 2120608** in the Office of the Judge of Probate of Baldwin County, Alabama as renewed and extended by this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated March 15, 2024 as renewed and extended by the promissory note dated June 6, 2025, **in the original principal amount of $2,500,000.00** from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Prohibited Activities.** The words "Prohibited Activities" mean any activity relating to the use, sale, possession, cultivation, manufacture, storage, distribution, or marketing of cannabis, marijuana, or marijuana-based products which constitutes in any manner a violation of any applicable federal, state, or local law or regulation, regardless of whether applicable conflicting law permits the same.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

| Loan No: ███3125 | MORGTAGE (Continued) | Page 8 |

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.

THIS MORTGAGE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS MORTGAGE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GRANTOR:

S-7 PROPERTIES, LLC

By: _____ (Seal)
Robert W. Sims, Sole Member/Managing Member of
S-7 Properties, LLC

This Mortgage prepared by:

Name:  Amy Pigg, Commercial Loan Processor
Address:  301 West Main Street
City, State, ZIP:  Carthage, MS 39051

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF _Mississippi_ )
) SS
COUNTY OF _Rankin_ )

I, the undersigned authority, a Notary Public in and for said county in said state, hereby certify that **Robert W. Sims, Sole Member/Managing Member of S-7 Properties, LLC ,** a limited liability company, is signed to the foregoing Mortgage and who is known to me, acknowledged before me on this day that, being informed of the contents of said Mortgage, he or she, as such member and with full authority, executed the same voluntarily for and as the act of said limited liability company.

Given under my hand and official seal this ___3rd___ day of ___July___, 20_25_.

_____
Notary Public

My commission expires _____

[Notary seal: STATE OF MISSISSIPPI NOTARY PUBLIC ID# 102360 NATALIE BANFIELD Commission Expires May 24, 2028 MADISON COUNTY]

**Exhibit "A"**

Unit 804, of San Carlos, a condominium, according to that certain Declaration and all exhibits attached thereto, including the By-Laws, dated August 25, 2006, and recorded August 30, 2006 at Instrument 997847, and being more particularly described and defined by Architect's Certification Drawings filed in Apartment Book 24, Page 204, et seq., of the records in the Office of the Judge of Probate of Baldwin County, Alabama, TOGETHER WITH the appropriate undivided interest in the common areas and facilities declared in said Declaration to be appurtenant to the above described unit.

**Form W-9**
(Rev. March 2024)
Department of the Treasury
Internal Revenue Service

# Request for Taxpayer
## Identification Number and Certification

▶ Go to www.irs.gov/FormW9 for instructions and the latest information.

**Give form to the requester. Do not send to the IRS.**

**Before you begin.** For guidance related to the purpose of Form W-9, see **Purpose of Form**, below.

Print or type.

See Specific Instructions on page 3.

**1** Name of entity/individual. An entry is required. (For a sole proprietor or disregarded entity, enter the owner's name on line 1, and enter the business/disregarded entity's name on line 2.)

ROBERT W. SIMS

**2** Business name/disregarded entity name, if different from above.

**3a** Check the appropriate box for federal tax classification of the entity/individual whose name is entered on line 1. Check only one of the following seven boxes.

☒ Individual/sole proprietor   ☐ C corporation   ☐ S corporation   ☐ Partnership   ☐ Trust/estate

☐ LLC. Enter the tax classification (C = C corporation, S = S corporation, P = Partnership)  .  .  .  .  _____

Note: Check the "LLC" box above and, in the entry space, enter the appropriate code (C, S, or P) for the tax classification of the LLC, unless it is a disregarded entity. A disregarded entity should instead check the appropriate box for the tax classification of its owner.

☐ Other (see instructions) _____

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from Foreign Account Tax Compliance Act (FATCA) reporting code (if any) _____

**3b** If on line 3a you checked "Partnership" or "Trust/estate," or checked "LLC" and entered "P" as its tax classification, and you are providing this form to a partnership, trust, or estate in which you have an ownership interest, check this box if you have any foreign partners, owners, or beneficiaries. See Instructions  .  .  .  .  .  .  .  .  .  .  .  .  .  .  ☐

(Applies to accounts maintained outside the United States.)

**5** Address (number, street, and apt. or suite no.) See instructions.

203 WINTER TEAL CT

**6** City, state, and ZIP code

MADISON, MS  39110

Requester's name and address (optional)
The Citizens Bank of Philadelphia
Carthage Branch
301 West Main Street
Carthage, MS  39051

**7** List account number(s) here (optional)

███3125

## Part I   Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the instructions for Part I, later. For other entities, it is your employer identification number (EIN). If you do not have a number, see **How to get a TIN**, later.

**Note:** If the account is in more than one name, see the instructions for line 1. See also **What Name and Number To Give the Requester** for guidelines on whose number to enter.

Social security number
███-██-4029

or

Employer identification number

## Part II   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and
2. I am not subject to backup withholding because (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3. I am a U.S. citizen or other U.S. person (defined below); and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and, generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions for Part II, later.

Sign Here | Signature of U.S. person ▶ *[signature]* | Date  7/3/2025

# General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** For the latest information about developments related to Form W-9 and its instructions, such as legislation enacted after they were published, go to www.irs.gov/FormW9.

## What's New

Line 3a has been modified to clarify how a disregarded entity completes this line. An LLC that is a disregarded entity should check the appropriate box for the tax classification of its owner. Otherwise, it should check the "LLC" box and enter its appropriate tax classification.

New line 3b has been added to this form. A flow-through entity is required to complete this line to indicate that it has direct or indirect foreign partners, owners, or beneficiaries

when it provides the Form W-9 to another flow-through entity in which it has an ownership interest. This change is intended to provide a flow-through entity with information regarding the status of its indirect foreign partners, owners, or beneficiaries, so that it can satisfy any applicable reporting requirements. For example, a partnership that has any indirect foreign partners may be required to complete Schedules K-2 and K-3. See the Partnership Instructions for Schedules K-2 and K-3 (Form 1065).

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS is giving you this form because they must obtain your correct taxpayer identification number (TIN), which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return.

Cat. No. 10231X   Form **W-9** (Rev. 3-2024)

Examples of information returns include, but are not limited to, the following.

• Form 1099-INT (interest earned or paid).

• Form 1099-DIV (dividends, including those from stocks or mutual funds).

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds).

• Form 1099-NEC (nonemployee compensation).

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers).

• Form 1099-S (proceeds from real estate transactions).

• Form 1099-K (merchant card and third-party network transactions).

• Form 1098 (home mortgage interest), 1098-E (student loan interest), and 1098-T (tuition).

• Form 1099-C (canceled debt).

• Form 1099-A (acquisition or abandonment of secured property).

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

**Caution:** If you don't return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See **What is backup withholding**, later.

**By signing the filled-out form, you:**

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued);

2. Certify that you are not subject to backup withholding; or

3. Claim exemption from backup withholding if you are a U.S. exempt payee; and

4. Certify to your non-foreign status for purposes of withholding under chapter 3 or 4 of the Code (if applicable); and

5. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting is correct. See **What is FATCA Reporting**, later, for further information.

**Note:** If you are a U.S. person and a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

• An individual who is a U.S. citizen or U.S. resident alien;
• A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States;
• An estate (other than a foreign estate); or
• A domestic trust (as defined in Regulations section 301.7701-7).

**Establishing U.S. for purposes of chapter 3 and chapter 4 withholding.** Payments made to foreign persons, including certain distributions, allocations of income, or transfers of sales proceeds, may be subject to withholding under chapter 3 or chapter 4 of the Code (sections 1441-1474). Under those rules, if a Form W-9 or other certification of non-foreign status has not been received, a withholding agent, transferee, or partnership (payor) generally applies presumption rules that may require the payor to withhold applicable tax from the recipient, owner, transferor, or partner (payee). See Pub. 515, Withholding of Tax on Nonresident Aliens and Foreign Entities.

The following persons must provide Form W-9 to the payor for purposes of establishing its non-foreign status.

• In the case of a disregarded entity with a U.S. owner, the U.S. owner of the disregarded entity and not the disregarded entity.

• In the case of a grantor trust with a U.S. grantor or other U.S. owner, generally, the U.S. grantor or other U.S. owner of the grantor trust and not the grantor trust.

• In the case of a U.S. trust (other than a grantor trust), the U.S. trust and not the beneficiaries of the trust.

See Pub. 515 for more information on providing a Form W-9 or a certification of non-foreign status to avoid withholding.

**Foreign person.** If you are a foreign person or the U.S. branch of a foreign bank that has elected to be treated as a U.S. person (under Regulations section 1.1441-1(b)(2)(iv) or other applicable section for chapter 3 or 4 purposes), do not use Form W-9. Instead, use the appropriate Form W-8 or Form 8233 (see Pub. 515). If you are a qualified foreign pension fund under Regulations section 1.897(l)-1(d), or a partnership that is wholly owned by qualified foreign pension funds, that is treated as a non-foreign person for purposes of section 1445 withholding, do not use Form W-9. Instead, use Form W-8EXP (or other certification of non-foreign status).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a saving clause. Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the payee has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement to Form W-9 that specifies the following five items.

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.
2. The treaty article addressing the income.
3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.
4. The type and amount of income that qualifies for the exemption from tax.
5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

Example. Article 20 of the U.S.-China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if their stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S.-China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exception (under paragraph 2 of the first Protocol) and is relying on this exception to claim an exemption from tax on their scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption.

If you are a nonresident alien or a foreign entity, give the requester the appropriate completed Form W-8 or Form 8233.

## Backup Withholding

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS 24% of such payments. This is called "backup withholding." Payments that may be subject to backup withholding include, but are not limited to, interest, tax-exempt interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, payments made in settlement of payment card and third-party network transactions, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make

the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester;

2. You do not certify your TIN when required (see the instructions for Part II for details);

3. The IRS tells the requester that you furnished an incorrect TIN;

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only); or

5. You do not certify to the requester that you are not subject to backup withholding, as described in item 4 under **"By signing the filled-out form"** above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See **Exempt payee code,** later, and the separate Instructions for the Requester of Form W-9 for more information.

See also **Establishing U.S. status for purposes of chapter 3 and chapter 4 withholding,** earlier.

## What is FATCA Reporting?

The Foreign Account Tax Compliance Act (FATCA) requires a participating foreign financial institution to report all U.S. account holders that are specified U.S. persons. Certain payees are exempt from FATCA reporting. See **Exemption from FATCA reporting code,** later, and the Instructions for the Requester of Form W-9 for more information.

## Updating Your Information

You must provide updated information to any person to whom you claimed to be an exempt payee if you are no longer an exempt payee and anticipate receiving reportable payments in the future from this person. For example, you may need to provide updated information if you are a C corporation that elects to be an S corporation, or if you are no longer tax exempt. In addition, you must furnish a new Form W-9 if the name or TIN changes for the account, for example, if the grantor of a grantor trust dies.

## Penalties

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of federal law, the requester may be subject to civil and criminal penalties.

## Specific Instructions
### Line 1

You must enter one of the following on this line; **do not leave this line blank.** The name should match the name on your tax return.

If this Form W-9 is for a joint account (other than an account maintained by a foreign financial institution (FFI)), list first, and then circle, the name of the person or entity whose number you entered in Part I of Form W-9. If you are providing Form W-9 to an FFI to document a joint account, each holder of the account that is a U.S. person must provide a Form W-9.

• **Individual.** Generally, enter the name shown on your tax return. If you have changed your last name without informing the Social Security Administration (SSA) of the name change, enter your first name, the last name as shown on your social security card, and your new last name.

**Note for ITIN applicant:** Enter your individual name as it was entered on your Form W-7 application, line 1a. This should also be the same as the name you entered on the Form 1040 you filed with your application.

• **Sole proprietor.** Enter your individual name as shown on your Form 1040 on line 1. Enter your business, trade, or "doing business as" (DBA) name on line 2.

• **Partnership, C corporation, S corporation, or LLC, other than a disregarded entity.** Enter the entity's name as shown on the entity's tax return on line 1 and any business, trade, or DBA name on line 2.

• **Other entities.** Enter your name as shown on required U.S. federal tax documents on line 1. This name should match the name shown on the charter or other legal document creating the entity. Enter any business, trade, or DBA name on line 2.

• **Disregarded entity.** In general, a business entity that has a single owner, including an LLC, and is not a corporation, is disregarded as an entity separate from its owner (a disregarded entity). See Regulations section 301.7701-2(c)(2). A disregarded entity should check the appropriate box for the tax classification of its owner. Enter the owner's name on line 1. The name of the owner entered on line 1 should never be a disregarded entity. The name on line 1 should be the name shown on the income tax return on which the income should be reported. For example, if a foreign LLC that is treated as a disregarded entity for U.S. federal tax purposes has a single owner that is a U.S. person, the U.S. owner's name is required to be provided on line 1. If the direct owner of the entity is also a disregarded entity, enter the first owner that is not disregarded for federal tax purposes. Enter the disregarded entity's name on line 2. If the owner of the disregarded entity is a foreign person, the owner must complete an appropriate Form W-8 instead of a Form W-9. This is the case even if the foreign person has a U.S. TIN.

### Line 2

If you have a business name, trade name, DBA name, or disregarded entity name, enter it on line 2.

### Line 3a

Check the appropriate box on line 3a for the U.S. federal tax classification of the person whose name is entered on line 1. Check only one box on line 3a.

| IF the entity/individual on line 1 is a(n) . . . | THEN check the box for . . . |
|---|---|
| • Corporation | Corporation. |
| • Individual or<br>• Sole proprietorship | Individual/sole proprietor. |
| • LLC classified as a partnership for U.S. federal tax purposes or<br>• LLC that has filed Form 8832 or 2553 electing to be taxed as a corporation. | Limited liability company and enter the appropriate tax classification:<br>P = Partnership,<br>C = C corporation, or<br>S = S corporation. |
| • Partnership | Partnership. |
| • Trust/estate | Trust/estate. |

### Line 3b

Check this box if you are a partnership (including an LLC classified as a partnership for U.S. federal tax purposes), trust, or estate that has any foreign partners, owners, or beneficiaries, and you are providing this form to a partnership, trust, or estate, in which you have an ownership interest. You must check the box on line 3b if you receive a Form W-8 (or documentary evidence) from any partner, owner, or beneficiary establishing foreign status or if you receive a Form W-9 from any partner, owner, or beneficiary that has checked the box on

Form W-9 (Rev. 3-2024) Page **4**

line 3b.

**Note:** A partnership that provides a Form W-9 and checks box 3b may be required to complete Schedules K-2 and K-3 (Form 1065). For more information, see the Partnership Instructions for Schedules K-2 and K-3 (Form 1065).

If your are required to complete line 3b but fail to do so, you may not receive the information necessary to file a correct information return with the IRS or furnish a correct payee statement to your partners or beneficiaries. See, for example, sections 6698, 6722, and 6724 for penalties that may apply.

## Line 4 Exemptions

If you are exempt from backup withholding and/or FATCA reporting, enter in the appropriate space on line 4 any code(s) that may apply to you.

**Exempt payee code.**

• Generally, individuals (including sole proprietors) are not exempt from backup withholding.

• Except as provided below, corporations are exempt from backup withholding for certain payments, including interest and dividends.

• Corporations are not exempt from backup withholding for payments made in settlement of payment card or third-party network transactions.

• Corporations are not exempt from backup withholding with respect to attorneys' fees or gross proceeds paid to attorneys, and corporations that provide medical or health care services are not exempt with respect to payments reportable on Form 1099-MISC.

The following codes identify payees that are exempt from backup withholding. Enter the appropriate code in the space on line 4.

1—An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2).

2—The United States or any of its agencies or instrumentalities.

3—A state, the District of Columbia, a U.S. commonwealth or territory, or any of their political subdivisions or instrumentalities.

4—A foreign government or any of its political subdivisions, agencies, or instrumentalities.

5—A corporation.

6—A dealer in securities or commodities required to register in the United States, the District of Columbia, or a U.S. commonwealth or territory.

7—A futures commission merchant registered with the Commodity Futures Trading Commission.

8—A real estate investment trust.

9—An entity registered at all times during the tax year under the Investment Company Act of 1940.

10—A common trust fund operated by a bank under section 584(a).

11—A financial institution as defined under section 581.

12—A middleman known in the investment community as a nominee or custodian.

13—A trust exempt from tax under section 664 or described in section 4947.

The following chart shows types of payments that may be exempt from backup withholding. The chart applies to the exempt payees listed above, 1 through 13.

| IF the payment is for . . . | THEN the payment is exempt for . . . |
| --- | --- |
| • Interest and dividend payments | All exempt payees except for 7. |
| • Broker transactions | Exempt payees 1 through 4 and 6 through 11 and all C corporations. S corporations must not enter an exempt payee code because they are exempt only for sales of noncovered securities acquired prior to 2012. |
| • Barter exchange transactions and patronage dividends | Exempt payees 1 through 4. |
| • Payments over $600 required to be reported and direct sales over $5,000[1] | Generally, exempt payees 1 through 5.[2] |
| • Payments made in settlement of payment card or third-party network transactions | Exempt payees 1 through 4. |

[1] See Form 1099-MISC, Miscellaneous Information, and its instructions.
[2] However, the following payments made to a corporation and reportable on Form 1099-MISC are not exempt from backup withholding: medical and health care payments, attorneys' fees, gross proceeds paid to an attorney reportable under section 6045(f), and payments for services paid by a federal executive agency.

**Exemption from FATCA reporting code.** The following codes identify payees that are exempt from reporting under FATCA. These codes apply to persons submitting this form for accounts maintained outside of the United States by certain foreign financial institutions. Therefore, if you are only submitting this form for an account you hold in the United States, you may leave this field blank. Consult with the person requesting this form if you are uncertain if the financial institution is subject to these requirements. A requester may indicate that a code is not required by providing you with a Form W-9 with "Not Applicable" (or any similar indication) entered on the line for a FATCA exemption code.

A—An organization exempt from tax under section 501(a) or any individual retirement plan as defined in section 7701(a)(37).

B—The United States or any of its agencies or instrumentalities.

C—A state, the District of Columbia, a U.S. commonwealth or territory, or any of their political subdivisions or instrumentalities.

D—A corporation the stock of which is regularly traded on one or more established securities markets, as described in Regulations section 1.1472-1(c)(1)(i).

E—A corporation that is a member of the same expanded affiliated group as a corporation described in Regulations section 1.1472-1(c)(1)(i).

F—A dealer in securities, commodities, or derivative financial instruments (including notional principal contracts, futures, forwards, and options) that is registered as such under the laws of the United States or any state.

G—A real estate investment trust.

H—A regulated investment company as defined in section 851 or an entity registered at all times during the tax year under the Investment Company Act of 1940.

I—A common trust fund as defined in section 584(a).

J—A bank as defined in section 581.

K—A broker.

L—A trust exempt from tax under section 664 or described in section 4947(a)(1).

M—A tax-exempt trust under a section 403(b) plan or section 457(g) plan.

Note: You may wish to consult with the financial institution requesting this form to determine whether the FATCA code and/or exempt payee code should be completed.

## Line 5

Enter your address (number, street, and apartment or suite number). This is where the requester of this Form W-9 will mail your information returns. If this address differs from the one the requester already has on file, enter "NEW" at the top. If a new address is provided, there is still a chance the old address will be used until the payor changes your address in their records.

## Line 6

Enter your city, state, and ZIP code.

## Part I. Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. If you are a resident alien and you do not have, and are not eligible to get, an SSN, your TIN is your IRS ITIN. Enter it in the entry space for the Social security number. If you do not have an ITIN, see How to get a TIN below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN.

If you are a single-member LLC that is disregarded as an entity separate from its owner, enter the owner's SSN (or EIN, if the owner has one). If the LLC is classified as a corporation or partnership, enter the entity's EIN.

Note: See What Name and Number To Give the Requester, later, for further clarification of name and TIN combinations.

How to get a TIN. If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local SSA office or get this form online at www.SSA.gov. You may also get this form by calling 800-772-1213. Use Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can apply for an EIN online by accessing the IRS website at www.irs.gov/EIN. Go to www.irs.gov/Forms to view, download, or print Form W-7 and/or Form SS-4. Or, you can go to www.irs.gov/OrderForms to place an order and have Form W-7 and/or Form SS-4 mailed to you within 15 business days.

If you are asked to complete Form W-9 but do not have a TIN, apply for a TIN and enter "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, you will generally have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

Note: Entering "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon. See also Establishing U.S. status for purposes of chapter 3 and chapter 4 withholding, earlier, for when you may instead be subject to withholding under chapter 3 or 4 of the Code.

Caution: A disregarded U.S. entity that has a foreign owner must use the appropriate Form W-8.

## Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if item 1, 4, or 5 below indicates otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). In the case of a disregarded entity, the person identified on line 1 must sign. Exempt payees, see Exempt payee code, earlier.

Signature requirements. Complete the certification as indicated in items 1 through 5 below.

1. Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983. You must give your correct TIN, but you do not have to sign the certification.

2. Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983. You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

3. Real estate transactions. You must sign the certification. You may cross out item 2 of the certification.

4. Other payments. You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments made in settlement of payment card and third-party network transactions, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

5. Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), ABLE accounts (under section 529A), IRA, Coverdell ESA, Archer MSA or HSA contributions or distributions, and pension distributions. You must give your correct TIN, but you do not have to sign the certification.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) other than an account maintained by an FFI | The actual owner of the account or, if combined funds, the first individual on the account [1] |
| 3. Two or more U.S. persons (joint account maintained by an FFI) | Each holder of the account |
| 4. Custodial account of a minor (Uniform Gift to Minors Act) | The minor [2] |
| 5. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee [1] |
| b. So-called trust account that is not a legal or valid trust under state law | The actual owner [1] |
| 6. Sole proprietorship or disregarded entity owned by an individual | The owner [3] |
| 7. Grantor trust filing under Optional Filing Method 1 (see Regulations section 1.671-4(b)(2)(i)(A))** | The grantor * |

Form W-9 (Rev. 3-2024)                                                                                                    Page **6**

| For this type of account: | Give name and EIN of: |
|---|---|
| 8. Disregarded entity not owned by an individual | The owner |
| 9. A valid trust, estate, or pension trust | Legal entity [4] |
| 10. Corporation or LLC electing corporate status on Form 8832 or Form 2553 | The corporation |
| 11. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 12. Partnership or multi-member LLC | The partnership |
| 13. A broker or registered nominee | The broker or nominee |
| 14. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |
| 15. Grantor trust filing Form 1041 or under the Optional Filing Method 2, requiring Form 1099 (see Regulations section 1.671-4(b)(2)(i)(B))[**] | The trust |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name on line 1, and enter your business or DBA name, if any, on line 2. You may use either your SSN or EIN (if you have one), but the IRS encourages you to use your SSN.

[4] List first and circle the name of the trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.)

*Note: The grantor must also provide a Form W-9 to the trustee of the trust.

**For more information on optional filing methods for grantor trusts, see the Instructions for Form 1041.

Note: If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.

## Secure Your Tax Records from Identity Theft

Identity theft occurs when someone uses your personal information, such as your name, SSN, or other identifying information, without your permission to commit fraud or other crimes. An identity thief may use your SSN to get a job or may file a tax return using your SSN to receive a refund.

To reduce your risk:

• Protect your SSN,

• Ensure your employer is protecting your SSN, and

• Be careful when choosing a tax return preparer.

If your tax records are affected by identity theft and you receive a notice from the IRS, respond right away to the name and phone number printed on the IRS notice or letter.

If your tax records are not currently affected by identity theft but you think you are at risk due to a lost or stolen purse or wallet, questionable credit card activity, or a questionable credit report, contact the IRS Identity Theft Hotline at 800-908-4490 or submit Form 14039.

For more information, see Pub. 5027, Identity Theft Information for Taxpayers.

Victims of identity theft who are experiencing economic harm or a systemic problem, or are seeking help in resolving tax problems that have not been resolved through normal channels, may be eligible for Taxpayer Advocate Service (TAS) assistance. You can reach TAS by calling the TAS toll-free case intake line at 877-777-4778 or TTY/TDD 800-829-4059.

**Protect yourself from suspicious emails or phishing schemes.** Phishing is the creation and use of email and websites designed to mimic legitimate business emails and websites. The most common act is sending an email to a user falsely claiming to be an established legitimate enterprise in an attempt to scam the user into surrendering private information that will be used for identity theft.

The IRS does not initiate contacts with taxpayers via emails. Also, the IRS does not request personal detailed information through email or ask taxpayers for the PIN numbers, passwords, or similar secret access information for their credit card, bank, or other financial accounts.

If you receive an unsolicited email claiming to be from the IRS, forward this message to phishing@irs.gov. You may also report misuse of the IRS name, logo, or other IRS property to the Treasury Inspector General for Tax Administration (TIGTA) at 800-366-4484. You can forward suspicious emails to the Federal Trade Commission at spam@uce.gov or report them at www.ftc.gov/complaint. You can contact the FTC at www.ftc.gov/idtheft or 877-IDTHEFT (877-438-4338). If you have been the victim of identity theft, see www.IdentityTheft.gov and Pub. 5027.

Go to www.irs.gov/IdentityTheft to learn more about identity theft and how to reduce your risk.

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons (including federal agencies) who are required to file information returns with the IRS to report interest, dividends, or certain other income paid to you; mortgage interest you paid; the acquisition or abandonment of secured property; the cancellation of debt; or contributions you made to an IRA, Archer MSA, or HSA. The person collecting this form uses the information on the form to file information returns with the IRS, reporting the above information. Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation and to cities, states, the District of Columbia, and U.S. commonwealths and territories for use in administering their laws. The information may also be disclosed to other countries under a treaty, to federal and state agencies to enforce civil and criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism. You must provide your TIN whether or not you are required to file a tax return. Under section 3406, payors must generally withhold a percentage of taxable interest, dividends, and certain other payments to a payee who does not give a TIN to the payor. Certain penalties may also apply for providing false or fraudulent information.

| Form **W-9**<br>(Rev. March 2024)<br>Department of the Treasury<br>Internal Revenue Service | **Request for Taxpayer**<br>**Identification Number and Certification**<br>▶ Go to www.irs.gov/FormW9 for instructions and the latest information. | **Give form to the<br>requester. Do not<br>send to the IRS.** |
|---|---|---|

**Before you begin.** For guidance related to the purpose of Form W-9, see **Purpose of Form,** below.

Print or type.

See Specific Instructions on page 3.

**1** Name of entity/individual. An entry is required. (For a sole proprietor or disregarded entity, enter the owner's name on line 1, and enter the business/disregarded entity's name on line 2.)

KEY THERAPEUTICS, LLC

**2** Business name/disregarded entity name, if different from above.

**3a** Check the appropriate box for federal tax classification of the entity/individual whose name is entered on line 1. Check only one of the following seven boxes.

☐ Individual/sole proprietor   ☐ C corporation   ☐ S corporation   ☐ Partnership   ☐ Trust/estate

☒ LLC. Enter the tax classification (C = C corporation, S = S corporation, P = Partnership) . . . . _____

Note: Check the "LLC" box above and, in the entry space, enter the appropriate code (C, S, or P) for the tax classification of the LLC, unless it is a disregarded entity. A disregarded entity should instead check the appropriate box for the tax classification of its owner.

☐ Other (see instructions) _____

**3b** If on line 3a you checked "Partnership" or "Trust/estate," or checked "LLC" and entered "P" as its tax classification, and you are providing this form to a partnership, trust, or estate in which you have an ownership interest, check this box if you have any foreign partners, owners, or beneficiaries. See Instructions . . . . . . . . . . . . . . ☐

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from Foreign Account Tax Compliance Act (FATCA) reporting code (if any) _____

(Applies to accounts maintained outside the United States.)

**5** Address (number, street, and apt. or suite no.) See instructions.

232 MARKET ST BUILDING K NUMBER 252

**6** City, state, and ZIP code

FLOWOOD, MS  39232

Requester's name and address (optional)
The Citizens Bank of Philadelphia
Carthage Branch
301 West Main Street
Carthage, MS  39051

**7** List account number(s) here (optional)

████3125

## Part I  Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the instructions for Part I, later. For other entities, it is your employer identification number (EIN). If you do not have a number, see **How to get a TIN,** later.

**Note:** If the account is in more than one name, see the instructions for line 1. See also **What Name and Number To Give the Requester** for guidelines on whose number to enter.

| Social security number |
|---|
| |

or

| Employer identification number |
|---|
| ████1238 |

## Part II  Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and
2. I am not subject to backup withholding because (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3. I am a U.S. citizen or other U.S. person (defined below); and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and, generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions for Part II, later.

| Sign<br>Here | Signature of<br>U.S. person | *[signature]* | Date | 7/3/2025 |
|---|---|---|---|---|

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** For the latest information about developments related to Form W-9 and its instructions, such as legislation enacted after they were published, go to www.irs.gov/FormW9.

## What's New

Line 3a has been modified to clarify how a disregarded entity completes this line. An LLC that is a disregarded entity should check the appropriate box for the tax classification of its owner. Otherwise, it should check the "LLC" box and enter its appropriate tax classification.

New line 3b has been added to this form. A flow-through entity is required to complete this line to indicate that it has direct or indirect foreign partners, owners, or beneficiaries

when it provides the Form W-9 to another flow-through entity in which it has an ownership interest. This change is intended to provide a flow-through entity with information regarding the status of its indirect foreign partners, owners, or beneficiaries, so that it can satisfy any applicable reporting requirements. For example, a partnership that has any indirect foreign partners may be required to complete Schedules K-2 and K-3. See the Partnership Instructions for Schedules K-2 and K-3 (Form 1065).

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS is giving you this form because they must obtain your correct taxpayer identification number (TIN), which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return.

Cat. No. 10231X                        Form **W-9** (Rev. 3-2024)

Form W-9 (Rev. 3-2024)                                                                                                          Page 2

Examples of information returns include, but are not limited to, the following.

• Form 1099-INT (interest earned or paid).

• Form 1099-DIV (dividends, including those from stocks or mutual funds).

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds).

• Form 1099-NEC (nonemployee compensation).

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers).

• Form 1099-S (proceeds from real estate transactions).

• Form 1099-K (merchant card and third-party network transactions).

• Form 1098 (home mortgage interest), 1098-E (student loan interest), and 1098-T (tuition).

• Form 1099-C (canceled debt).

• Form 1099-A (acquisition or abandonment of secured property).

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

Caution: If you don't return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See **What is backup withholding**, later.

**By signing the filled-out form, you:**

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued);

2. Certify that you are not subject to backup withholding; or

3. Claim exemption from backup withholding if you are a U.S. exempt payee; and

4. Certify to your non-foreign status for purposes of withholding under chapter 3 or 4 of the Code (if applicable); and

5. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting is correct. See **What is FATCA Reporting**, later, for further information.

**Note:** If you are a U.S. person and a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

• An individual who is a U.S. citizen or U.S. resident alien;
• A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States;
• An estate (other than a foreign estate); or
• A domestic trust (as defined in Regulations section 301.7701-7).

**Establishing U.S. for purposes of chapter 3 and chapter 4 withholding.** Payments made to foreign persons, including certain distributions, allocations of income, or transfers of sales proceeds, may be subject to withholding under chapter 3 or chapter 4 of the Code (sections 1441-1474). Under those rules, if a Form W-9 or other certification of non-foreign status has not been received, a withholding agent, transferee, or partnership (payor) generally applies presumption rules that may require the payor to withhold applicable tax from the recipient, owner, transferor, or partner (payee). See Pub. 515, Withholding of Tax on Nonresident Aliens and Foreign Entities.

The following persons must provide Form W-9 to the payor for purposes of establishing its non-foreign status.

• In the case of a disregarded entity with a U.S. owner, the U.S. owner of the disregarded entity and not the disregarded entity.

• In the case of a grantor trust with a U.S. grantor or other U.S. owner, generally, the U.S. grantor or other U.S. owner of the grantor trust and not the grantor trust.

• In the case of a U.S. trust (other than a grantor trust), the U.S. trust and not the beneficiaries of the trust.

See Pub. 515 for more information on providing a Form W-9 or a certification of non-foreign status to avoid withholding.

**Foreign person.** If you are a foreign person or the U.S. branch of a foreign bank that has elected to be treated as a U.S. person (under Regulations section 1.1441-1(b)(2)(iv) or other applicable section for chapter 3 or 4 purposes), do not use Form W-9. Instead, use the appropriate Form W-8 or Form 8233 (see Pub. 515). If you are a qualified foreign pension fund under Regulations section 1.897(l)-1(d), or a partnership that is wholly owned by qualified foreign pension funds, that is treated as a non-foreign person for purposes of section 1445 withholding, do not use Form W-9. Instead, use Form W-8EXP (or other certification of non-foreign status).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a saving clause. Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the payee has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement to Form W-9 that specifies the following five items.

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.
2. The treaty article addressing the income.
3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.
4. The type and amount of income that qualifies for the exemption from tax.
5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

Example. Article 20 of the U.S.-China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if their stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S.-China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exception (under paragraph 2 of the first Protocol) and is relying on this exception to claim an exemption from tax on their scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption.

If you are a nonresident alien or a foreign entity, give the requester the appropriate completed Form W-8 or Form 8233.

## Backup Withholding

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS 24% of such payments. This is called "backup withholding." Payments that may be subject to backup withholding include, but are not limited to, interest, tax-exempt interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, payments made in settlement of payment card and third-party network transactions, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make

Form W-9 (Rev. 3-2024)                                                                                            Page 3

the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester;

2. You do not certify your TIN when required (see the instructions for Part II for details);

3. The IRS tells the requester that you furnished an incorrect TIN;

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only); or

5. You do not certify to the requester that you are not subject to backup withholding, as described in item 4 under **"By signing the filled-out form"** above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See **Exempt payee code**, later, and the separate Instructions for the Requester of Form W-9 for more information.

See also **Establishing U.S. status for purposes of chapter 3 and chapter 4 withholding**, earlier.

## What is FATCA Reporting?

The Foreign Account Tax Compliance Act (FATCA) requires a participating foreign financial institution to report all U.S. account holders that are specified U.S. persons. Certain payees are exempt from FATCA reporting. See **Exemption from FATCA reporting code**, later, and the Instructions for the Requester of Form W-9 for more information.

## Updating Your Information

You must provide updated information to any person to whom you claimed to be an exempt payee if you are no longer an exempt payee and anticipate receiving reportable payments in the future from this person. For example, you may need to provide updated information if you are a C corporation that elects to be an S corporation, or if you are no longer tax exempt. In addition, you must furnish a new Form W-9 if the name or TIN changes for the account, for example, if the grantor of a grantor trust dies.

## Penalties

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of federal law, the requester may be subject to civil and criminal penalties.

## Specific Instructions

### Line 1

You must enter one of the following on this line; do not leave this line blank. The name should match the name on your tax return.

If this Form W-9 is for a joint account (other than an account maintained by a foreign financial institution (FFI)), list first, and then circle, the name of the person or entity whose number you entered in Part I of Form W-9. If you are providing Form W-9 to an FFI to document a joint account, each holder of the account that is a U.S. person must provide a Form W-9.

• **Individual.** Generally, enter the name shown on your tax return. If you have changed your last name without informing the Social Security Administration (SSA) of the name change, enter your first name, the last name as shown on your social security card, and your new last name.

**Note for ITIN applicant:** Enter your individual name as it was entered on your Form W-7 application, line 1a. This should also be the same as the name you entered on the Form 1040 you filed with your application.

• **Sole proprietor.** Enter your individual name as shown on your Form 1040 on line 1. Enter your business, trade, or "doing business as" (DBA) name on line 2.

• **Partnership, C corporation, S corporation, or LLC, other than a disregarded entity.** Enter the entity's name as shown on the entity's tax return on line 1 and any business, trade, or DBA name on line 2.

• **Other entities.** Enter your name as shown on required U.S. federal tax documents on line 1. This name should match the name shown on the charter or other legal document creating the entity. Enter any business, trade, or DBA name on line 2.

• **Disregarded entity.** In general, a business entity that has a single owner, including an LLC, and is not a corporation, is disregarded as an entity separate from its owner (a disregarded entity). See Regulations section 301.7701-2(c)(2). A disregarded entity should check the appropriate box for the tax classification of its owner. Enter the owner's name on line 1. The name of the owner entered on line 1 should never be a disregarded entity. The name on line 1 should be the name shown on the income tax return on which the income should be reported. For example, if a foreign LLC that is treated as a disregarded entity for U.S. federal tax purposes has a single owner that is a U.S. person, the U.S. owner's name is required to be provided on line 1. If the direct owner of the entity is also a disregarded entity, enter the first owner that is not disregarded for federal tax purposes. Enter the disregarded entity's name on line 2. If the owner of the disregarded entity is a foreign person, the owner must complete an appropriate Form W-8 instead of a Form W-9. This is the case even if the foreign person has a U.S. TIN.

### Line 2

If you have a business name, trade name, DBA name, or disregarded entity name, enter it on line 2.

### Line 3a

Check the appropriate box on line 3a for the U.S. federal tax classification of the person whose name is entered on line 1. Check only one box on line 3a.

| IF the entity/individual on line 1 is a(n) . . . | THEN check the box for . . . |
|---|---|
| • Corporation | Corporation. |
| • Individual or <br> • Sole proprietorship | Individual/sole proprietor. |
| • LLC classified as a partnership for U.S. federal tax purposes or <br> • LLC that has filed Form 8832 or 2553 electing to be taxed as a corporation. | Limited liability company and enter the appropriate tax classification: <br> P = Partnership, <br> C = C corporation, or <br> S = S corporation. |
| • Partnership | Partnership. |
| • Trust/estate | Trust/estate. |

### Line 3b

Check this box if you are a partnership (including an LLC classified as a partnership for U.S. federal tax purposes), trust, or estate that has any foreign partners, owners, or beneficiaries, and you are providing this form to a partnership, trust, or estate, in which you have an ownership interest. You must check the box on line 3b if you receive a Form W-8 (or documentary evidence) from any partner, owner, or beneficiary establishing foreign status or if you receive a Form W-9 from any partner, owner, or beneficiary that has checked the box on

line 3b.

**Note:** A partnership that provides a Form W-9 and checks box 3b may be required to complete Schedules K-2 and K-3 (Form 1065). For more information, see the Partnership Instructions for Schedules K-2 and K-3 (Form 1065).

If your are required to complete line 3b but fail to do so, you may not receive the information necessary to file a correct information return with the IRS or furnish a correct payee statement to your partners or beneficiaries. See, for example, sections 6698, 6722, and 6724 for penalties that may apply.

## Line 4 Exemptions

If you are exempt from backup withholding and/or FATCA reporting, enter in the appropriate space on line 4 any code(s) that may apply to you.

**Exempt payee code.**

• Generally, individuals (including sole proprietors) are not exempt from backup withholding.

• Except as provided below, corporations are exempt from backup withholding for certain payments, including interest and dividends.

• Corporations are not exempt from backup withholding for payments made in settlement of payment card or third-party network transactions.

• Corporations are not exempt from backup withholding with respect to attorneys' fees or gross proceeds paid to attorneys, and corporations that provide medical or health care services are not exempt with respect to payments reportable on Form 1099-MISC.

The following codes identify payees that are exempt from backup withholding. Enter the appropriate code in the space on line 4.

1—An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2).

2—The United States or any of its agencies or instrumentalities.

3—A state, the District of Columbia, a U.S. commonwealth or territory, or any of their political subdivisions or instrumentalities.

4—A foreign government or any of its political subdivisions, agencies, or instrumentalities.

5—A corporation.

6—A dealer in securities or commodities required to register in the United States, the District of Columbia, or a U.S. commonwealth or territory.

7—A futures commission merchant registered with the Commodity Futures Trading Commission.

8—A real estate investment trust.

9—An entity registered at all times during the tax year under the Investment Company Act of 1940.

10—A common trust fund operated by a bank under section 584(a).

11—A financial institution as defined under section 581.

12—A middleman known in the investment community as a nominee or custodian.

13—A trust exempt from tax under section 664 or described in section 4947.

The following chart shows types of payments that may be exempt from backup withholding. The chart applies to the exempt payees listed above, 1 through 13.

| IF the payment is for . . . | THEN the payment is exempt for . . . |
|---|---|
| • Interest and dividend payments | All exempt payees except for 7. |
| • Broker transactions | Exempt payees 1 through 4 and 6 through 11 and all C corporations. S corporations must not enter an exempt payee code because they are exempt only for sales of noncovered securities acquired prior to 2012. |
| • Barter exchange transactions and patronage dividends | Exempt payees 1 through 4. |
| • Payments over $600 required to be reported and direct sales over $5,000¹ | Generally, exempt payees 1 through 5.² |
| • Payments made in settlement of payment card or third-party network transactions | Exempt payees 1 through 4. |

¹ See Form 1099-MISC, Miscellaneous Information, and its instructions.

² However, the following payments made to a corporation and reportable on Form 1099-MISC are not exempt from backup withholding: medical and health care payments, attorneys' fees, gross proceeds paid to an attorney reportable under section 6045(f), and payments for services paid by a federal executive agency.

**Exemption from FATCA reporting code.** The following codes identify payees that are exempt from reporting under FATCA. These codes apply to persons submitting this form for accounts maintained outside of the United States by certain foreign financial institutions. Therefore, if you are only submitting this form for an account you hold in the United States, you may leave this field blank. Consult with the person requesting this form if you are uncertain if the financial institution is subject to these requirements. A requester may indicate that a code is not required by providing you with a Form W-9 with "Not Applicable" (or any similar indication) entered on the line for a FATCA exemption code.

A—An organization exempt from tax under section 501(a) or any individual retirement plan as defined in section 7701(a)(37).

B—The United States or any of its agencies or instrumentalities.

C—A state, the District of Columbia, a U.S. commonwealth or territory, or any of their political subdivisions or instrumentalities.

D—A corporation the stock of which is regularly traded on one or more established securities markets, as described in Regulations section 1.1472-1(c)(1)(i).

E—A corporation that is a member of the same expanded affiliated group as a corporation described in Regulations section 1.1472-1(c)(1)(i).

F—A dealer in securities, commodities, or derivative financial instruments (including notional principal contracts, futures, forwards, and options) that is registered as such under the laws of the United States or any state.

G—A real estate investment trust.

H—A regulated investment company as defined in section 851 or an entity registered at all times during the tax year under the Investment Company Act of 1940.

I—A common trust fund as defined in section 584(a).

J—A bank as defined in section 581.

K—A broker.

L—A trust exempt from tax under section 664 or described in section 4947(a)(1).

M—A tax-exempt trust under a section 403(b) plan or section 457(g) plan.

**Note:** You may wish to consult with the financial institution requesting this form to determine whether the FATCA code and/or exempt payee code should be completed.

## Line 5

Enter your address (number, street, and apartment or suite number). This is where the requester of this Form W-9 will mail your information returns. If this address differs from the one the requester already has on file, enter "NEW" at the top. If a new address is provided, there is still a chance the old address will be used until the payor changes your address in their records.

## Line 6

Enter your city, state, and ZIP code.

## Part I. Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. If you are a resident alien and you do not have, and are not eligible to get, an SSN, your TIN is your IRS ITIN. Enter it in the entry space for the Social security number. If you do not have an ITIN, see **How to get a TIN** below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN.

If you are a single-member LLC that is disregarded as an entity separate from its owner, enter the owner's SSN (or EIN, if the owner has one). If the LLC is classified as a corporation or partnership, enter the entity's EIN.

**Note:** See **What Name and Number To Give the Requester,** later, for further clarification of name and TIN combinations.

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local SSA office or get this form online at www.SSA.gov. You may also get this form by calling 800-772-1213. Use Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can apply for an EIN online by accessing the IRS website at www.irs.gov/EIN. Go to www.irs.gov/Forms to view, download, or print Form W-7 and/or Form SS-4. Or, you can go to www.irs.gov/OrderForms to place an order and have Form W-7 and/or Form SS-4 mailed to you within 15 business days.

If you are asked to complete Form W-9 but do not have a TIN, apply for a TIN and enter "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, you will generally have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note:** Entering "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon. See also **Establishing U.S. status for purposes of chapter 3** and chapter 4 withholding, earlier, for when you may instead be subject to withholding under chapter 3 or 4 of the Code.

**Caution:** A disregarded U.S. entity that has a foreign owner must use the appropriate Form W-8.

## Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if item 1, 4, or 5 below indicates otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). In the case of a disregarded entity, the person identified on line 1 must sign. Exempt payees, see **Exempt payee code**, earlier.

**Signature requirements.** Complete the certification as indicated in items 1 through 5 below.

1. **Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983.** You must give your correct TIN, but you do not have to sign the certification.

2. **Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983.** You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

3. **Real estate transactions.** You must sign the certification. You may cross out item 2 of the certification.

4. **Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments made in settlement of payment card and third-party network transactions, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

5. **Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), ABLE accounts (under section 529A), IRA, Coverdell ESA, Archer MSA or HSA contributions or distributions, and pension distributions.** You must give your correct TIN, but you do not have to sign the certification.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) other than an account maintained by an FFI | The actual owner of the account or, if combined funds, the first individual on the account [1] |
| 3. Two or more U.S. persons (joint account maintained by an FFI) | Each holder of the account |
| 4. Custodial account of a minor (Uniform Gift to Minors Act) | The minor [2] |
| 5. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee [1] |
| b. So-called trust account that is not a legal or valid trust under state law | The actual owner [1] |
| 6. Sole proprietorship or disregarded entity owned by an individual | The owner [3] |
| 7. Grantor trust filing under Optional Filing Method 1 (see Regulations section 1.671-4(b)(2)(i)(A))** | The grantor * |

| For this type of account: | Give name and EIN of: |
|---|---|
| 8. Disregarded entity not owned by an individual | The owner |
| 9. A valid trust, estate, or pension trust | Legal entity [4] |
| 10. Corporation or LLC electing corporate status on Form 8832 or Form 2553 | The corporation |
| 11. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 12. Partnership or multi-member LLC | The partnership |
| 13. A broker or registered nominee | The broker or nominee |
| 14. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |
| 15. Grantor trust filing Form 1041 or under the Optional Filing Method 2, requiring Form 1099 (see Regulations section 1.671-4(b)(2)(i)(B))** | The trust |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name on line 1, and enter your business or DBA name, if any, on line 2. You may use either your SSN or EIN (if you have one), but the IRS encourages you to use your SSN.

[4] List first and circle the name of the trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.)

*Note: The grantor must also provide a Form W-9 to the trustee of the trust.

**For more information on optional filing methods for grantor trusts, see the Instructions for Form 1041.

Note: If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.

## Secure Your Tax Records from Identity Theft

Identity theft occurs when someone uses your personal information, such as your name, SSN, or other identifying information, without your permission to commit fraud or other crimes. An identity thief may use your SSN to get a job or may file a tax return using your SSN to receive a refund.

To reduce your risk:

• Protect your SSN,

• Ensure your employer is protecting your SSN, and

• Be careful when choosing a tax return preparer.

If your tax records are affected by identity theft and you receive a notice from the IRS, respond right away to the name and phone number printed on the IRS notice or letter.

If your tax records are not currently affected by identity

theft but you think you are at risk due to a lost or stolen purse or wallet, questionable credit card activity, or a questionable credit report, contact the IRS Identity Theft Hotline at 800-908-4490 or submit Form 14039.

For more information, see Pub. 5027, Identity Theft Information for Taxpayers.

Victims of identity theft who are experiencing economic harm or a systemic problem, or are seeking help in resolving tax problems that have not been resolved through normal channels, may be eligible for Taxpayer Advocate Service (TAS) assistance. You can reach TAS by calling the TAS toll-free case intake line at 877-777-4778 or TTY/TDD 800-829-4059.

**Protect yourself from suspicious emails or phishing schemes.** Phishing is the creation and use of email and websites designed to mimic legitimate business emails and websites. The most common act is sending an email to a user falsely claiming to be an established legitimate enterprise in an attempt to scam the user into surrendering private information that will be used for identity theft.

The IRS does not initiate contacts with taxpayers via emails. Also, the IRS does not request personal detailed information through email or ask taxpayers for the PIN numbers, passwords, or similar secret access information for their credit card, bank, or other financial accounts.

If you receive an unsolicited email claiming to be from the IRS, forward this message to phishing@irs.gov. You may also report misuse of the IRS name, logo, or other IRS property to the Treasury Inspector General for Tax Administration (TIGTA) at 800-366-4484. You can forward suspicious emails to the Federal Trade Commission at spam@uce.gov or report them at www.ftc.gov/complaint. You can contact the FTC at www.ftc.gov/idtheft or 877-IDTHEFT (877-438-4338). If you have been the victim of identity theft, see www.IdentityTheft.gov and Pub. 5027.

Go to www.irs.gov/IdentityTheft to learn more about identity theft and how to reduce your risk.

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons (including federal agencies) who are required to file information returns with the IRS to report interest, dividends, or certain other income paid to you; mortgage interest you paid; the acquisition or abandonment of secured property; the cancellation of debt; or contributions you made to an IRA, Archer MSA, or HSA. The person collecting this form uses the information on the form to file information returns with the IRS, reporting the above information. Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation and to cities, states, the District of Columbia, and U.S. commonwealths and territories for use in administering their laws. The information may also be disclosed to other countries under a treaty, to federal and state agencies to enforce civil and criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism. You must provide your TIN whether or not you are required to file a tax return. Under section 3406, payors must generally withhold a percentage of taxable interest, dividends, and certain other payments to a payee who does not give a TIN to the payor. Certain penalties may also apply for providing false or fraudulent information.

 The
Citizens Bank᷋

# Certification of Financial Statement

Name: ROBERT SIMS                          Phone: ███████████

Address: 203 WINTER TEAL CT                 Tax ID/SSN: ████4029

MADISON, MS  39110

[ X ] Individual   [  ] Partnership   [  ] Corporation   [  ] Other _____

**To: The Citizens Bank of Philadelphia**

The attached financial statement dated _____03/17/2025_____, is the most recent financial statement prepared by or for me. I understand that The Citizens Bank of Philadelphia, also known as The Citizens Bank, is relying on the information in this financial statement in deciding to give or continue the financial accommodation or extension of credit requested or received. These statements are delivered to The Citizens Bank to induce it to extend credit from time to time and/or to continue its present extensions of credit, at its discretion, to the undersigned. The undersigned hereby certifies that these statements are correct and complete, and accurately reflect the condition and affairs of the undersigned at the date and for the period(s) stated and that said statements reflect all known liabilities, direct or contingent, as of the date thereof.

The undersigned also represents and warrants that to his/her knowledge there has to date been no material adverse change in the condition or affairs of the undersigned from the date of said statements.

The undersigned does hereby request and warrant that legal title to all property herein described or referred to, excepting only jointly owned property as separately scheduled herein as such, is in the sole name of the undersigned. Every person who is a party to this statement agrees that his/her separate property listed herein or herein referred to and property or interests in property into which property listed herein or herein referred to is converted or re-converted, including his/her interest in property owned jointly, by entirety or in common with another party to this statement, shall be available to the bank for payment to all indebtedness or other obligations of the parties making this statement, or either of them, either voluntarily or involuntarily, by levy of execution or otherwise.

The Citizens Bank is authorized to make all inquiries deemed necessary to verify the accuracy of the information continued herein, and to determine the creditworthiness of the undersigned. Each of the undersigned authorizes the bank to answer questions about its credit experience with the undersigned.

**I Have Read, Understand And Agree To Make These Representations And Warranties.**

If an Individual:                          If Partnership, Corporation or Other Business:

Signature: _~~_Robert L. Sims_~~_          Signature: _____

                                            By: _____
Spouse's Signature _____

*(only if requesting credit jointly with spouse)*          Title: _____

Date: _____7/3/2025_____          Date: _____

TCB-LN-frm.143                                            10-02-2024

# Personal Financial Statement Form

Bond Number_____

| PERSONAL INFORMATION | Name Robert W. Sims | | Date of Birth [redacted] | Social Security Number [redacted] | 203 winter teal ct, madison ms |
|---|---|---|---|---|---|
| Spouse's Name | | Date of Birth | | Social Security Number | |

Statement of Assets and Liabilities as of _01/19/2024_

| ASSETS | | LIABILITIES | |
|---|---|---|---|
| Cash on Hand | $_____ | Notes Payable | $_____ |
| Cash in following banks | | Accounts Payable | $_____ |
| Regions - Key Therapeutics | $ 7,900 | Tesla Lease | $ 18,400 |
| Origin - Key Therapeutics | $ 567,000 | EIDL (covid program) | $ 135,000 |
| | $_____ | Taxes Due | $_____ |
| Marketable Securities | $_____ | Mortgages on Real Estate Description and location | |
| | $_____ | 1. American Express - key tx | $ 7,000 - |
| | $ 1,194,379 | 2._____ | $_____ |
| Notes Receivable | $_____ | 3._____ | $_____ |
| Real Estate in MY name Description and location | | | |
| 1. San Carlos, Unit 804 (Gulf Shores, AL) | $ 855,000 | Other Liabilities (describe) Royalties on Sales | 82,000 |
| 2._____ | $_____ | | $_____ |
| 3. 1120 E Kennedy Blvd, #919 tampa fl | $ 135,000 | | $_____ |
| Personal Property | | | |
| 203 winter teal ct, madison ms | $ 135,000 | TOTAL LIABILITIES | $ 242,400 |
| | | NET WORTH | $ 2,651,879 |
| | $_____ | | |
| TOTAL ASSETS | $ 2,894,279 | TOTAL LIABILITES AND NET WORTH | $ 2,894,279 |

The undersigned hereby certifies that the list of assets and liabilities given herein is a true and correct statement of the financial condition on the date given above and that the depositories are hereby authorized to confirm any inquiry made by _____
_robert sims / key therapeutics, llc_ or its representatives as to any statement made herein relative to monies on deposit or loans made.

Dated this __17th__ day of __March__, __205__.

x _Robert W. Sims_ (Sign here)          X_____ (Sign here)

| AGENT/BROKER INFORMATION | Agent/Broker Name HUB International Gulf South | Code 06611 | Phone No. (601) 707-2050 | Fax No. (601) 707-2070 | City Ridgeland | State MS | Zip 39158 |
|---|---|---|---|---|---|---|---|

P0005310_DT

 **The Citizens Bank.**

## Certification of Financial Statement

Name:    ROBERT SIMS      Phone: ▮▮▮▮▮

Address:    203 WINTER TEAL CT      Tax ID/SSN: ▮▮▮4029

         MADISON, MS  39110

[ X ] Individual    [   ] Partnership    [   ] Corporation    [   ] Other _____

To: The Citizens Bank of Philadelphia

The attached financial statement dated __*July 3, 2025*__ , is the most recent financial statement prepared by or for me. I understand that The Citizens Bank of Philadelphia, also known as The Citizens Bank, is relying on the information in this financial statement in deciding to give or continue the financial accommodation or extension of credit requested or received. These statements are delivered to The Citizens Bank to induce it to extend credit from time to time and/or to continue its present extensions of credit, at its discretion, to the undersigned. The undersigned hereby certifies that these statements are correct and complete, and accurately reflect the condition and affairs of the undersigned at the date and for the period(s) stated and that said statements reflect all known liabilities, direct or contingent, as of the date thereof.

The undersigned also represents and warrants that to his/her knowledge there has to date been no material adverse change in the condition or affairs of the undersigned from the date of said statements.

The undersigned does hereby request and warrant that legal title to all property herein described or referred to, excepting only jointly owned property as separately scheduled herein as such, is in the sole name of the undersigned. Every person who is a party to this statement agrees that his/her separate property listed herein or herein referred to and property or interests in property into which property listed herein or herein referred to is converted or re-converted, including his/her interest in property owned jointly, by entirety or in common with another party to this statement, shall be available to the bank for payment to all indebtedness or other obligations of the parties making this statement, or either of them, either voluntarily or involuntarily, by levy of execution or otherwise.

The Citizens Bank is authorized to make all inquiries deemed necessary to verify the accuracy of the information continued herein, and to determine the creditworthiness of the undersigned. Each of the undersigned authorizes the bank to answer questions about its credit experience with the undersigned.

I Have Read, Understand And Agree To Make These Representations And Warranties.

If an Individual:                              If Partnership, Corporation or Other Business:

Signature: *(signature)*                       Signature: _____

Spouse's Signature _____          By: _____

*(only if requesting credit jointly with spouse)*        Title: _____

Date: __7/3/2025__                      Date: _____

TCB-LN-frm.143                                               10-02-2024

# Personal Financial Statement Form

Bond Number _____

| PERSONAL INFORMATION | Name Robert W. Sims | Date of Birth ■■■■ | Social Security Number ■■■■ | 203 winter teal ct, madison ms |
|---|---|---|---|---|
| Spouse's Name | | Date of Birth | Social Security Number | |

Statement of Assets and Liabilities as of 01/19/2024

| ASSETS | | LIABILITIES | |
|---|---|---|---|
| Cash on Hand | $ _____ | Notes Payable | $ _____ |
| Cash in following banks. | | Accounts Payable | $ _____ |
| Regions - Key Therapeutics | $ ~~7,900~~ 2,257 | Tesla Lease | $ 18,400 |
| ~~Origin~~ Key Therapeutics : citizens | $ ~~567,000~~ 933,000 | EIDL (covid program) | $ 136,000 |
| | $ _____ | Taxes Due | $ _____ |
| Marketable Securities | $ _____ | Mortgages on Real Estate Description and location | |
| | $ _____ | 1. American Express - key tx | $ 7,000 |
| | $ _____ | 2. _____ | $ _____ |
| Notes Receivable | $ ~~1,194,379~~ 935,257 | 3. _____ | $ _____ |
| Real Estate in MY name Description and location | | Other Liabilities (describe) Royalties on Sales | 82,000 |
| 1. San Carlos, Unit 804 (Gulf Shores, AL) | $ 855,000 | | $ _____ |
| 2. _____ | $ _____ | | $ _____ |
| X 3. 1120 E Kennedy Blvd, #919 tampa fl | $ 135,000 | | |
| Personal Property | | | |
| 203 winter teal ct, madison ms | $ 135,000 | TOTAL LIABILITIES | $ ~~242,400~~ |
| | | NET WORTH | $ ~~2,651,879~~ 1,817,857 |
| | $ _____ | | |
| TOTAL ASSETS | $ ~~2,894,279~~ 2,060,257 | TOTAL LIABILITES AND NET WORTH | $ ~~2,894,279~~ 2,060,257 |

The undersigned hereby certifies that the list of assets and liabilities given herein is a true and correct statement of the financial condition on the date given above and that the depositories are hereby authorized to confirm any inquiry made by _____
robert sims / key therapeutics, llc _____ or its representatives as to any statement made herein relative to monies on deposit or loans made.

Dated this 3rd ~~17th~~ day of July ~~March~~ , ~~205~~ 2025 .

x _Robert W. Sims_ _(signature)_ (Sign here)    X _____ (Sign here)

| AGENT/BROKER INFORMATION | Agent/Broker Name HUB International Gulf South | Code 06611 | Phone No. (601) 707-2050 | Fax No. (601) 707-2070 | City Ridgeland | State MS | Zip 39158 |
|---|---|---|---|---|---|---|---|

P0005310_DT

the affiliates, agents, and any successors and assigns of Lender and Third Parties. I/We further authorize Lender to provide any such insurer or investor any information and documentation that they may request with respect to my/our application, credit or loan.

**Borrower:**
**KEY THERAPEUTICS, LLC**

Signature:

Date: 3-13-25

**Guarantor:**
**ROBERT SIMS**

Signature:

Date: 3-13-25

| | |
|---|---|
| 2117001A-I10218<br>CITIZENS BANK OF PHILADELPHIA<br>PO BOX 209<br>PHILADELPHIA MS 39350 | KEY THERAPEUTICS, LLC<br>365 E BEACH BLVD # 804<br>GULF SHORES AL 36542 |
| Lender's Name and Address | Borrower's Name and Address |

### Notice of Special Flood Hazards and Availability of Federal Disaster Relief Assistance

### Zone AE

We are giving you this notice to inform you that the building or mobile home securing the loan for which you have applied is or will be located in an area with special flood hazards: Zone AE

The area has been identified by the Administrator of the Federal Emergency Management Agency (FEMA) as a special flood hazard area using FEMA's Flood Insurance Rate Map (FIRM) or the Flood Hazard Boundary Map (FHBM) for the following community:

### 015005 – GULF SHORES, CITY OF

This area has a one percent (1%) chance of a flood equal to or exceeding the base flood elevation (a 100-year flood) in any given year. During the life of a 30-year mortgage loan, the risk of a 100-year flood in a special flood hazard area is 26 percent (26%).

Federal law allows a lender and borrower jointly to request the Administrator of FEMA to review the determination of whether the property securing the loan is located in a special flood hazard area. If you would like to make such a request, please contact us for further information.

The community in which the property securing the loan is located participates in the National Flood Insurance Program (NFIP). Federal law will not allow us to make you the loan that you have applied for if you do not purchase flood insurance. The flood insurance must be maintained for the life of the loan. If you fail to purchase or renew flood insurance on the property, Federal law authorizes and requires us to purchase the flood insurance for you at your expense.

- At a minimum, flood insurance purchased must cover the lesser of: (1) the outstanding principal balance of the loan(s) or (2) the maximum amount of coverage allowed for the type of property under the NFIP. Flood insurance coverage under the NFIP is limited to the building or mobile home and any personal property that secures your loan and not the land itself.

- Federal disaster relief assistance (usually in the form of a low interest loan) may be available for damages incurred in excess of your flood insurance if your community's participation in the NFIP is in accordance with NFIP requirements.

Borrower:

- Although you may not be required to maintain flood insurance on all structures, you may still wish to do so, and your mortgage lender may still require you to do so to protect the collateral securing the mortgage. If you choose not to maintain flood insurance on a structure and it floods, you are responsible for all flood losses relating to that structure.

Borrower:

### Availability of Private Flood Insurance Coverage

Flood insurance coverage under the NFIP may be purchased through an insurance agent who will obtain the policy either directly through the NFIP or through an insurance company that participates in the NFIP. Flood insurance that provides the same level of coverage as a standard flood insurance policy under the NFIP may be available from private insurers that do not participate in the NFIP. You should compare the flood insurance coverage, deductibles, exclusions, conditions, and premiums associated with flood insurance policies issued on behalf of the NFIP and policies issued on behalf of private insurance companies and contact an insurance agent as to the availability, cost, and comparisons of flood insurance coverage.

### Escrow Requirement for Residential Loans

Federal law may require a lender or its servicer to escrow all premiums and fees for flood insurance that covers any residential building or mobile home securing a loan that is located in an area with special flood hazards. If your lender notifies you that an escrow account is required for your loan, then you must pay your flood insurance premiums and fees to the lender or its servicer with the same frequency as you make loan payments for the duration of your loan. These premiums and fees will be deposited in the escrow account, which will be used to pay the flood insurance provider.

Borrower: _____  Dated: 5-9-25
Member/Manager

Borrower: _____  Dated: _____

Borrowing Base Certificate - KEY THERAPEUTICS, LLC
May 1, 2025

To:   The Citizens Bank
      Attn: BILLY COOK
      P O BOX 578
      CARTHAGE, MS  39051

### Accounts Receivable

| | | | | |
|---|---|---|---|---|
| 1 | Gross accounts receivable | | $ | 393,607.30 |
| 2 | Less: | | | |
| | a) | Accounts over 60 days past due | $118,662.35 | |
| | b) | Total inelligible receivables | | $118,662.35 |
| 3 | Balance of qualified receivables | | $ | 274,944.95 |

### Inventory

| | | |
|---|---|---|
| 4 | Value of inventory on hand | $ 8,265,418.49 |

### Total Borrowing Base

| | | | |
|---|---|---|---|
| 7 | 80% of qualified receivables (Line 3) | $ | 219,995.96 |
| 8 | 50% of Inventory on Hand | $ | 4,132,709.24 |
| 11 | Total borrowing base available (Line 7+8+9+10) | $ | 4,352,705.20 |
| 12 | Maximum Available Credit | $ | 2,500,000.00 |
| 13 | Amount over/under (Line 11 less 12) | $ | 1,852,705.20 |
| ** | If negative immediately reduce principal balance on note | | |

To the best of our knowledge and belief, there have been no changes in the a
above since the date of calculations which would cause the present balance o
and inventory to be less than the amount necessary to comply in all respects v
certificate. We hereby confirm to you that all of the above accounts whether r
arising to acquired, but not limited to each and every account furnished to you
guarantees, remedies and privileges pertaining thereto are, and hereto have k
you and are and have been subject to a security interest in your favor.
Pursuant to our above referenced security agreement with you; wer hereby ce
calculations as of the 1st day of May, 2025.

KEY THERAPEUTICS, LLC

By: _____

Borrowing Base Certificate - KEY THERAPEUTICS, LLC
June 1, 2025

To: The Citizens Bank
Attn: BILLY COOK
P O BOX 578
CARTHAGE, MS  39051

### Accounts Receivable

| | | | | | |
|---|---|---|---|---|---|
| 1 | | Gross accounts receivable | | $ | ~~286,207.77~~ *240,660* |
| 2 | | Less: | | | |
| | a) | Accounts over 30 days past due | ~~$112,481.22~~ *35,378.22* | | |
| | b) | Total ineligible receivables | | | $112,481.22 |
| 3 | | Balance of qualified receivables | | $ | 173,726.55 |

### Inventory

| | | | |
|---|---|---|---|
| 4 | Value of inventory on hand | $ | ~~7,933,215.54~~ *5,568,272* |

### Total Borrowing Base

| | | | |
|---|---|---|---|
| 7 | 80% of qualified receivables (Line 3) | $ | 138,981.24 |
| 8 | 50% of Inventory on Hand | $ | 3,966,607.77 |
| 11 | Total borrowing base available (Line 7+8+9+10) | $ | 4,105,589.01 |
| 12 | Maximum Available Credit | $ | 2,500,000.00 |
| 13 | Amount over/under (Line 11 less 12) | $ | 1,605,589.01 |
| ** | If negative immediately reduce principal balance on note | | |

To the best of our knowledge and belief, there have been no changes in the a
above since the date of calculations which would cause the present balance o
and inventory to be less than the amount necessary to comply in all respects v
certificate.  We hereby confirm to you that all of the above accounts whether r
arising to acquired, but not limited to each and every account furnished to you
guarantees, remedies and privileges pertaining thereto are, and hereto have b
you and are and have been subject to a security interest in your favor.
Pursuant to our above referenced security agreement with you; wer hereby ce
calculations as of the 1st day of June, 2025.

KEY THERAPEUTICS, LLC

By: _____

Rainbow Gold, Inc./Key Therapeutics

On Hand

May 31, 2025 7:00:28 AM CDT

| Part Number | Description | Qty | UOM | Location | Lot Number | Expiration Date | Unit Value | Total Value |
|---|---|---|---|---|---|---|---|---|
| **Key Therapeutics** | | | | | | | | |
| **Guntersville** | | | | | | | | |
| 42195-0550-14 | Ciprofloxacin 0.2% Otic Sol UDV .25mL 14 vials | 4 | ea | B11a | 23AD5 | 2026-01-31 | 130.03 | 520.12 |
| 86017 | Pediacyn Dermal Spray ADVANCED Skin & Wound Cleanser 8oz | 179 | ea | B11q | 23C377 | 2025-03-03 | 28 | 5,012.00 |
| 66992-0128-02 | Otovel Samples | 2635 | ea | B13 | 23P67-1 | 2025-10-31 | 4.03 | 10,619.05 |
| 42195-0550-14 | Ciprofloxacin 0.2% Otic Sol UDV .25mL 14 vials | 2,188 | ea | B17 | 23P66 | 2026-10-31 | 130.03 | 284,505.64 |
| 42195-0128-14 | Ciprofloxacin 0.3% / Fluocinolone 0.025% Otic Sol 14ct | 411 | ea | B19 | 23P67-3 | 2025-10-31 | 247.98 | 101,919.78 |
| 864 | Rejuvacyn PLUS Dermal Spray 8oz | 84 | ea | B19 | 23C374 | 2025-03-03 | 30 | 2,520.00 |
| 66992-0128-14 | Otovel Otic Solution 14ct | 1925 | ea | B23 | 23P67-2 | 2025-10-31 | 285.02 | 548,663.50 |
| 86016 | Pediacyn HydroGel ADVANCED Itch-Burn-Rash-Pain Relief 8oz | 311 | ea | B23 | 23C376 | 2025-11-03 | 28 | 8,708.00 |
| 70868-0910-10 | Methocarbamol 500mg Tabs 100ct | 5 | ea | B24 | M24009B1 | 2027-01-31 | 80 | 400.00 |
| 70868-0910-10 | Methocarbamol 500mg Tabs 100ct | 3956 | ea | B22 | B25035B | 4/30/2027 | 80 | 316,480.00 |
| 42195-0128-14 | Ciprofloxacin 0.3% / Fluocinolone 0.025% Otic Sol 14ct | 14400 | ea | C15 | 23P67-3 | 2025-10-31 | 247.98 | 3,570,912.00 |
| 863 | Rejuvacyn PLUS Antipruritic Spray Gel 8oz | 84 | ea | C16e | 23C373 | 2025-11-03 | 30 | 2,520.00 |
| 66992-0128-14 | Otovel Otic Solution 14ct | 60 | ea | C22/Quarantine | 23P67-2 | 2025-10-31 | 285.02 | 17,101.20 |
| 66992-0128-02 | Otovel Samples | 22,800 | ea | C6 | 23P67-1 | 2025-10-31 | 4.03 | 91,884.00 |
| 42195-0128-14 | Ciprofloxacin 0.3% / Fluocinolone 0.025% Otic Sol 14ct | 2,400 | ea | D2 | 23P67-3 | 2025-10-31 | 247.98 | 595,152.00 |
| 42195-0550-14 | Ciprofloxacin 0.2% Otic Sol UDV .25mL 14 vials | 9,100 | ea | B11q | 23QC1 | 2027-05-31 | 130.03 | 1,183,273.00 |
| 42195-0550-14 | Ciprofloxacin 0.2% Otic Sol UDV .25mL 14 vials | 9,175 | ea | B11q | 23QC1-2 | 2027-05-31 | 130.03 | 1,193,025.25 |

7,933,215.54

# AR Aging (Detailed)

Company/Branch:     KEY

Aged On:        5/31/2025

| Statement Cycle | Last Statement Date | Description |
| --- | --- | --- |
| EOM | | End of Month |

| Customer | Customer Name |
| --- | --- |
| 55 BRP | BRP Pharmaceuticals |

| | | | | | | | Past Due | | |
| Doc. Type | Ref. Nbr. | Customer Ref./ Orig. Ref. Nbr. | Branch | Doc. Date | Due Date | Current | 1 - 30 Days | 31 - 60 Days | 61 - 90 Days | Over 90 Days | Balance |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Invoice | IN000585 | VIA GANGIAN EMAIL | | 3/13/2025 | 3/14/2025 | 0.00 | 0.00 | 0.00 | 3,840.00 | 0.00 | 3,840.00 |
| Invoice | IN000641 | GANJIAN EMAIL- | | 5/14/2025 | 6/13/2025 | 11,520.00 | 0.00 | 0.00 | 0.00 | 0.00 | 11,520.00 |
| Invoice | IN000642 | PO 55169 | | 5/14/2025 | 6/13/2025 | 11,520.00 | 0.00 | 0.00 | 0.00 | 0.00 | 11,520.00 |
| | | Customer Total: | | | | 23,040.00 | 0.00 | 0.00 | 3,840.00 | 0.00 | 26,880.00 |

| Customer | Customer Name |
| --- | --- |
| 55 ABC | AmerisourceBergen |

| | | | | | | | Past Due | | |
| Doc. Type | Ref. Nbr. | Customer Ref./ Orig. Ref. Nbr. | Branch | Doc. Date | Due Date | Current | 1 - 30 Days | 31 - 60 Days | 61 - 90 Days | Over 90 Days | Balance |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Credit Memo | CM000216 | | | 8/31/2024 | 8/31/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -38.36 | -38.36 |
| Invoice | IN000296 | 6498124115 | | 9/21/2024 | 12/21/2024 | 0.00 | 0.00 | 0.00 | 0.00 | 40.30 | 40.30 |
| Credit Memo | CM000466 | 6498322996 | | 9/28/2024 | 9/28/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -46.62 | -46.62 |
| Credit Memo | CM000467 | 6498341469 | | 9/28/2024 | 9/28/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -967.20 | -967.20 |
| Credit Memo | CM000468 | 6498369411 | | 9/28/2024 | 9/28/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -80.60 | -80.60 |
| Credit Memo | CM000469 | 6498371157 | | 9/28/2024 | 9/28/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -246.98 | -246.98 |
| Credit Memo | CM000470 | 6498371488 | | 9/28/2024 | 9/28/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -10.36 | -10.36 |
| Credit Memo | CM000471 | 6498371546 | | 9/28/2024 | 9/28/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -1,365.43 | -1,365.43 |
| Credit Memo | CM000472 | 6498372042 | | 9/28/2024 | 9/28/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -126.08 | -126.08 |
| Credit Memo | CM000473 | 6498375017 | | 9/28/2024 | 9/28/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -161.20 | -161.20 |
| Credit Memo | CM000474 | 6498376231 | | 9/28/2024 | 9/28/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -40.30 | -40.30 |
| Credit Memo | CM000295 | 6590168979 | | 10/7/2024 | 10/7/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -408.18 | -408.18 |
| Credit Memo | CM000296 | 6590173694 | | 10/7/2024 | 10/7/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -161.20 | -161.20 |
| Credit Memo | CM000297 | 6590196516 | | 10/7/2024 | 10/7/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -45.48 | -45.48 |
| Credit Memo | CM000300 | 6590198848 | | 10/7/2024 | 10/7/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -156.43 | -156.43 |
| Credit Memo | CM000301 | 6590198857 | | 10/7/2024 | 10/7/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -120.90 | -120.90 |
| Credit Memo | CM000302 | 6590199171 | | 10/7/2024 | 10/7/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -40.30 | -40.30 |
| Credit Memo | CM000303 | 6590200122 | | 10/7/2024 | 10/7/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -75.83 | -75.83 |
| Credit Memo | CM000304 | 6590201132 | | 10/7/2024 | 10/7/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -131.26 | -131.26 |
| Credit Memo | CM000305 | 6590196834 | | 10/7/2024 | 10/7/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -40.30 | -40.30 |
| Credit Memo | CM000306 | 6590197030 | | 10/7/2024 | 10/7/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -40.30 | -40.30 |
| Credit Memo | CM000464 | WGC24430304018 | | 11/1/2024 | 11/1/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -4,060.11 | -4,060.11 |

## AR Aging (Detailed)

Company/Branch:   KEY

Aged On:   5/31/2025

| Statement Cycle | Last Statement Date | Description | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| EOM | | End of Month | | | | | | | |
| Credit Memo | CM000640 WGC24460307896 | | 11/22/2024 | 11/22/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -2,706.75 | -2,706.75 |
| Credit Memo | CM000643 GA1124108093 R | | 11/22/2024 | 11/22/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -136.79 | -136.79 |
| Credit Memo | CM001073 GA0225110696 | | 3/1/2025 | 3/1/2025 | 0.00 | 0.00 | 0.00 | 0.00 | -130.16 | -130.16 |
| Credit Memo | CM000975 AIT0225190805 | | 3/5/2025 | 3/5/2025 | 0.00 | 0.00 | 0.00 | -193.58 | 0.00 | -193.58 |
| Credit Memo | CM001014 WGC25090326599 | | 3/7/2025 | 3/7/2025 | 0.00 | 0.00 | 0.00 | -171.62 | 0.00 | -171.62 |
| Credit Memo | CM001015 GA0225110696 | | 3/7/2025 | 3/7/2025 | 0.00 | 0.00 | 0.00 | -130.16 | 0.00 | -130.16 |
| Credit Memo | CM001013 WGC24480310369 | | 3/10/2025 | 3/10/2025 | 0.00 | 0.00 | 0.00 | -1,681.74 | 0.00 | -1,681.74 |
| Credit Memo | CM001075 WGC25100327962 | | 3/14/2025 | 3/14/2025 | 0.00 | 0.00 | 0.00 | -343.24 | 0.00 | -343.24 |
| Credit Memo | CM001051 KSP0325091105 | | 3/18/2025 | 3/18/2025 | 0.00 | 0.00 | 0.00 | -32.54 | 0.00 | -32.54 |
| Credit Memo | CM001074 PMR0325407164 | | 3/27/2025 | 3/27/2025 | 0.00 | 0.00 | 0.00 | -195.24 | 0.00 | -195.24 |
| Credit Memo | CM001072 GA0824105507 | | 4/2/2025 | 4/2/2025 | 0.00 | 0.00 | -28.50 | 0.00 | 0.00 | -28.50 |
| Credit Memo | CM001132 7095315817 | | 4/9/2025 | 4/9/2025 | 0.00 | 0.00 | -107.88 | 0.00 | 0.00 | -107.88 |
| Credit Memo | CM001112 WGC25140333118 | | 4/10/2025 | 4/10/2025 | 0.00 | 0.00 | -251.31 | 0.00 | 0.00 | -251.31 |
| Credit Memo | CM001171 GA0425113021 | | 4/25/2025 | 4/25/2025 | 0.00 | 0.00 | -213.74 | 0.00 | 0.00 | -213.74 |
| Credit Memo | CM001257 PMR0425413354 | | 5/6/2025 | 5/6/2025 | 0.00 | -97.62 | 0.00 | 0.00 | 0.00 | -97.62 |
| Credit Memo | CM001255 7111287487 | | 5/8/2025 | 5/8/2025 | 0.00 | -209.24 | 0.00 | 0.00 | 0.00 | -209.24 |
| Credit Memo | CM001256 7111287488 | | 5/8/2025 | 5/8/2025 | 0.00 | -1,331.43 | 0.00 | 0.00 | 0.00 | -1,331.43 |
| | | Customer Total: | | | 0.00 | -1,638.29 | -601.43 | -2,748.12 | -11,296.82 | -16,284.66 |

| Customer | | Customer Name | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 55 ABC COMPOUNDING | | ABC Compounding Pharmacy | | | | | | | |

| Doc. Type | Ref. Nbr. | Customer Ref./ Orig. Ref. Nbr. | Branch | Doc. Date | Due Date | Current | 1 - 30 Days | 31 - 60 Days | 61 - 90 Days | Over 90 Days | Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Past Due | | | |
| Credit Memo | CM001131 | 7095315818 | | 4/9/2025 | 4/9/2025 | 0.00 | 0.00 | -604.43 | 0.00 | 0.00 | -604.43 |
| | | | | Customer Total: | | 0.00 | 0.00 | -604.43 | 0.00 | 0.00 | -604.43 |

| Customer | | Customer Name | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 55 BLUE RIDGE | | Blue Ridge Dermatology | | | | | | | |

| Doc. Type | Ref. Nbr. | Customer Ref./ Orig. Ref. Nbr. | Branch | Doc. Date | Due Date | Current | 1 - 30 Days | 31 - 60 Days | 61 - 90 Days | Over 90 Days | Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Past Due | | | |
| Credit Memo | CM000914 | 020725 Payout | | 2/13/2025 | 2/13/2025 | 0.00 | 0.00 | 0.00 | 0.00 | -120.00 | -120.00 |
| Invoice | IN000629 | VIA PHONE | | 5/5/2025 | 5/5/2025 | 0.00 | 120.00 | 0.00 | 0.00 | 0.00 | 120.00 |
| | | | | Customer Total: | | 0.00 | 120.00 | 0.00 | 0.00 | -120.00 | 0.00 |

| Customer | | Customer Name | |
|---|---|---|---|
| 55 CAR | | Cardinal Health Corporate | |

## AR Aging (Detailed)

Company/Branch:   KEY

Aged On:   5/31/2025

| Statement Cycle | Last Statement Date | Description |
| --- | --- | --- |
| EOM | | End of Month |

| Doc. Type | Ref. Nbr. | Customer Ref./ Orig. Ref. Nbr. | Branch | Doc. Date | Due Date | Current | 1 - 30 Days | 31 - 60 Days | 61 - 90 Days | Over 90 Days | Balance |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Invoice | IN000196 | C6141999NLC | | 7/22/2024 | 10/5/2024 | 0.00 | 0.00 | 0.00 | 0.00 | 142,510.00 | 142,510.00 |
| Credit Memo | CM000645 | EXUCR000643117 | | 11/1/2024 | 11/1/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -107.32 | -107.32 |
| Credit Memo | CM000646 | EXUCR000643115 | | 11/1/2024 | 11/1/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -107.32 | -107.32 |
| Credit Memo | CM000647 | EXUCR000643116 | | 11/1/2024 | 11/1/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -107.32 | -107.32 |
| Credit Memo | CM000648 | EXUCR000643118 | | 11/1/2024 | 11/1/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -107.32 | -107.32 |
| Credit Memo | CM000649 | TOC102482947 | | 11/1/2024 | 11/1/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -85.03 | -85.03 |
| Credit Memo | CM000629 | EXUCR000651293 | | 12/4/2024 | 12/4/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -107.32 | -107.32 |
| Credit Memo | CM000630 | EXUCR000651294 | | 12/4/2024 | 12/4/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -107.32 | -107.32 |
| Credit Memo | CM000631 | EXUCR000651295 | | 12/4/2024 | 12/4/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -107.32 | -107.32 |
| Credit Memo | CM000632 | EXUCR000651292 | | 12/4/2024 | 12/4/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -321.95 | -321.95 |
| Invoice | IN000604 | 6542515 | | 4/4/2025 | 6/18/2025 | 6,840.48 | 0.00 | 0.00 | 0.00 | 0.00 | 6,840.48 |
| Invoice | IN000605 | 6519461 | | 4/4/2025 | 6/18/2025 | 6,840.48 | 0.00 | 0.00 | 0.00 | 0.00 | 6,840.48 |
| Invoice | IN000606 | 6530904 | | 4/4/2025 | 6/18/2025 | 3,420.24 | 0.00 | 0.00 | 0.00 | 0.00 | 3,420.24 |
| Credit Memo | CM001258 | RSXWR41313971 | | 5/1/2025 | 5/1/2025 | 0.00 | -88.89 | 0.00 | 0.00 | 0.00 | -88.89 |
| Credit Memo | CM001259 | RSXWR32713971 | | 5/1/2025 | 5/1/2025 | 0.00 | -88.89 | 0.00 | 0.00 | 0.00 | -88.89 |
| Credit Memo | CM001261 | RSXMR42413971 | | 5/1/2025 | 5/1/2025 | 0.00 | -88.89 | 0.00 | 0.00 | 0.00 | -88.89 |
| Credit Memo | CM001262 | RSXFR42313971 | | 5/1/2025 | 5/1/2025 | 0.00 | -88.89 | 0.00 | 0.00 | 0.00 | -88.89 |
| Credit Memo | CM001263 | RSXER40913971 | | 5/1/2025 | 5/1/2025 | 0.00 | -88.89 | 0.00 | 0.00 | 0.00 | -88.89 |
| Credit Memo | CM001260 | RSXQR50413971 | | 5/8/2025 | 5/8/2025 | 0.00 | -88.89 | 0.00 | 0.00 | 0.00 | -88.89 |
| | | Customer Total: | | | | 17,101.20 | -533.34 | 0.00 | 0.00 | 141,137.15 | 157,705.01 |

| Customer | Customer Name |
| --- | --- |
| 55 CLEBURNE | Cleburne Drug |

| Doc. Type | Ref. Nbr. | Customer Ref./ Orig. Ref. Nbr. | Branch | Doc. Date | Due Date | Current | 1 - 30 Days | 31 - 60 Days | 61 - 90 Days | Over 90 Days | Balance |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Invoice | IN000523 | VIA EMAIL - LDOVE | | 1/16/2025 | 2/15/2025 | 0.00 | 0.00 | 0.00 | 0.00 | 923.16 | 923.16 |
| | | Customer Total: | | | | 0.00 | 0.00 | 0.00 | 0.00 | 923.16 | 923.16 |

| Customer | Customer Name |
| --- | --- |
| 55 DIRECTRX | Direct Rx |

| Doc. Type | Ref. Nbr. | Customer Ref./ Orig. Ref. Nbr. | Branch | Doc. Date | Due Date | Current | 1 - 30 Days | 31 - 60 Days | 61 - 90 Days | Over 90 Days | Balance |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Payment | AY000200 | | | 2/24/2025 | 2/24/2025 | 0.00 | 0.00 | 0.00 | 0.00 | -735.00 | -735.00 |

# AR Aging (Detailed)

Company/Branch:   KEY

Page:   4 of 13
Date:   6/3/2025 4:37 PM
User:   Linda Dove

Aged On:   5/31/2025

| Statement Cycle | Last Statement Date | Description | | | | | | |
|---|---|---|---|---|---|---|---|---|
| EOM | | End of Month | | | | | | |

| Doc. Type | Ref. Nbr. | Customer Ref. | Doc. Date | Due Date | Current | | | | Balance |
|---|---|---|---|---|---|---|---|---|---|
| Invoice | IN000639 | MEADOWS EMAIL | 5/14/2025 | 6/13/2025 | 21,000.00 | 0.00 | 0.00 | 0.00 | 21,000.00 |
| | | | Customer Total: | | 21,000.00 | 0.00 | 0.00 | 0.00 | 20,265.00 |

(Customer Total Over 90 Days: -735.00)

| Customer | Customer Name |
|---|---|
| 55 ENOVA | Enovachem Pharmaceuticals |

| Doc. Type | Ref. Nbr. | Customer Ref./ Orig. Ref. Nbr. | Branch | Doc. Date | Due Date | Current | 1 - 30 Days | 31 - 60 Days | 61 - 90 Days | Over 90 Days | Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Invoice | IN000633 | KEY050225SV | | 5/8/2025 | 6/7/2025 | 3,440.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,440.00 |
| Invoice | IN000638 | KEY0050225SV-R | | 5/14/2025 | 6/13/2025 | 19,600.00 | 0.00 | 0.00 | 0.00 | 0.00 | 19,600.00 |
| | | Customer Total: | | | | 23,040.00 | 0.00 | 0.00 | 0.00 | 0.00 | 23,040.00 |

| Customer | Customer Name |
|---|---|
| 55 LAKELAND | Lakeland Pharmacy |

| Doc. Type | Ref. Nbr. | Customer Ref./ Orig. Ref. Nbr. | Branch | Doc. Date | Due Date | Current | 1 - 30 Days | 31 - 60 Days | 61 - 90 Days | Over 90 Days | Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Invoice | IN000618 | 5051 | | 4/17/2025 | 5/17/2025 | 0.00 | 2,978.40 | 0.00 | 0.00 | 0.00 | 2,978.40 |
| | | Customer Total: | | | | 0.00 | 2,978.40 | 0.00 | 0.00 | 0.00 | 2,978.40 |

| Customer | Customer Name |
|---|---|
| 55 MCK | McKesson Financial Center |

| Doc. Type | Ref. Nbr. | Customer Ref./ Orig. Ref. Nbr. | Branch | Doc. Date | Due Date | Current | 1 - 30 Days | 31 - 60 Days | 61 - 90 Days | Over 90 Days | Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Credit Memo | IN000153 | 77000297307 | | 7/11/2024 | 7/11/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -2,910.00 | -2,910.00 |
| Credit Memo | CM000650 | EXUMR000729992 | | 11/1/2024 | 11/1/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -106.22 | -106.22 |
| Credit Memo | CM000651 | EXUMR000729994 | | 11/1/2024 | 11/1/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -106.22 | -106.22 |
| Credit Memo | CM000652 | EXUMR000729993 | | 11/1/2024 | 11/1/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -106.22 | -106.22 |
| Credit Memo | CM000756 | EXUMR000723064 | | 11/1/2024 | 11/1/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -270.07 | -270.07 |
| Credit Memo | CM000563 | RA-8155994792 | | 11/14/2024 | 11/14/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -5,241.83 | -5,241.83 |
| Credit Memo | CM000634 | EXUMR000738440 | | 11/26/2024 | 11/26/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -106.22 | -106.22 |
| Credit Memo | CM000635 | EXUMR000738441 | | 11/26/2024 | 11/26/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -106.22 | -106.22 |
| Credit Memo | CM000636 | EXUMR000738444 | | 11/26/2024 | 11/26/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -106.22 | -106.22 |
| Credit Memo | CM000637 | EXUMR000738443 | | 11/26/2024 | 11/26/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -109.51 | -109.51 |
| Credit Memo | CM000638 | EXUMR000738442 | | 11/26/2024 | 11/26/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -1,485.19 | -1,485.19 |
| Credit Memo | CM000639 | XG112479364 | | 11/27/2024 | 11/27/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -110.22 | -110.22 |

## AR Aging (Detailed)

Page:        5 of 13
Date:        6/3/2025 4:37 PM
User:        Linda Dove

Company/Branch:   KEY

Aged On:      5/31/2025

| Statement Cycle | | Last Statement Date | Description | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| EOM | | | End of Month | | | | | | |
| Invoice | IN000537   8131784534 | 1/31/2025 | 4/16/2025 | 0.00 | 0.00 | 3,420.24 | 0.00 | 0.00 | 3,420.24 |
| Credit Memo | CM000915 S9-11319411 | 2/1/2025 | 2/1/2025 | 0.00 | 0.00 | 0.00 | 0.00 | -456.30 | -456.30 |
| Credit Memo | CM000916 S3-11319412 | 2/1/2025 | 2/1/2025 | 0.00 | 0.00 | 0.00 | 0.00 | -5,662.83 | -5,662.83 |
| Invoice | IN000576  8120695633 | 2/27/2025 | 5/13/2025 | 0.00 | 5,951.52 | 0.00 | 0.00 | 0.00 | 5,951.52 |
| Invoice | IN000579   8115961309 | 3/5/2025 | 5/19/2025 | 0.00 | 5,951.52 | 0.00 | 0.00 | 0.00 | 5,951.52 |
| Invoice | IN000580  8138960751 | 3/5/2025 | 5/19/2025 | 0.00 | 3,120.72 | 0.00 | 0.00 | 0.00 | 3,120.72 |
| Invoice | IN000590    8149949200 | 3/19/2025 | 6/2/2025 | 5,951.52 | 0.00 | 0.00 | 0.00 | 0.00 | 5,951.52 |
| Invoice | IN000595  8113551505 | 3/27/2025 | 6/10/2025 | 3,120.72 | 0.00 | 0.00 | 0.00 | 0.00 | 3,120.72 |
| Invoice | IN000596  8162435534 | 3/27/2025 | 6/10/2025 | 3,120.72 | 0.00 | 0.00 | 0.00 | 0.00 | 3,120.72 |
| Invoice | IN000597  8155546374 | 3/27/2025 | 6/10/2025 | 3,120.72 | 0.00 | 0.00 | 0.00 | 0.00 | 3,120.72 |
| Invoice | IN000599  8115963619 | 3/27/2025 | 6/10/2025 | 5,951.52 | 0.00 | 0.00 | 0.00 | 0.00 | 5,951.52 |
| Credit Memo | CM001093 IB-11323715 | 3/31/2025 | 3/31/2025 | 0.00 | 0.00 | 0.00 | -61,562.69 | 0.00 | -61,562.69 |
| Invoice | IN000614  8120700881 | 4/16/2025 | 6/30/2025 | 5,951.52 | 0.00 | 0.00 | 0.00 | 0.00 | 5,951.52 |
| Invoice | IN000615   8115965835 | 4/16/2025 | 6/30/2025 | 5,951.52 | 0.00 | 0.00 | 0.00 | 0.00 | 5,951.52 |
| Invoice | IN000616  8149951573 | 4/16/2025 | 6/30/2025 | 5,951.52 | 0.00 | 0.00 | 0.00 | 0.00 | 5,951.52 |
| Credit Memo | CM001133 6110GKETCI | 4/20/2025 | 4/20/2025 | 0.00 | 0.00 | -36.56 | 0.00 | 0.00 | -36.56 |
| Credit Memo | CM001134 6110GKETOC | 4/20/2025 | 4/20/2025 | 0.00 | 0.00 | -36.56 | 0.00 | 0.00 | -36.56 |
| Credit Memo | CM001135 6110GKETTS | 4/20/2025 | 4/20/2025 | 0.00 | 0.00 | -73.12 | 0.00 | 0.00 | -73.12 |
| Credit Memo | CM001136 6110GKETPL | 4/20/2025 | 4/20/2025 | 0.00 | 0.00 | -36.56 | 0.00 | 0.00 | -36.56 |
| Credit Memo | CM001137 6110GKETST | 4/20/2025 | 4/20/2025 | 0.00 | 0.00 | -36.56 | 0.00 | 0.00 | -36.56 |
| Debit Memo | DM000274 6110GKETCR | 4/20/2025 | 7/4/2025 | 36.56 | 0.00 | 0.00 | 0.00 | 0.00 | 36.56 |
| Credit Memo | CM001140 61136KETBO | 4/23/2025 | 4/23/2025 | 0.00 | 0.00 | -61.03 | 0.00 | 0.00 | -61.03 |
| Credit Memo | CM001141 61136KETJF | 4/23/2025 | 4/23/2025 | 0.00 | 0.00 | -61.03 | 0.00 | 0.00 | -61.03 |
| Credit Memo | CM001142 61136KETLA | 4/23/2025 | 4/23/2025 | 0.00 | 0.00 | -61.03 | 0.00 | 0.00 | -61.03 |
| Credit Memo | CM001143 61136KETLG | 4/23/2025 | 4/23/2025 | 0.00 | 0.00 | -122.06 | 0.00 | 0.00 | -122.06 |
| Credit Memo | CM001144 61136KETNM | 4/23/2025 | 4/23/2025 | 0.00 | 0.00 | -122.06 | 0.00 | 0.00 | -122.06 |
| Credit Memo | CM001145 61136KETSM | 4/23/2025 | 4/23/2025 | 0.00 | 0.00 | -244.12 | 0.00 | 0.00 | -244.12 |
| Credit Memo | CM001146 61136KETST | 4/23/2025 | 4/23/2025 | 0.00 | 0.00 | -61.03 | 0.00 | 0.00 | -61.03 |
| Credit Memo | CM001147 61136KETTS | 4/23/2025 | 4/23/2025 | 0.00 | 0.00 | -244.12 | 0.00 | 0.00 | -244.12 |
| Credit Memo | CM001148 61136KETVI | 4/23/2025 | 4/23/2025 | 0.00 | 0.00 | -122.06 | 0.00 | 0.00 | -122.06 |
| Credit Memo | CM001149 6113GKETAL | 4/23/2025 | 4/23/2025 | 0.00 | 0.00 | -244.12 | 0.00 | 0.00 | -244.12 |
| Credit Memo | CM001150 6113GKETBF | 4/23/2025 | 4/23/2025 | 0.00 | 0.00 | -61.03 | 0.00 | 0.00 | -61.03 |
| Credit Memo | CM001151 6113GKETBI | 4/23/2025 | 4/23/2025 | 0.00 | 0.00 | -305.15 | 0.00 | 0.00 | -305.15 |
| Credit Memo | CM001152 6113GKETCE | 4/23/2025 | 4/23/2025 | 0.00 | 0.00 | -341.71 | 0.00 | 0.00 | -341.71 |
| Credit Memo | CM001153 6113GKETCI | 4/23/2025 | 4/23/2025 | 0.00 | 0.00 | -36.56 | 0.00 | 0.00 | -36.56 |
| Credit Memo | CM001154 6113GKETCR | 4/23/2025 | 4/23/2025 | 0.00 | 0.00 | -1,342.66 | 0.00 | 0.00 | -1,342.66 |
| Credit Memo | CM001155 6113GKETDV | 4/23/2025 | 4/23/2025 | 0.00 | 0.00 | -61.03 | 0.00 | 0.00 | -61.03 |
| Credit Memo | CM001156 6113GKETHL | 4/23/2025 | 4/23/2025 | 0.00 | 0.00 | -36.56 | 0.00 | 0.00 | -36.56 |

# AR Aging (Detailed)

Company/Branch:    KEY

Aged On:        5/31/2025

| Statement Cycle | Last Statement Date | Description | | | | | | |
|---|---|---|---|---|---|---|---|---|
| EOM | | End of Month | | | | | | |
| Credit Memo | CM001157 6113GKETJF | 4/23/2025 | 4/23/2025 | 0.00 | 0.00 | -174.54 | 0.00 | 0.00 | -174.54 |
| Credit Memo | CM001158 6113GKETLA | 4/23/2025 | 4/23/2025 | 0.00 | 0.00 | -1,537.55 | 0.00 | 0.00 | -1,537.55 |
| Credit Memo | CM001159 6113GKETLG | 4/23/2025 | 4/23/2025 | 0.00 | 0.00 | -97.59 | 0.00 | 0.00 | -97.59 |
| Credit Memo | CM001160 6113GKETNM | 4/23/2025 | 4/23/2025 | 0.00 | 0.00 | -61.03 | 0.00 | 0.00 | -61.03 |
| Credit Memo | CM001161 6113GKETOC | 4/23/2025 | 4/23/2025 | 0.00 | 0.00 | -1,061.69 | 0.00 | 0.00 | -1,061.69 |
| Credit Memo | CM001162 6113GKETPH | 4/23/2025 | 4/23/2025 | 0.00 | 0.00 | -781.01 | 0.00 | 0.00 | -781.01 |
| Credit Memo | CM001163 6113GKETPL | 4/23/2025 | 4/23/2025 | 0.00 | 0.00 | -427.21 | 0.00 | 0.00 | -427.21 |
| Credit Memo | CM001164 6113GKETSA | 4/23/2025 | 4/23/2025 | 0.00 | 0.00 | -61.03 | 0.00 | 0.00 | -61.03 |
| Credit Memo | CM001165 6113GKETSI | 4/23/2025 | 4/23/2025 | 0.00 | 0.00 | -61.03 | 0.00 | 0.00 | -61.03 |
| Credit Memo | CM001166 6113GKETSM | 4/23/2025 | 4/23/2025 | 0.00 | 0.00 | -5,858.88 | 0.00 | 0.00 | -5,858.88 |
| Credit Memo | CM001167 6113GKETST | 4/23/2025 | 4/23/2025 | 0.00 | 0.00 | -195.18 | 0.00 | 0.00 | -195.18 |
| Credit Memo | CM001168 6113GKETTS | 4/23/2025 | 4/23/2025 | 0.00 | 0.00 | -280.68 | 0.00 | 0.00 | -280.68 |
| Credit Memo | CM001169 6113GKETVI | 4/23/2025 | 4/23/2025 | 0.00 | 0.00 | -97.59 | 0.00 | 0.00 | -97.59 |
| Debit Memo | DM000276 6113GKETBF | 4/23/2025 | 7/7/2025 | 34.31 | 0.00 | 0.00 | 0.00 | 0.00 | 34.31 |
| Debit Memo | DM000277 6113GKETCI | 4/23/2025 | 7/7/2025 | 68.62 | 0.00 | 0.00 | 0.00 | 0.00 | 68.62 |
| Debit Memo | DM000278 6113GKETCR | 4/23/2025 | 7/7/2025 | 73.12 | 0.00 | 0.00 | 0.00 | 0.00 | 73.12 |
| Debit Memo | DM000279 6113GKETLA | 4/23/2025 | 7/7/2025 | 34.31 | 0.00 | 0.00 | 0.00 | 0.00 | 34.31 |
| Debit Memo | DM000280 6113GKETLK | 4/23/2025 | 7/7/2025 | 137.98 | 0.00 | 0.00 | 0.00 | 0.00 | 137.98 |
| Debit Memo | DM000281 6113GKETMD | 4/23/2025 | 7/7/2025 | 70.87 | 0.00 | 0.00 | 0.00 | 0.00 | 70.87 |
| Debit Memo | DM000282 6113GKETNM | 4/23/2025 | 7/7/2025 | 34.31 | 0.00 | 0.00 | 0.00 | 0.00 | 34.31 |
| Debit Memo | DM000283 6113GKETOC | 4/23/2025 | 7/7/2025 | 34.31 | 0.00 | 0.00 | 0.00 | 0.00 | 34.31 |
| Debit Memo | DM000284 6113GKETVI | 4/23/2025 | 7/7/2025 | 70.87 | 0.00 | 0.00 | 0.00 | 0.00 | 70.87 |
| Invoice | IN000620   8148695311 | 4/23/2025 | 7/7/2025 | 5,951.52 | 0.00 | 0.00 | 0.00 | 0.00 | 5,951.52 |
| Invoice | IN000622   8115966662 | 4/24/2025 | 7/8/2025 | 3,420.24 | 0.00 | 0.00 | 0.00 | 0.00 | 3,420.24 |
| Credit Memo | CM001172 61206KETBF | 4/30/2025 | 4/30/2025 | 0.00 | 0.00 | -122.06 | 0.00 | 0.00 | -122.06 |
| Credit Memo | CM001173 61206KETBO | 4/30/2025 | 4/30/2025 | 0.00 | 0.00 | -305.15 | 0.00 | 0.00 | -305.15 |
| Credit Memo | CM001174 61206KETJF | 4/30/2025 | 4/30/2025 | 0.00 | 0.00 | -122.06 | 0.00 | 0.00 | -122.06 |
| Credit Memo | CM001175 61206KETLA | 4/30/2025 | 4/30/2025 | 0.00 | 0.00 | -305.15 | 0.00 | 0.00 | -305.15 |
| Credit Memo | CM001176 61206KETNM | 4/30/2025 | 4/30/2025 | 0.00 | 0.00 | -321.07 | 0.00 | 0.00 | -321.07 |
| Credit Memo | CM001177 61206KETPL | 4/30/2025 | 4/30/2025 | 0.00 | 0.00 | -61.03 | 0.00 | 0.00 | -61.03 |
| Credit Memo | CM001178 61206KETSM | 4/30/2025 | 4/30/2025 | 0.00 | 0.00 | -61.03 | 0.00 | 0.00 | -61.03 |
| Credit Memo | CM001179 61206KETTS | 4/30/2025 | 4/30/2025 | 0.00 | 0.00 | -122.06 | 0.00 | 0.00 | -122.06 |
| Credit Memo | CM001180 61206KETVI | 4/30/2025 | 4/30/2025 | 0.00 | 0.00 | -61.03 | 0.00 | 0.00 | -61.03 |
| Credit Memo | CM001181 6120GKETAL | 4/30/2025 | 4/30/2025 | 0.00 | 0.00 | -673.98 | 0.00 | 0.00 | -673.98 |
| Credit Memo | CM001182 6120GKETBF | 4/30/2025 | 4/30/2025 | 0.00 | 0.00 | -1,891.93 | 0.00 | 0.00 | -1,891.93 |
| Credit Memo | CM001183 6120GKETBI | 4/30/2025 | 4/30/2025 | 0.00 | 0.00 | -549.27 | 0.00 | 0.00 | -549.27 |
| Credit Memo | CM001184 6120GKETCE | 4/30/2025 | 4/30/2025 | 0.00 | 0.00 | -549.27 | 0.00 | 0.00 | -549.27 |
| Credit Memo | CM001185 6120GKETCR | 4/30/2025 | 4/30/2025 | 0.00 | 0.00 | -1,891.93 | 0.00 | 0.00 | -1,891.93 |

## AR Aging (Detailed)

Company/Branch:      KEY

Aged On:          5/31/2025

| Statement Cycle | Last Statement Date | Description | | | | | | |
|---|---|---|---|---|---|---|---|---|
| EOM | | End of Month | | | | | | |
| Credit Memo | CM001186 6120GKETDV | 4/30/2025 | 4/30/2025 | 0.00 | 0.00 | -122.06 | 0.00 | 0.00 | -122.06 |
| Credit Memo | CM001187 6120GKETHL | 4/30/2025 | 4/30/2025 | 0.00 | 0.00 | -244.12 | 0.00 | 0.00 | -244.12 |
| Credit Memo | CM001188 6120GKETJF | 4/30/2025 | 4/30/2025 | 0.00 | 0.00 | -183.09 | 0.00 | 0.00 | -183.09 |
| Credit Memo | CM001189 6120GKETLA | 4/30/2025 | 4/30/2025 | 0.00 | 0.00 | -1,952.96 | 0.00 | 0.00 | -1,952.96 |
| Credit Memo | CM001190 6120GKETLK | 4/30/2025 | 4/30/2025 | 0.00 | 0.00 | -122.06 | 0.00 | 0.00 | -122.06 |
| Credit Memo | CM001191 6120GKETMD | 4/30/2025 | 4/30/2025 | 0.00 | 0.00 | -137.98 | 0.00 | 0.00 | -137.98 |
| Credit Memo | CM001192 6120GKETNM | 4/30/2025 | 4/30/2025 | 0.00 | 0.00 | -536.00 | 0.00 | 0.00 | -536.00 |
| Credit Memo | CM001193 6120GKETOC | 4/30/2025 | 4/30/2025 | 0.00 | 0.00 | -793.39 | 0.00 | 0.00 | -793.39 |
| Credit Memo | CM001194 6120GKETPH | 4/30/2025 | 4/30/2025 | 0.00 | 0.00 | -1,159.57 | 0.00 | 0.00 | -1,159.57 |
| Credit Memo | CM001195 6120GKETSA | 4/30/2025 | 4/30/2025 | 0.00 | 0.00 | -183.09 | 0.00 | 0.00 | -183.09 |
| Credit Memo | CM001196 6120GKETSI | 4/30/2025 | 4/30/2025 | 0.00 | 0.00 | -427.21 | 0.00 | 0.00 | -427.21 |
| Credit Memo | CM001197 6120GKETSM | 4/30/2025 | 4/30/2025 | 0.00 | 0.00 | -366.18 | 0.00 | 0.00 | -366.18 |
| Credit Memo | CM001198 6120GKETTS | 4/30/2025 | 4/30/2025 | 0.00 | 0.00 | -183.09 | 0.00 | 0.00 | -183.09 |
| Credit Memo | CM001199 6120GKETVI | 4/30/2025 | 4/30/2025 | 0.00 | 0.00 | -137.98 | 0.00 | 0.00 | -137.98 |
| Debit Memo | DM000286 6120GKETBI | 4/30/2025 | 7/14/2025 | 70.87 | 0.00 | 0.00 | 0.00 | 0.00 | 70.87 |
| Debit Memo | DM000287 6120GKETBO | 4/30/2025 | 7/14/2025 | 34.31 | 0.00 | 0.00 | 0.00 | 0.00 | 34.31 |
| Debit Memo | DM000288 6120GKETCE | 4/30/2025 | 7/14/2025 | 137.98 | 0.00 | 0.00 | 0.00 | 0.00 | 137.98 |
| Debit Memo | DM000289 6120GKETCI | 4/30/2025 | 7/14/2025 | 73.12 | 0.00 | 0.00 | 0.00 | 0.00 | 73.12 |
| Debit Memo | DM000290 6120GKETCR | 4/30/2025 | 7/14/2025 | 287.98 | 0.00 | 0.00 | 0.00 | 0.00 | 287.98 |
| Debit Memo | DM000291 6120GKETDV | 4/30/2025 | 7/14/2025 | 36.56 | 0.00 | 0.00 | 0.00 | 0.00 | 36.56 |
| Debit Memo | DM000292 6120GKETLA | 4/30/2025 | 7/14/2025 | 36.56 | 0.00 | 0.00 | 0.00 | 0.00 | 36.56 |
| Debit Memo | DM000293 6120GKETOC | 4/30/2025 | 7/14/2025 | 180.55 | 0.00 | 0.00 | 0.00 | 0.00 | 180.55 |
| Debit Memo | DM000294 6120GKETPH | 4/30/2025 | 7/14/2025 | 217.11 | 0.00 | 0.00 | 0.00 | 0.00 | 217.11 |
| Debit Memo | DM000295 6120GKETSM | 4/30/2025 | 7/14/2025 | 36.56 | 0.00 | 0.00 | 0.00 | 0.00 | 36.56 |
| Debit Memo | DM000296 6120GKETVI | 4/30/2025 | 7/14/2025 | 68.62 | 0.00 | 0.00 | 0.00 | 0.00 | 68.62 |
| Invoice | IN000627  8160892472 | 4/30/2025 | 7/14/2025 | 5,951.52 | 0.00 | 0.00 | 0.00 | 0.00 | 5,951.52 |
| Invoice | IN000628  8165651379 | 4/30/2025 | 7/14/2025 | 5,951.52 | 0.00 | 0.00 | 0.00 | 0.00 | 5,951.52 |
| Debit Memo | DM000297 6123GKETLA | 5/3/2025 | 7/17/2025 | 36.56 | 0.00 | 0.00 | 0.00 | 0.00 | 36.56 |
| Debit Memo | DM000298 6123GKETOC | 5/3/2025 | 7/17/2025 | 36.56 | 0.00 | 0.00 | 0.00 | 0.00 | 36.56 |
| Credit Memo | CM001200 61276KETBF | 5/7/2025 | 5/7/2025 | 0.00 | -61.03 | 0.00 | 0.00 | 0.00 | -61.03 |
| Credit Memo | CM001201 61276KETBO | 5/7/2025 | 5/7/2025 | 0.00 | -61.03 | 0.00 | 0.00 | 0.00 | -61.03 |
| Credit Memo | CM001202 61276KETJF | 5/7/2025 | 5/7/2025 | 0.00 | -61.03 | 0.00 | 0.00 | 0.00 | -61.03 |
| Credit Memo | CM001203 61276KETLA | 5/7/2025 | 5/7/2025 | 0.00 | -244.12 | 0.00 | 0.00 | 0.00 | -244.12 |
| Credit Memo | CM001204 61276KETLG | 5/7/2025 | 5/7/2025 | 0.00 | -61.03 | 0.00 | 0.00 | 0.00 | -61.03 |
| Credit Memo | CM001205 61276KETNM | 5/7/2025 | 5/7/2025 | 0.00 | -427.21 | 0.00 | 0.00 | 0.00 | -427.21 |
| Credit Memo | CM001206 61276KETSM | 5/7/2025 | 5/7/2025 | 0.00 | -61.03 | 0.00 | 0.00 | 0.00 | -61.03 |
| Credit Memo | CM001207 61276KETST | 5/7/2025 | 5/7/2025 | 0.00 | -61.03 | 0.00 | 0.00 | 0.00 | -61.03 |
| Credit Memo | CM001208 61276KETVI | 5/7/2025 | 5/7/2025 | 0.00 | -122.06 | 0.00 | 0.00 | 0.00 | -122.06 |

# AR Aging (Detailed)

Company/Branch:   KEY

Aged On:   5/31/2025

| Statement Cycle | Last Statement Date | Description | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **EOM** | | End of Month | | | | | | |
| Credit Memo | CM001209 6127GKETAL | 5/7/2025 | 5/7/2025 | 0.00 | -183.09 | 0.00 | 0.00 | 0.00 | -183.09 |
| Credit Memo | CM001210 6127GKETBI | 5/7/2025 | 5/7/2025 | 0.00 | -671.33 | 0.00 | 0.00 | 0.00 | -671.33 |
| Credit Memo | CM001211 6127GKETBO | 5/7/2025 | 5/7/2025 | 0.00 | -61.03 | 0.00 | 0.00 | 0.00 | -61.03 |
| Credit Memo | CM001212 6127GKETCE | 5/7/2025 | 5/7/2025 | 0.00 | -427.21 | 0.00 | 0.00 | 0.00 | -427.21 |
| Credit Memo | CM001213 6127GKETCI | 5/7/2025 | 5/7/2025 | 0.00 | -122.06 | 0.00 | 0.00 | 0.00 | -122.06 |
| Credit Memo | CM001214 6127GKETCR | 5/7/2025 | 5/7/2025 | 0.00 | -1,958.26 | 0.00 | 0.00 | 0.00 | -1,958.26 |
| Credit Memo | CM001215 6127GKETDV | 5/7/2025 | 5/7/2025 | 0.00 | -260.04 | 0.00 | 0.00 | 0.00 | -260.04 |
| Credit Memo | CM001216 6127GKETHL | 5/7/2025 | 5/7/2025 | 0.00 | -122.06 | 0.00 | 0.00 | 0.00 | -122.06 |
| Credit Memo | CM001217 6127GKETJF | 5/7/2025 | 5/7/2025 | 0.00 | -488.24 | 0.00 | 0.00 | 0.00 | -488.24 |
| Credit Memo | CM001218 6127GKETLA | 5/7/2025 | 5/7/2025 | 0.00 | -1,281.63 | 0.00 | 0.00 | 0.00 | -1,281.63 |
| Credit Memo | CM001219 6127GKETLK | 5/7/2025 | 5/7/2025 | 0.00 | -61.03 | 0.00 | 0.00 | 0.00 | -61.03 |
| Credit Memo | CM001220 6127GKETNM | 5/7/2025 | 5/7/2025 | 0.00 | -61.03 | 0.00 | 0.00 | 0.00 | -61.03 |
| Credit Memo | CM001221 6127GKETOC | 5/7/2025 | 5/7/2025 | 0.00 | -764.20 | 0.00 | 0.00 | 0.00 | -764.20 |
| Credit Memo | CM001222 6127GKETPH | 5/7/2025 | 5/7/2025 | 0.00 | -610.30 | 0.00 | 0.00 | 0.00 | -610.30 |
| Credit Memo | CM001223 6127GKETSA | 5/7/2025 | 5/7/2025 | 0.00 | -488.24 | 0.00 | 0.00 | 0.00 | -488.24 |
| Credit Memo | CM001224 6127GKETSM | 5/7/2025 | 5/7/2025 | 0.00 | -305.15 | 0.00 | 0.00 | 0.00 | -305.15 |
| Credit Memo | CM001225 6127GKETST | 5/7/2025 | 5/7/2025 | 0.00 | -244.12 | 0.00 | 0.00 | 0.00 | -244.12 |
| Credit Memo | CM001226 6127GKETTS | 5/7/2025 | 5/7/2025 | 0.00 | -61.03 | 0.00 | 0.00 | 0.00 | -61.03 |
| Credit Memo | CM001227 6127GKETVI | 5/7/2025 | 5/7/2025 | 0.00 | -183.09 | 0.00 | 0.00 | 0.00 | -183.09 |
| Debit Memo | DM000299 6127GKETBI | 5/7/2025 | 7/21/2025 | 73.12 | 0.00 | 0.00 | 0.00 | 0.00 | 73.12 |
| Debit Memo | DM000300 6127GKETCR | 5/7/2025 | 7/21/2025 | 280.39 | 0.00 | 0.00 | 0.00 | 0.00 | 280.39 |
| Debit Memo | DM000301 6127GKETLA | 5/7/2025 | 7/21/2025 | 143.99 | 0.00 | 0.00 | 0.00 | 0.00 | 143.99 |
| Debit Memo | DM000302 6127GKETOC | 5/7/2025 | 7/21/2025 | 361.10 | 0.00 | 0.00 | 0.00 | 0.00 | 361.10 |
| Debit Memo | DM000303 6127GKETPH | 5/7/2025 | 7/21/2025 | 182.80 | 0.00 | 0.00 | 0.00 | 0.00 | 182.80 |
| Debit Memo | DM000304 6127GKETSM | 5/7/2025 | 7/21/2025 | 36.56 | 0.00 | 0.00 | 0.00 | 0.00 | 36.56 |
| Invoice | IN000630  8115968055 | 5/7/2025 | 7/21/2025 | 5,951.52 | 0.00 | 0.00 | 0.00 | 0.00 | 5,951.52 |
| Credit Memo | CM001229 61346KETBF | 5/14/2025 | 5/14/2025 | 0.00 | -61.03 | 0.00 | 0.00 | 0.00 | -61.03 |
| Credit Memo | CM001230 61346KETBO | 5/14/2025 | 5/14/2025 | 0.00 | -122.06 | 0.00 | 0.00 | 0.00 | -122.06 |
| Credit Memo | CM001231 61346KETLA | 5/14/2025 | 5/14/2025 | 0.00 | -305.15 | 0.00 | 0.00 | 0.00 | -305.15 |
| Credit Memo | CM001232 61346KETNM | 5/14/2025 | 5/14/2025 | 0.00 | -199.01 | 0.00 | 0.00 | 0.00 | -199.01 |
| Credit Memo | CM001233 61346KETPL | 5/14/2025 | 5/14/2025 | 0.00 | -61.03 | 0.00 | 0.00 | 0.00 | -61.03 |
| Credit Memo | CM001234 61346KETSM | 5/14/2025 | 5/14/2025 | 0.00 | -61.03 | 0.00 | 0.00 | 0.00 | -61.03 |
| Credit Memo | CM001235 61346KETST | 5/14/2025 | 5/14/2025 | 0.00 | -61.03 | 0.00 | 0.00 | 0.00 | -61.03 |
| Credit Memo | CM001236 61346KETTS | 5/14/2025 | 5/14/2025 | 0.00 | -305.15 | 0.00 | 0.00 | 0.00 | -305.15 |
| Credit Memo | CM001237 61346KETVI | 5/14/2025 | 5/14/2025 | 0.00 | -122.06 | 0.00 | 0.00 | 0.00 | -122.06 |
| Credit Memo | CM001238 6134GKETAL | 5/14/2025 | 5/14/2025 | 0.00 | -61.03 | 0.00 | 0.00 | 0.00 | -61.03 |
| Credit Memo | CM001239 6134GKETBI | 5/14/2025 | 5/14/2025 | 0.00 | -61.03 | 0.00 | 0.00 | 0.00 | -61.03 |
| Credit Memo | CM001240 6134GKETCE | 5/14/2025 | 5/14/2025 | 0.00 | -244.12 | 0.00 | 0.00 | 0.00 | -244.12 |

## AR Aging (Detailed)

Company/Branch:   KEY

Aged On:   5/31/2025

| Statement Cycle | Last Statement Date | Description | | | | | | |
|---|---|---|---|---|---|---|---|---|
| EOM | | End of Month | | | | | | |
| Credit Memo | CM001241 6134GKETCR | 5/14/2025 | 5/14/2025 | 0.00 | -549.27 | 0.00 | 0.00 | 0.00 | -549.27 |
| Credit Memo | CM001242 6134GKETDV | 5/14/2025 | 5/14/2025 | 0.00 | -199.01 | 0.00 | 0.00 | 0.00 | -199.01 |
| Credit Memo | CM001243 6134GKETHL | 5/14/2025 | 5/14/2025 | 0.00 | -305.15 | 0.00 | 0.00 | 0.00 | -305.15 |
| Credit Memo | CM001244 6134GKETJF | 5/14/2025 | 5/14/2025 | 0.00 | -183.09 | 0.00 | 0.00 | 0.00 | -183.09 |
| Credit Memo | CM001245 6134GKETLA | 5/14/2025 | 5/14/2025 | 0.00 | -2,122.78 | 0.00 | 0.00 | 0.00 | -2,122.78 |
| Credit Memo | CM001246 6134GKETMD | 5/14/2025 | 5/14/2025 | 0.00 | -61.03 | 0.00 | 0.00 | 0.00 | -61.03 |
| Credit Memo | CM001247 6134GKETNM | 5/14/2025 | 5/14/2025 | 0.00 | -336.99 | 0.00 | 0.00 | 0.00 | -336.99 |
| Credit Memo | CM001248 6134GKETOC | 5/14/2025 | 5/14/2025 | 0.00 | -1,602.70 | 0.00 | 0.00 | 0.00 | -1,602.70 |
| Credit Memo | CM001249 6134GKETPH | 5/14/2025 | 5/14/2025 | 0.00 | -854.42 | 0.00 | 0.00 | 0.00 | -854.42 |
| Credit Memo | CM001250 6134GKETSA | 5/14/2025 | 5/14/2025 | 0.00 | -244.12 | 0.00 | 0.00 | 0.00 | -244.12 |
| Credit Memo | CM001251 6134GKETSM | 5/14/2025 | 5/14/2025 | 0.00 | -671.33 | 0.00 | 0.00 | 0.00 | -671.33 |
| Credit Memo | CM001252 6134GKETST | 5/14/2025 | 5/14/2025 | 0.00 | -427.21 | 0.00 | 0.00 | 0.00 | -427.21 |
| Credit Memo | CM001253 6134GKETTS | 5/14/2025 | 5/14/2025 | 0.00 | -61.03 | 0.00 | 0.00 | 0.00 | -61.03 |
| Credit Memo | CM001254 6134GKETVI | 5/14/2025 | 5/14/2025 | 0.00 | -719.09 | 0.00 | 0.00 | 0.00 | -719.09 |
| Debit Memo | DM000317 6134GKETAL | 5/14/2025 | 7/28/2025 | 34.31 | 0.00 | 0.00 | 0.00 | 0.00 | 34.31 |
| Debit Memo | DM000318 6134GKETBF | 5/14/2025 | 7/28/2025 | 1,464.72 | 0.00 | 0.00 | 0.00 | 0.00 | 1,464.72 |
| Debit Memo | DM000319 6134GKETBI | 5/14/2025 | 7/28/2025 | 34.31 | 0.00 | 0.00 | 0.00 | 0.00 | 34.31 |
| Debit Memo | DM000320 6134GKETCE | 5/14/2025 | 7/28/2025 | 36.56 | 0.00 | 0.00 | 0.00 | 0.00 | 36.56 |
| Debit Memo | DM000321 6134GKETCR | 5/14/2025 | 7/28/2025 | 73.12 | 0.00 | 0.00 | 0.00 | 0.00 | 73.12 |
| Debit Memo | DM000322 6134GKETJF | 5/14/2025 | 7/28/2025 | 34.31 | 0.00 | 0.00 | 0.00 | 0.00 | 34.31 |
| Debit Memo | DM000323 6134GKETLA | 5/14/2025 | 7/28/2025 | 146.24 | 0.00 | 0.00 | 0.00 | 0.00 | 146.24 |
| Debit Memo | DM000324 6134GKETLG | 5/14/2025 | 7/28/2025 | 34.31 | 0.00 | 0.00 | 0.00 | 0.00 | 34.31 |
| Debit Memo | DM000325 6134GKETNM | 5/14/2025 | 7/28/2025 | 137.98 | 0.00 | 0.00 | 0.00 | 0.00 | 137.98 |
| Debit Memo | DM000326 6134GKETOC | 5/14/2025 | 7/28/2025 | 109.68 | 0.00 | 0.00 | 0.00 | 0.00 | 109.68 |
| Debit Memo | DM000327 6134GKETPH | 5/14/2025 | 7/28/2025 | 109.68 | 0.00 | 0.00 | 0.00 | 0.00 | 109.68 |
| Debit Memo | DM000328 6134GKETPL | 5/14/2025 | 7/28/2025 | 36.56 | 0.00 | 0.00 | 0.00 | 0.00 | 36.56 |
| Debit Memo | DM000329 6134GKETSI | 5/14/2025 | 7/28/2025 | 34.31 | 0.00 | 0.00 | 0.00 | 0.00 | 34.31 |
| Debit Memo | DM000330 6134GKETTS | 5/14/2025 | 7/28/2025 | 34.31 | 0.00 | 0.00 | 0.00 | 0.00 | 34.31 |
| Invoice | IN000644  8115968935 | 5/15/2025 | 7/29/2025 | 3,420.24 | 0.00 | 0.00 | 0.00 | 0.00 | 3,420.24 |
| Credit Memo | CM001264 61416KETBF | 5/21/2025 | 5/21/2025 | 0.00 | -61.03 | 0.00 | 0.00 | 0.00 | -61.03 |
| Credit Memo | CM001265 61416KETLA | 5/21/2025 | 5/21/2025 | 0.00 | -244.12 | 0.00 | 0.00 | 0.00 | -244.12 |
| Credit Memo | CM001266 61416KETNM | 5/21/2025 | 5/21/2025 | 0.00 | -122.06 | 0.00 | 0.00 | 0.00 | -122.06 |
| Credit Memo | CM001267 61416KETPL | 5/21/2025 | 5/21/2025 | 0.00 | -61.03 | 0.00 | 0.00 | 0.00 | -61.03 |
| Credit Memo | CM001268 61416KETST | 5/21/2025 | 5/21/2025 | 0.00 | -183.09 | 0.00 | 0.00 | 0.00 | -183.09 |
| Credit Memo | CM001269 61416KETTS | 5/21/2025 | 5/21/2025 | 0.00 | -244.12 | 0.00 | 0.00 | 0.00 | -244.12 |
| Credit Memo | CM001270 61416KETVI | 5/21/2025 | 5/21/2025 | 0.00 | -61.03 | 0.00 | 0.00 | 0.00 | -61.03 |
| Credit Memo | CM001271 6141GKETBF | 5/21/2025 | 5/21/2025 | 0.00 | -122.06 | 0.00 | 0.00 | 0.00 | -122.06 |
| Credit Memo | CM001272 6141GKETBI | 5/21/2025 | 5/21/2025 | 0.00 | -366.18 | 0.00 | 0.00 | 0.00 | -366.18 |

## AR Aging (Detailed)

Company/Branch:    KEY

Aged On:        5/31/2025

| Statement Cycle | | Last Statement Date | Description | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| EOM | | | End of Month | | | | | | |
| Credit Memo | CM001273 6141GKETBO | 5/21/2025 | 5/21/2025 | 0.00 | -61.03 | 0.00 | 0.00 | 0.00 | -61.03 |
| Credit Memo | CM001274 6141GKETCE | 5/21/2025 | 5/21/2025 | 0.00 | -183.09 | 0.00 | 0.00 | 0.00 | -183.09 |
| Credit Memo | CM001275 6141GKETCI | 5/21/2025 | 5/21/2025 | 0.00 | -61.03 | 0.00 | 0.00 | 0.00 | -61.03 |
| Credit Memo | CM001276 6141GKETCR | 5/21/2025 | 5/21/2025 | 0.00 | -1,236.52 | 0.00 | 0.00 | 0.00 | -1,236.52 |
| Credit Memo | CM001277 6141GKETDV | 5/21/2025 | 5/21/2025 | 0.00 | -137.98 | 0.00 | 0.00 | 0.00 | -137.98 |
| Credit Memo | CM001278 6141GKETHL | 5/21/2025 | 5/21/2025 | 0.00 | -183.09 | 0.00 | 0.00 | 0.00 | -183.09 |
| Credit Memo | CM001279 6141GKETLA | 5/21/2025 | 5/21/2025 | 0.00 | -1,785.79 | 0.00 | 0.00 | 0.00 | -1,785.79 |
| Credit Memo | CM001280 6141GKETLG | 5/21/2025 | 5/21/2025 | 0.00 | -61.03 | 0.00 | 0.00 | 0.00 | -61.03 |
| Credit Memo | CM001281 6141GKETLK | 5/21/2025 | 5/21/2025 | 0.00 | -183.09 | 0.00 | 0.00 | 0.00 | -183.09 |
| Credit Memo | CM001282 6141GKETMD | 5/21/2025 | 5/21/2025 | 0.00 | -137.98 | 0.00 | 0.00 | 0.00 | -137.98 |
| Credit Memo | CM001283 6141GKETOC | 5/21/2025 | 5/21/2025 | 0.00 | -854.42 | 0.00 | 0.00 | 0.00 | -854.42 |
| Credit Memo | CM001284 6141GKETPH | 5/21/2025 | 5/21/2025 | 0.00 | -488.24 | 0.00 | 0.00 | 0.00 | -488.24 |
| Credit Memo | CM001285 6141GKETPL | 5/21/2025 | 5/21/2025 | 0.00 | -122.06 | 0.00 | 0.00 | 0.00 | -122.06 |
| Credit Memo | CM001286 6141GKETSA | 5/21/2025 | 5/21/2025 | 0.00 | -122.06 | 0.00 | 0.00 | 0.00 | -122.06 |
| Credit Memo | CM001287 6141GKETSI | 5/21/2025 | 5/21/2025 | 0.00 | -122.06 | 0.00 | 0.00 | 0.00 | -122.06 |
| Credit Memo | CM001288 6141GKETSM | 5/21/2025 | 5/21/2025 | 0.00 | -183.09 | 0.00 | 0.00 | 0.00 | -183.09 |
| Credit Memo | CM001289 6141GKETST | 5/21/2025 | 5/21/2025 | 0.00 | -427.21 | 0.00 | 0.00 | 0.00 | -427.21 |
| Credit Memo | CM001290 6141GKETTS | 5/21/2025 | 5/21/2025 | 0.00 | -366.18 | 0.00 | 0.00 | 0.00 | -366.18 |
| Credit Memo | CM001291 6141GKETVI | 5/21/2025 | 5/21/2025 | 0.00 | -122.06 | 0.00 | 0.00 | 0.00 | -122.06 |
| Credit Memo | CM001292 L2-11332312 | 5/21/2025 | 5/21/2025 | 0.00 | -1,375.20 | 0.00 | 0.00 | 0.00 | -1,375.20 |
| Debit Memo | DM000331 6141GKETBF | 5/21/2025 | 8/4/2025 | 34.31 | 0.00 | 0.00 | 0.00 | 0.00 | 34.31 |
| Debit Memo | DM000332 6141GKETBI | 5/21/2025 | 8/4/2025 | 199.01 | 0.00 | 0.00 | 0.00 | 0.00 | 199.01 |
| Debit Memo | DM000333 6141GKETCI | 5/21/2025 | 8/4/2025 | 36.56 | 0.00 | 0.00 | 0.00 | 0.00 | 36.56 |
| Debit Memo | DM000334 6141GKETCR | 5/21/2025 | 8/4/2025 | 109.68 | 0.00 | 0.00 | 0.00 | 0.00 | 109.68 |
| Debit Memo | DM000335 6141GKETHL | 5/21/2025 | 8/4/2025 | 36.56 | 0.00 | 0.00 | 0.00 | 0.00 | 36.56 |
| Debit Memo | DM000336 6141GKETJF | 5/21/2025 | 8/4/2025 | 68.62 | 0.00 | 0.00 | 0.00 | 0.00 | 68.62 |
| Debit Memo | DM000337 6141GKETLA | 5/21/2025 | 8/4/2025 | 131.90 | 0.00 | 0.00 | 0.00 | 0.00 | 131.90 |
| Debit Memo | DM000338 6141GKETPH | 5/21/2025 | 8/4/2025 | 143.99 | 0.00 | 0.00 | 0.00 | 0.00 | 143.99 |
| Debit Memo | DM000339 6141GKETVI | 5/21/2025 | 8/4/2025 | 259.38 | 0.00 | 0.00 | 0.00 | 0.00 | 259.38 |
| Invoice | IN000651  8115969552 | 5/27/2025 | 8/10/2025 | 5,951.52 | 0.00 | 0.00 | 0.00 | 0.00 | 5,951.52 |
| Credit Memo | CM001293 61486KETLA | 5/28/2025 | 5/28/2025 | 0.00 | -183.09 | 0.00 | 0.00 | 0.00 | -183.09 |
| Credit Memo | CM001294 61486KETNM | 5/28/2025 | 5/28/2025 | 0.00 | -61.03 | 0.00 | 0.00 | 0.00 | -61.03 |
| Credit Memo | CM001295 61486KETPL | 5/28/2025 | 5/28/2025 | 0.00 | -61.03 | 0.00 | 0.00 | 0.00 | -61.03 |
| Credit Memo | CM001296 61486KETSM | 5/28/2025 | 5/28/2025 | 0.00 | -122.06 | 0.00 | 0.00 | 0.00 | -122.06 |
| Credit Memo | CM001297 61486KETST | 5/28/2025 | 5/28/2025 | 0.00 | -61.03 | 0.00 | 0.00 | 0.00 | -61.03 |
| Credit Memo | CM001298 61486KETTS | 5/28/2025 | 5/28/2025 | 0.00 | -61.03 | 0.00 | 0.00 | 0.00 | -61.03 |
| Credit Memo | CM001299 6148GKETAC | 5/28/2025 | 5/28/2025 | 0.00 | -122.06 | 0.00 | 0.00 | 0.00 | -122.06 |
| Credit Memo | CM001300 6148GKETAL | 5/28/2025 | 5/28/2025 | 0.00 | -793.39 | 0.00 | 0.00 | 0.00 | -793.39 |

## AR Aging (Detailed)

Company/Branch:   KEY

User:   Linda Dove

Aged On:   5/31/2025

| Statement Cycle | Last Statement Date | Description | | | | | | |
|---|---|---|---|---|---|---|---|---|
| EOM | | End of Month | | | | | | |
| Credit Memo | CM001301 6148GKETBF | 5/28/2025 | 5/28/2025 | 0.00 | -305.15 | 0.00 | 0.00 | 0.00 | -305.15 |
| Credit Memo | CM001302 6148GKETBI | 5/28/2025 | 5/28/2025 | 0.00 | -549.27 | 0.00 | 0.00 | 0.00 | -549.27 |
| Credit Memo | CM001303 6148GKETBO | 5/28/2025 | 5/28/2025 | 0.00 | -244.12 | 0.00 | 0.00 | 0.00 | -244.12 |
| Credit Memo | CM001304 6148GKETCE | 5/28/2025 | 5/28/2025 | 0.00 | -366.18 | 0.00 | 0.00 | 0.00 | -366.18 |
| Credit Memo | CM001305 6148GKETCI | 5/28/2025 | 5/28/2025 | 0.00 | -183.09 | 0.00 | 0.30 | 0.00 | -183.09 |
| Credit Memo | CM001306 6148GKETCR | 5/28/2025 | 5/28/2025 | 0.00 | -2,807.38 | 0.00 | 0.30 | 0.00 | -2,807.38 |
| Credit Memo | CM001307 6148GKETDV | 5/28/2025 | 5/28/2025 | 0.00 | -305.15 | 0.00 | 0.00 | 0.00 | -305.15 |
| Credit Memo | CM001308 6148GKETHL | 5/28/2025 | 5/28/2025 | 0.00 | -427.21 | 0.00 | 0.00 | 0.00 | -427.21 |
| Credit Memo | CM001309 6148GKETJF | 5/28/2025 | 5/28/2025 | 0.00 | -427.21 | 0.00 | 0.00 | 0.00 | -427.21 |
| Credit Memo | CM001310 6148GKETLA | 5/28/2025 | 5/28/2025 | 0.00 | -1,801.71 | 0.00 | 0.00 | 0.00 | -1,801.71 |
| Credit Memo | CM001311 6148GKETLG | 5/28/2025 | 5/28/2025 | 0.00 | -61.03 | 0.00 | 0.00 | 0.00 | -61.03 |
| Credit Memo | CM001312 6148GKETLK | 5/28/2025 | 5/26/2025 | 0.00 | -610.30 | 0.00 | 0.00 | 0.00 | -610.30 |
| Credit Memo | CM001313 6148GKETMD | 5/28/2025 | 5/28/2025 | 0.00 | -122.06 | 0.00 | 0.00 | 0.00 | -122.06 |
| Credit Memo | CM001314 6148GKETNM | 5/28/2025 | 5/28/2025 | 0.00 | -443.13 | 0.00 | 0.00 | 0.00 | -443.13 |
| Credit Memo | CM001315 6148GKETOC | 5/28/2025 | 5/28/2025 | 0.00 | -2,075.02 | 0.00 | 0.00 | 0.00 | -2,075.02 |
| Credit Memo | CM001316 6148GKETPH | 5/28/2025 | 5/28/2025 | 0.00 | -1,281.63 | 0.00 | 0.00 | 0.00 | -1,281.63 |
| Credit Memo | CM001317 6148GKETPL | 5/28/2025 | 5/28/2025 | 0.00 | -305.15 | 0.00 | 0.00 | 0.00 | -305.15 |
| Credit Memo | CM001318 6148GKETSA | 5/28/2025 | 5/28/2025 | 0.00 | -427.21 | 0.00 | 0.00 | 0.00 | -427.21 |
| Credit Memo | CM001319 6148GKETSI | 5/28/2025 | 5/28/2025 | 0.00 | -244.12 | 0.00 | 0.00 | 0.00 | -244.12 |
| Credit Memo | CM001320 6148GKETSM | 5/28/2025 | 5/28/2025 | 0.00 | -549.27 | 0.00 | 0.00 | 0.00 | -549.27 |
| Credit Memo | CM001321 6148GKETST | 5/28/2025 | 5/28/2025 | 0.00 | -305.15 | 0.00 | 0.00 | 0.00 | -305.15 |
| Credit Memo | CM001322 6148GKETTS | 5/28/2025 | 5/28/2025 | 0.00 | -366.18 | 0.00 | 0.00 | 0.00 | -366.18 |
| Credit Memo | CM001323 6148GKETVI | 5/28/2025 | 5/28/2025 | 0.00 | -857.07 | 0.00 | 0.00 | 0.00 | -857.07 |
| Debit Memo | DM000340 6148GKETBF | 5/28/2025 | 8/11/2025 | 36.56 | 0.00 | 0.00 | 0.00 | 0.00 | 36.56 |
| Debit Memo | DM000341 6148GKETBI | 5/28/2025 | 8/11/2025 | 36.56 | 0.00 | 0.00 | 0.00 | 0.00 | 36.56 |
| Debit Memo | DM000342 6148GKETCI | 5/28/2025 | 8/11/2025 | 34.31 | 0.00 | 0.00 | 0.00 | 0.00 | 34.31 |
| Debit Memo | DM000343 6148GKETCR | 5/28/2025 | 8/11/2025 | 36.56 | 0.00 | 0.00 | 0.00 | 0.00 | 36.56 |
| Debit Memo | DM000344 6148GKETDV | 5/28/2025 | 8/11/2025 | 36.56 | 0.00 | 0.00 | 0.00 | 0.00 | 36.56 |
| Debit Memo | DM000346 6148GKETLA | 5/28/2025 | 8/11/2025 | 36.56 | 0.00 | 0.00 | 0.00 | 0.00 | 36.56 |
| Debit Memo | DM000347 6148GKETLK | 5/28/2025 | 8/11/2025 | 68.62 | 0.00 | 0.00 | 0.00 | 0.00 | 68.62 |
| Debit Memo | DM000348 6148GKETOC | 5/28/2025 | 8/11/2025 | 34.31 | 0.00 | 0.00 | 0.00 | 0.00 | 34.31 |
| Debit Memo | DM000349 6148GKETPH | 5/28/2025 | 8/11/2025 | 146.24 | 0.00 | 0.00 | 0.00 | 0.00 | 146.24 |
| Invoice | IN000653  8120705312 | 5/28/2025 | 8/11/2025 | 5,772.97 | 0.00 | 0.00 | 0.00 | 0.00 | 5,772.97 |
| Invoice | IN000654  8149955099 | 5/28/2025 | 8/11/2025 | 5,772.97 | 0.00 | 0.00 | 0.00 | 0.00 | 5,772.97 |
| Debit Memo | DM000345 6148GKETJF | 5/29/2025 | 8/12/2025 | 34.31 | 0.00 | 0.00 | 0.00 | 0.00 | 34.31 |
| | | Customer Total: | | 94,031.34 | -30,696.34 | -24,607.29 | -61,562.69 | -16,883.27 | -39,718.25 |

| Customer | Customer Name |
|---|---|

## AR Aging (Detailed)

Company/Branch:   KEY

Aged On:   5/31/2025

| Statement Cycle | Last Statement Date | Description |
|---|---|---|
| EOM | | End of Month |

**55 MD** — Morris & Dickson

| Doc. Type | Ref. Nbr. | Customer Ref./ Orig. Ref. Nbr. | Branch | Doc. Date | Due Date | Current | 1 - 30 Days | 31 - 60 Days | 61 - 90 Days | Over 90 Days | Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Invoice | IN000631 | PO #686061 | | 5/8/2025 | 6/12/2025 | 5,977.20 | 0.00 | 0.00 | 0.00 | 0.00 | 5,977.20 |
| Invoice | IN000637 | 687096 | | 5/14/2025 | 6/18/2025 | 11,954.40 | 0.00 | 0.00 | 0.00 | 0.00 | 11,954.40 |
| Invoice | IN000648 | 687357 | | 5/19/2025 | 6/23/2025 | 5,977.20 | 0.00 | 0.00 | 0.00 | 0.00 | 5,977.20 |
| Credit Memo | CM001326 | RETURN 686061 | | 5/30/2025 | 5/30/2025 | 0.00 | -5,857.66 | 0.00 | 0.00 | 0.00 | -5,857.66 |
| | | Customer Total: | | | | 23,908.80 | -5,857.66 | 0.00 | 0.00 | 0.00 | 18,051.14 |

| Customer | Customer Name |
|---|---|
| 55 MERCY HEALTH | Mercy Health St Rita's Hospital |

| Doc. Type | Ref. Nbr. | Customer Ref./ Orig. Ref. Nbr. | Branch | Doc. Date | Due Date | Current | 1 - 30 Days | 31 - 60 Days | 61 - 90 Days | Over 90 Days | Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Invoice | IN000071 | 4938 | | 6/10/2024 | 7/10/2024 | 0.00 | 0.00 | 0.00 | 0.00 | 136.00 | 136.00 |
| Invoice | IN000607 | 5042 | | 4/8/2025 | 5/8/2025 | 0.00 | 148.92 | 0.00 | 0.00 | 0.00 | 148.92 |
| | | Customer Total: | | | | 0.00 | 148.92 | 0.00 | 0.00 | 136.00 | 284.92 |

| Customer | Customer Name |
|---|---|
| 55 PARAGON | Paragon Pharmacy |

| Doc. Type | Ref. Nbr. | Customer Ref./ Orig. Ref. Nbr. | Branch | Doc. Date | Due Date | Current | 1 - 30 Days | 31 - 60 Days | 61 - 90 Days | Over 90 Days | Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Invoice | IN000624 | 5053 | | 4/24/2025 | 5/24/2025 | 0.00 | 595.68 | 0.00 | 0.00 | 0.00 | 595.68 |
| | | Customer Total: | | | | 0.00 | 595.66 | 0.00 | 0.00 | 0.00 | 595.68 |

| Customer | Customer Name |
|---|---|
| 55 PARK | Park Pharmacy, LLC |

| Doc. Type | Ref. Nbr. | Customer Ref./ Orig. Ref. Nbr. | Branch | Doc. Date | Due Date | Current | 1 - 30 Days | 31 - 60 Days | 61 - 90 Days | Over 90 Days | Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Invoice | IN000594 | 5041 | | 3/26/2025 | 4/25/2025 | 0.00 | 0.00 | 10,153.24 | 0.00 | 0.00 | 10,153.24 |
| Invoice | IN000612 | 5050 | | 4/15/2025 | 5/15/2025 | 0.00 | 10,722.24 | 0.00 | 0.00 | 0.00 | 10,722.24 |
| Invoice | IN000635 | 5061 | | 5/13/2025 | 6/12/2025 | 10,722.24 | 0.00 | 0.00 | 0.00 | 0.00 | 10,722.24 |
| | | Customer Total: | | | | 10,722.24 | 10,722.24 | 10,153.24 | 0.00 | 0.00 | 31,597.72 |

# AR Aging (Detailed)

Company/Branch:   KEY

Page: 13 of 13
Date: 6/3/2025 4:37 PM
User: Linda Dove

Aged On:        5/31/2025

| Statement Cycle | Last Statement Date | Description | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| EOM | | End of Month | | | | | | | |

| Customer | Customer Name | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 55 PROF ARTS | Professional Arts Pharmacy | | | | | | | | |

| | | | | | | | Past Due | | |
|---|---|---|---|---|---|---|---|---|---|
| Doc. Type | Ref. Nbr. | Customer Ref./ Orig. Ref. Nbr. | Branch | Doc. Date | Due Date | Current | 1 - 30 Days | 31 - 60 Days | 61 - 90 Days | Over 90 Days | Balance |
| Invoice | IN000632 | 5058 | | 5/8/2025 | 6/7/2025 | 3,574.08 | 0.00 | 0.00 | 0.00 | 0.00 | 3,574.08 |
| | | | | Customer Total: | | 3,574.08 | 0.00 | 0.00 | 0.00 | 0.00 | 3,574.08 |

| Customer | Customer Name | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 55 PROFICIENT | Proficient Rx L.P. | | | | | | | | |

| | | | | | | | Past Due | | |
|---|---|---|---|---|---|---|---|---|---|
| Doc. Type | Ref. Nbr. | Customer Ref./ Orig. Ref. Nbr. | Branch | Doc. Date | Due Date | Current | 1 - 30 Days | 31 - 60 Days | 61 - 90 Days | Over 90 Days | Balance |
| Invoice | IN000649 | 22574 | | 5/22/2025 | 6/21/2025 | 57,600.00 | 0.00 | 0.00 | 0.00 | 0.00 | 57,600.00 |
| | | | | Customer Total: | | 57,600.00 | 0.00 | 0.00 | 0.00 | 0.00 | 57,600.00 |

| Customer | Customer Name | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 55 VALUE PLUS | Value Plus | | | | | | | | |

| | | | | | | | Past Due | | |
|---|---|---|---|---|---|---|---|---|---|
| Doc. Type | Ref. Nbr. | Customer Ref./ Orig. Ref. Nbr. | Branch | Doc. Date | Due Date | Current | 1 - 30 Days | 31 - 60 Days | 61 - 90 Days | Over 90 Days | Balance |
| Credit Memo | CM000475 | RA-110724LD | | 11/8/2024 | 11/8/2024 | 0.00 | 0.00 | 0.00 | 0.00 | -680.00 | -680.00 |
| | | | | Customer Total: | | 0.00 | 0.00 | 0.00 | 0.00 | -680.00 | -680.00 |
| | | | | Statement Cycle Total: | | 274,017.66 | -24,160.39 | -15,659.91 | -60,470.81 | 112,481.22 | 286,207.77 |
| | | | | Company Total: | | | | | | | 286,207.77 |

# APPLICATION FOR REDEMPTION

1975 Code, Title 40-10-127

State of Alabama, Baldwin County

Office of the Revenue Commissioner, Baldwin County

Sales Docket 2024 Page 1257   PIN 284591

WHEREAS, on the 8th day of April, 2025, the real property hereinafter described was sold, in substantial conformity with all the requisitions of the statutes in such cases made and provided, by Teddy J Faust Jr, Revenue Commissioner of said County, to WHITMAN JTROS LEE OR SUSAN for the taxes, interests, penalties and costs, then due and remaining unpaid on said property: and whereas, S-7 PROPERTIES LLC has made application to redeem said land.

66-05-21-2-000-161.000-946
UNIT 804 SAN CARLOS CONDO IN THE CITY OF GULF SHORES SEC 21- T9S-R4E (WD)

situated in Baldwin County, Alabama.

Assessed to: S-7 PROPERTIES L L C

| | | | |
|---|---|---|---|
| Original Taxes and Fees (2024): $ | 5,894.02 | Interest: $ | 121.81 |
| Cost of Redemption Certificate: $ | 10.00 | | |
| Amount to Pay: $ | 6,025.83 | | |

Please Sign, Date and Return to this office By: 07/10/2025

✓ Signed _____   Date _7/3/25_

*** PAYMENT MUST BE MADE BY CASH, CASHIERS CHECK OR ***
*** MONEY ORDER. << NO PERSONAL CHECKS ACCEPTED >> ***

***        This Application MUST be Notarized.        ***

Teddy J Faust Jr, Revenue Commissioner, Baldwin County
This 10th day of July, 2025                          Notary: _____

_____                    Countersigned: _____
Revenue Commissioner                                     County Treasurer

STATE OF MISSISSIPPI
NOTARY PUBLIC
ID# 102360
NATALIE BARFIELD
Commission Expires
May 24, 2028
MADISON COUNTY

# AFFIDAVIT OF RIGHT TO REDEEM TAX LIEN

Note: This is a legal document which can be used as evidence in a court of law.

I understand that, in accordance with Act 2018-577 the owner; his or his heirs personal representative, any mortgagee or purchaser of the property or any portion of the property; any other person listed under subsection (or) of Section 40-10-120, Code of Alabama 1975, including the owner of a tax lien certificate of a different date has the right to redeem real property tax lien which has been sold.

I, Robert W. Sims, Managing Member of S-7 Properties, LLC, in accordance with Act-2018-577, claim the right to Redeem parcel number 66-05-21-2-000-161.000-946 located in Baldwin County, Alabama described as:

Address: 365 EAST BEACH BLVD, 0

Legal Description: UNIT 804 SAN CARLOS CONDO IN THE CITY OF GULF SHORES SEC 21-T9S-R4E (WD)

I hereby declare that I have the right to redeem this tax lien according to Act 2018-577 as:

1) The owner (name) S-7 Properties, LLC (Managing Member: Robert W. Sims)
   (Mailing address) 232 Market Street, Building K, Flowood, MS 39232
   (phone#) █████████
   (email address) █████████

2) Owner's heir or personal representative (name)_____
   (address)_____

3) Mortagee or purchase of property (name)_____
   (address)_____

4) Other person entitled to redeem
   (specify)_____
   (name & address)_____

_____   7/3/2025
(Signature of Redeemer)                Date

This document was signed and sworn before me this 3rd day of July 20 25 by
_____Robert Sims_____ known to me

_____
Notary Public

*State of Mississippi Notary Public seal — ID# 102360, NATALIE BARFIELD, Commission Expires May 24, 2028, MADISON COUNTY*



# Baldwin County 2024 Property Tax Bill

Teddy J Faust Jr, Revenue Commissioner
PO Box 1549
Bay Minette AL 36507
251-937-0245
www.baldwincountyal.gov

**Bill Number 5021649**

6/30/2025

**Parcel:** 66-05-21-2-000-161.000-293447

**PIN: 293447**

**Legal Desc:**
CONDO FURNISHINGS
DBA: S-7 PROPERTIES L L C

S-7 PROPERTIES LLC
365 E BEACH BLVD
#804
GULF SHORES, AL 36542

**Assessed Value:** $1,980          **Appraised Value:** $9,933

|  | Taxes Due | Paid |
|---|---|---|
| County Tax | $18.81 | $0.00 |
| Municipal Tax | $9.90 | $0.00 |
| School Tax | $23.76 | $0.00 |
| State Tax | $0.00 | $0.00 |
| Interest and fees through | $18.67 | $0.00 |
|  | $71.14 | $0.00 |

## Total Taxes Due:  $ 71.14

7 - 10 - 2025

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* THIS BILL IS DUE ON OR BEFORE 12/31/2024 \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Please write the Parcel PIN number on your check for proper handling.

**NO BUSINESS OR PERSONAL CHECKS ACCEPTED BETWEEN MARCH 1 - SEPT 30**

Please Remit to:

Teddy J Faust Jr
Revenue Commissioner
PO Box 1549
Bay Minette AL 36507

## AFFIDAVIT AND CERTIFICATION

The undersigned, **Robert W. Sims** ("Affiant"), being first duly sworn, on oath, represents, warrants, certifies, confirms, deposes, and sates as follows:

1. Affiant is of legal age and has personal knowledge of the facts stated herein.

2. **S-7 PROPERTIES, LLC** (the "Company") is a limited liability company duly formed and validly existing in good standing under the laws of the State of Alabama.

3. Affiant is the sole Managing Member of the Company.

4. As the sole Managing Member of the Company, Affiant has the full and exclusive right and authority to execute any and all instruments, agreements, consents, resolutions, affidavits, certificates, and other documents, and take any and all other actions, on behalf of the Company.

5. Affiant agrees to indemnify, defend, and hold harmless The Citizens Bank of Philadelphia and Phelps Dunbar, L.L.P., and each and all of their respective agents, attorneys, employees, and other representatives for, from, and against any and all claims, losses, liabilities, damages, costs, and expenses (including attorneys' fees) arising from or related to, directly or indirectly, any inaccuracy or misrepresentation made by Affiant herein.

IN WITNESS WHEREOF, Affiant has executed this Affidavit and Certification on ___July 3___, 2025.

AFFIANT:

_____
Robert W. Sims

PD.49680117.1

Rev. January 2012

| FACTS | WHAT DOES THE CITIZENS BANK OF PHILADELPHIA DO WITH YOUR PERSONAL INFORMATION? |
|---|---|

| Why? | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
|---|---|

| What? | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br><br>• Social Security number and income<br>• account balances and payment history<br>• credit history and credit scores<br><br>When you are *no longer* our customer, we continue to share your information as described in this notice. |
|---|---|

| How? | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons The Citizens Bank of Philadelphia chooses to share; and whether you can limit this sharing. |
|---|---|

| Reasons we can share your personal information | Does The Citizens Bank of Philadelphia share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes–** such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes–** to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | No | We don't share |
| **For our affiliates' everyday business purposes–** information about your transactions and experiences | No | We don't share |
| **For our affiliates' everyday business purposes–** information about your creditworthiness | No | We don't share |
| **For our affiliates to market to you** | No | We don't share |
| **For nonaffiliates to market to you** | No | We don't share |

| Questions? | Call (601)656-4692 or go to www.thecitizensbankphila.com |
|---|---|

## PAGE 2

### Who we are

| Who is providing this notice? | The Citizens Bank of Philadelphia |
|---|---|

### What we do

| How does The Citizens Bank of Philadelphia protect my personal information? | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. |
|---|---|
| How does The Citizens Bank of Philadelphia collect my personal information? | We collect your personal information, for example, when you <br><br> • open an account or give us your income information <br> • apply for a loan or use your credit or debit card <br> • make deposits or withdrawals from your account <br><br> We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| Why can't I limit all sharing? | Federal law gives you the right to limit only <br><br> • sharing for affiliates' everyday business purposes – information about your creditworthiness <br> • affiliates from using your information to market to you <br> • sharing for nonaffiliates to market to you <br><br> State laws and individual companies may give you additional rights to limit sharing. |

### Definitions

| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies. <br><br> • *The Citizens Bank of Philadelphia does not share with our affiliates.* |
|---|---|
| Nonaffiliates | Companies not related by common ownership or control. They can be financial and nonfinancial companies. <br><br> • *The Citizens Bank of Philadelphia does not share with nonaffiliates so they can market to you.* |
| Joint marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to you. <br><br> • *The Citizens Bank of Philadelphia doesn't jointly market.* |

### Other important information

| |
|---|

# BUSINESS LOAN AGREEMENT

| Borrower: | KEY THERAPEUTICS, LLC<br>232 MARKET ST BUILDING K NUMBER 252<br>FLOWOOD, MS  39232 | Lender: | The Citizens Bank of Philadelphia<br>Carthage Branch<br>301 West Main Street<br>Carthage, MS  39051<br>(601) 267-4525 |
|---|---|---|---|

THIS BUSINESS LOAN AGREEMENT dated June 6, 2025, is made and executed between KEY THERAPEUTICS, LLC ("Borrower") and The Citizens Bank of Philadelphia ("Lender") on the following terms and conditions. Borrower has received prior commercial loans from Lender or has applied to Lender for a commercial loan or loans or other financial accommodations, including those which may be described on any exhibit or schedule attached to this Agreement. Borrower understands and agrees that: (A) in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement; (B) the granting, renewing, or extending of any Loan by Lender at all times shall be subject to Lender's sole judgment and discretion; and (C) all such Loans shall be and remain subject to the terms and conditions of this Agreement.

**TERM.** This Agreement shall be effective as of June 6, 2025, and shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until June 6, 2026.

**RENEWAL AND EXTENSION.** The Indebtedness renews and extends Loan Number 33113125.

**CONDITIONS PRECEDENT TO EACH ADVANCE.** Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents.

**Loan Documents.** Borrower shall provide to Lender the following documents for the Loan: (1) the Note; (2) Security Agreements granting to Lender security interests in the Collateral; (3) financing statements and all other documents perfecting Lender's Security Interests; (4) evidence of insurance as required below; (5) guaranties; (6) together with all such Related Documents as Lender may require for the Loan; all in form and substance satisfactory to Lender and Lender's counsel.

**Borrower's Authorization.** Borrower shall have provided in form and substance satisfactory to Lender properly certified resolutions, duly authorizing the execution and delivery of this Agreement, the Note and the Related Documents. In addition, Borrower shall have provided such other resolutions, authorizations, documents and instruments as Lender or its counsel, may require.

**Payment of Fees and Expenses.** Borrower shall have paid to Lender all fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document.

**Representations and Warranties.** The representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct.

**No Event of Default.** There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document.

**REPRESENTATIONS AND WARRANTIES.** Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times any Indebtedness exists:

**Organization.** Borrower is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Delaware. Borrower is duly authorized to transact business in all other states in which Borrower is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Borrower is doing business. Specifically, Borrower is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. Borrower has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. Borrower maintains an office at 232 MARKET ST BUILDING K NUMBER 252, FLOWOOD, MS  39232. Unless Borrower has designated otherwise in writing, the principal office is the office at which Borrower keeps its books and records including its records concerning the Collateral. Borrower will notify Lender prior to any change in the location of Borrower's state of organization or any change in Borrower's name. Borrower shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Borrower and Borrower's business activities.

**Assumed Business Names.** Borrower has filed or recorded all documents or filings required by law relating to all assumed business names used by Borrower. Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business: **None.**

**Authorization.** Borrower's execution, delivery, and performance of this Agreement and all the Related Documents have been duly authorized by all necessary action by Borrower and do not conflict with, result in a violation of, or constitute a default under (1) any provision of (a) Borrower's articles of organization or membership agreements, or (b) any agreement or other instrument binding upon Borrower or (2) any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties.

**Financial Information.** Each of Borrower's financial statements supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender. Borrower has no material contingent obligations except as disclosed in such financial statements.

**Legal Effect.** This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when delivered will constitute legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

**No Prohibited Activities.** Borrower is not engaged in and none of the Collateral is created by or used in connection with any Prohibited Activities. Borrower shall not make any payments to Lender from funds derived from Prohibited Activities. Borrower agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement. Notwithstanding any provision in this Agreement or any Related Documents to the contrary, no direct or indirect disclosure to Lender and no knowledge of Lender of the existence of any Prohibited Activities shall estop Lender or waive any right of Lender to invoke any remedy under the Agreement or any Related Documents for any Prohibited Activities.

**Properties.** Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to all of Borrower's properties free and clear of all Security Interests, and has not executed any security documents or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing statement under any other name for at least the last five (5) years.

**Hazardous Substances.** Except as disclosed to and acknowledged by Lender in writing, Borrower represents and warrants that: (1) During the period of Borrower's ownership of the Collateral, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from any of the Collateral. (2) Borrower has no knowledge of, or reason to believe that there has been (a) any breach or violation of any Environmental Laws; (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Collateral by any prior owners or occupants of any of the Collateral; or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters. (3) Neither Borrower nor any tenant, contractor, agent or other authorized user of any of the Collateral shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from any of the Collateral; and any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations, and ordinances, including without limitation all Environmental Laws. Borrower authorizes Lender and its agents to enter upon the Collateral to make such inspections and tests as Lender may deem appropriate to determine compliance of the Collateral with this section of the Agreement. Any inspections or tests made by Lender shall be at Borrower's expense and for Lender's purposes only and shall not be



construed to create any responsibility or liability on the part of Lender to Borrower or to any other person. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Collateral for hazardous waste and Hazardous Substances. Borrower hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of a hazardous waste or substance on the Collateral. The provisions of this section of the Agreement, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the termination, expiration or satisfaction of this Agreement and shall not be affected by Lender's acquisition of any interest in any of the Collateral, whether by foreclosure or otherwise.

**Litigation and Claims.** No litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Borrower is pending or threatened, and no other event has occurred which may materially adversely affect Borrower's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in writing.

**Taxes.** To the best of Borrower's knowledge, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Borrower in good faith in the ordinary course of business and for which adequate reserves have been provided.

**Lien Priority.** Unless otherwise previously disclosed to Lender in writing, Borrower has not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security Interests on or affecting any of the Collateral directly or indirectly securing repayment of Borrower's Loan and Note, that would be prior or that may in any way be superior to Lender's Security Interests and rights in and to such Collateral.

**Binding Effect.** This Agreement, the Note, all Security Agreements (if any), and all Related Documents are binding upon the signers thereof, as well as upon their successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

**AFFIRMATIVE COVENANTS.** Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

**Notices of Claims and Litigation.** Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor.

**Financial Records.** Maintain its books and records in accordance with GAAP, or an OCBOA acceptable to Lender, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times.

**Financial Statements.** Furnish Lender with the following:

**Annual Statements.** As soon as available, but in no event later than ninety (90) days after the end of each fiscal year, Borrower's balance sheet and income statement for the year ended, compiled by a certified public accountant satisfactory to Lender.

**Tax Returns.** As soon as available, but in no event later than ninety (90) days after the applicable filing date for the tax reporting period ended, Borrower's Federal and other governmental tax returns, prepared by a certified public accountant satisfactory to Lender.

All financial reports required to be provided under this Agreement shall be prepared in accordance with GAAP, or an OCBOA acceptable to Lender, applied on a consistent basis, and certified by Borrower as being true and correct.

**Additional Information.** Furnish such additional information and statements, as Lender may request from time to time.

**Insurance.** Maintain fire and other risk insurance, public liability insurance, and such other insurance as Lender may require with respect to Borrower's properties and operations, in form, amounts, coverages and with insurance companies acceptable to Lender. Borrower, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least twenty (20) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Borrower or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest for the Loans, Borrower will provide Lender with such lender's loss payable or other endorsements as Lender may require.

**Insurance Reports.** Furnish to Lender, upon request of Lender, reports on each existing insurance policy showing such information as Lender may reasonably request, including without limitation the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the properties insured; (5) the then current property values on the basis of which insurance has been obtained, and the manner of determining those values; and (6) the expiration date of the policy. In addition, upon request of Lender (however not more often than annually), Borrower will have an independent appraiser satisfactory to Lender determine, as applicable, the actual cash value or replacement cost of any Collateral. The cost of such appraisal shall be paid by Borrower.

**Guaranties.** Prior to disbursement of any Loan proceeds, furnish executed guaranties of the Loans in favor of Lender, executed by the guarantor named below, on Lender's forms, and in the amount and under the conditions set forth in those guaranties.

| Name of Guarantor | Amount |
|---|---|
| ROBERT W. SIMS | Unlimited |

**Other Agreements.** Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other such agreements.

**Loan Proceeds.** Use all Loan proceeds solely for Borrower's business operations, unless specifically consented to the contrary by Lender in writing.

**Taxes, Charges and Liens.** Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Borrower's properties, income, or profits. Provided however, Borrower will not be required to pay and discharge any such assessment, tax, charge, levy, lien or claim so long as (1) the legality of the same shall be contested in good faith by appropriate proceedings, and (2) Borrower shall have established on Borrower's books adequate reserves with respect to such contested assessment, tax, charge, levy, lien, or claim in accordance with GAAP or an OCBOA acceptable to Lender.

**Performance.** Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender. Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

**Operations.** Maintain executive and management personnel with substantially the same qualifications and experience as the present executive and management personnel; provide written notice to Lender of any change in executive and management personnel; conduct its business affairs in a reasonable and prudent manner.

**Environmental Studies.** Promptly conduct and complete, at Borrower's expense, all such investigations, studies, samplings and testings as may be requested by Lender or any governmental authority relative to any substance, or any waste or by-product of any substance defined as toxic or a hazardous substance under applicable federal, state, or local law, rule, regulation, order or directive, at or affecting any property or any facility owned, leased or used by Borrower.

**Compliance with Governmental Requirements.** Comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the conduct of Borrower's properties, businesses and operations, and to the use or occupancy of the Collateral, including without limitation, the Americans With Disabilities Act. Borrower may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Borrower has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Collateral are not jeopardized. Lender may

**BUSINESS LOAN AGREEMENT**

require Borrower to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Beneficial Ownership Information.** Comply with all beneficial ownership information reporting requirements of the Corporate Transparency Act and its implementing regulations (collectively the CTA), if applicable to that Borrower. Any Borrower that is or becomes a reporting company as defined in the CTA: (1) has filed, or will file within required timeframes a complete and accurate report of its beneficial ownership information with the Financial Crimes Enforcement Network (FinCEN) as required by the CTA; (2) will update or correct its beneficial ownership information with FinCEN within required timeframes upon any change in its beneficial ownership information; (3) will provide Lender with a copy of its beneficial ownership information report filed with FinCEN upon request; (4) consents to allow Lender to obtain from FinCEN beneficial ownership information filed by Borrower; and (5) will notify Lender in writing of any change in its beneficial ownership information within 30 days of such change.

**Inspection.** Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of Borrower's books, accounts, and records. If Borrower now or at any time hereafter maintains any records (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party, Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense.

**Compliance Certificates.** Unless waived in writing by Lender, provide Lender at least annually, with a certificate executed by Borrower's chief financial officer, or other officer or person acceptable to Lender, certifying that the representations and warranties set forth in this Agreement are true and correct as of the date of the certificate and further certifying that, as of the date of the certificate, no Event of Default exists under this Agreement.

**Environmental Compliance and Reports.** Borrower shall comply in all respects with any and all Environmental Laws; not cause or permit to exist, as a result of an intentional or unintentional action or omission on Borrower's part or on the part of any third party, on property owned and/or occupied by Borrower, any environmental activity where damage may result to the environment, unless such environmental activity is pursuant to and in compliance with the conditions of a permit issued by the appropriate federal, state or local governmental authorities; shall furnish to Lender promptly and in any event within thirty (30) days after receipt thereof a copy of any notice, summons, lien, citation, directive, letter or other communication from any governmental agency or instrumentality concerning any intentional or unintentional action or omission on Borrower's part in connection with any environmental activity whether or not there is damage to the environment and/or other natural resources.

**Additional Assurances.** Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Borrower fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity.

**CESSATION OF ADVANCES.** If Lender has made any commitment to make any Loan to Borrower, whether under this Agreement or under any other agreement, Lender shall have no obligation to make Loan Advances or to disburse Loan proceeds if: (A) Borrower or any Guarantor is in default under the terms of this Agreement or any of the Related Documents or any other agreement that Borrower or any Guarantor has with Lender; (B) Borrower or any Guarantor dies, becomes incompetent or becomes insolvent, files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt; (C) there occurs a material adverse change in Borrower's financial condition, in the financial condition of any Guarantor, or in the value of any Collateral securing any Loan; or (D) any Guarantor seeks, claims or otherwise attempts to limit, modify or revoke such Guarantor's guaranty of the Loan or any other loan with Lender.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Loan.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's or any Grantor's ability to repay the Loans or perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Loan is impaired.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**EFFECT OF AN EVENT OF DEFAULT.** If any Event of Default shall occur, except where otherwise provided in this Agreement or the Related Documents, all commitments and obligations of Lender under this Agreement or the Related Documents or any other agreement immediately will terminate (including any obligation to make further Loan Advances or disbursements), and, at Lender's option, all Indebtedness immediately will

**BUSINESS LOAN AGREEMENT**

become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional. In addition, Lender shall have all the rights and remedies provided in the Related Documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower or of any Grantor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement, all of which amounts are part of the Indebtedness owed under the Loan. Lender may hire or pay someone else to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Consent to Loan Participation.** Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender. Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy Borrower may have with respect to such matters. Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests. Borrower also agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests. Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan. Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

**Governing Law. This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Mississippi without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Mississippi.**

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Grantor, shall constitute a waiver of any of Lender's rights or of any of Borrower's or any Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address. Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

**Prohibited Activities.** Notwithstanding anything to the contrary in this Agreement, Borrower shall not be entitled to receive any notice of or right to cure an Event of Default related to any Prohibited Activities.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Subsidiaries and Affiliates of Borrower.** To the extent the context of any provisions of this Agreement makes it appropriate, including without limitation any representation, warranty or covenant, the word "Borrower" as used in this Agreement shall include all of Borrower's subsidiaries and affiliates. Notwithstanding the foregoing however, under no circumstances shall this Agreement be construed to require Lender to make any Loan or other financial accommodation to any of Borrower's subsidiaries or affiliates.

**Successors and Assigns.** All covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns. Borrower shall not, however, have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender.

**Survival of Representations and Warranties.** Borrower understands and agrees that in extending Loan Advances, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement or the Related Documents. Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the extension of Loan Advances and delivery to Lender of the Related Documents, shall be continuing in nature, shall be deemed made and redated by Borrower at the time each Loan Advance is made, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in effect on the date of this Agreement:

**Advance.** The word "Advance" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf under the terms and conditions of this Agreement.

**Agreement.** The word "Agreement" means this Business Loan Agreement, as this Business Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Business Loan Agreement from time to time.

**Borrower.** The word "Borrower" means KEY THERAPEUTICS, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property,



**BUSINESS LOAN AGREEMENT**
**(Continued)**

Loan No: ███3125                                                                                                                   Page 5

whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Grantor.** The word "Grantor" means each and all of the persons or entities granting a Security Interest in any Collateral for the Loan, including without limitation all Borrowers granting such a Security Interest.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Loan.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means The Citizens Bank of Philadelphia, its successors and assigns.

**Loan.** The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced, including without limitation Loan Number 33113125 and those loans and financial accommodations described herein or described on any exhibit or schedule attached to this Agreement from time to time.

**Note.** The word "Note" means the Note dated March 15, 2024 as renewed and extended by the Note dated June 6, 2025 and executed by KEY THERAPEUTICS, LLC in the principal amount of $2,500,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**OCBOA.** The term "OCBOA" means Other Comprehensive Basis of Accounting, as designated by Lender in writing as an acceptable alternative to GAAP.

**Prohibited Activities.** The words "Prohibited Activities" mean any activity relating to the use, sale, possession, cultivation, manufacture, storage, distribution, or marketing of cannabis, marijuana, or marijuana-based products which constitutes in any manner a violation of any applicable federal, state, or local law or regulation, regardless of whether applicable conflicting law permits the same.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

**Security Agreement.** The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

**Security Interest.** The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law, contract, or otherwise.

BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS BUSINESS LOAN AGREEMENT AND BORROWER AGREES TO ITS TERMS. THIS BUSINESS LOAN AGREEMENT IS DATED JUNE 6, 2025.

BORROWER:

KEY THERAPEUTICS, LLC

By: _____
ROBERT W. SIMS, Member/Manager of KEY
THERAPEUTICS, LLC

LENDER:

THE CITIZENS BANK OF PHILADELPHIA

By: _____
Billy Wayne Cook, Vice President



[redacted]

# CERTIFICATION OF BENEFICIAL OWNER(S)

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,500,000.00 | 06-06-2025 | 06-06-2026 | [redacted]3125 | 1C2A / 3801 | *** | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Persons opening an account on behalf of a legal entity must provide the following information:**

a. Name and Title of Natural Person Opening Account:
ROBERT W. SIMS, Member/Manager of KEY THERAPEUTICS, LLC

b. Name, Type, and Address of Legal Entity for Which the Account is Being Opened:
KEY THERAPEUTICS, LLC, Limited Liability Company; 232 MARKET ST BUILDING K NUMBER 252; FLOWOOD, MS 39232

c. The following information for each individual, if any, who, directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, owns 25 percent or more of the equity interests of the legal entity listed above:

| Name | Ownership % | Date of Birth | Address (Res. or Bus. Street Address) | For U.S. Persons[1] | For Non-U.S. Persons[2] |
|---|---|---|---|---|---|
| ROBERT W. SIMS | 100% | 03-11-1973 | 203 WINTER TEAL CT, MADISON, MS 39110, USA | 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 | |

(If no individual meets this definition, please write "Not Applicable.")

d. The following information for one individual with significant responsibility for managing the legal entity listed above, such as:
☐ An executive officer or senior manager (e.g., Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, Managing Member, General Partner, President, Vice President, Treasurer); or
☒ Any other individual who regularly performs similar functions.
(If appropriate, an individual listed under section (c) above may also be listed in this section (d)).

| Name/Title | Date of Birth | Address (Res. or Bus. Street Address) | For U.S. Persons[1] | For Non-U.S. Persons[2] |
|---|---|---|---|---|
| ROBERT W. SIMS, Member/Manager | 03-11-1973 | 203 WINTER TEAL CT, MADISON, MS 39110, USA | 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 | |

**I, ROBERT W. SIMS (name of natural person opening account), hereby certify, to the best of my knowledge, that the information provided above is complete and correct, and on behalf of KEY THERAPEUTICS, LLC, I agree to notify the financial institution of any change in such information.**

By: ______________________ 7/3/2025
ROBERT W. SIMS, Member/Manager of KEY THERAPEUTICS, LLC
Date

[1] U.S. Persons must provide a Social Security Number.

[2] Non-U.S. Persons must provide a Social Security Number, passport number and country of issuance, or similar identification number. In lieu of a passport number, Non-U.S. Persons may also provide a Social Security Number, an alien identification card number, or number and country of issuance of any other government-issued document evidencing nationality or residence and bearing a photograph or similar safeguard.

Legal Entity Identifier: ______________________ (Optional)

LaserPro, Ver. 25.1.20.003 Copr. Finastra USA Corporation 1997, 2025. All Rights Reserved. - MS C:\LPRO\CFI\LPL\COBO.FC TR-52602 PR-82





The Citizens Bank™

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $2,500,000.00 | 06-06-2025 | 06-06-2026 | ▮3125 | 1C2A / 3801 | *** | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:**   KEY THERAPEUTICS, LLC
232 MARKET ST BUILDING K NUMBER 252
FLOWOOD, MS  39232

**Lender:**   The Citizens Bank of Philadelphia
Carthage Branch
301 West Main Street
Carthage, MS  39051
(601) 267-4525

---

**Principal Amount: $2,500,000.00**                                      **Date of Note:  June 6, 2025**

**PROMISE TO PAY.**  KEY THERAPEUTICS, LLC ("Borrower") promises to pay to The Citizens Bank of Philadelphia ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Million Five Hundred Thousand & 00/100 Dollars ($2,500,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 8.550% per annum based on a year of 360 days.  Interest shall be calculated from the date of each advance until repayment of each advance.  The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.**  Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on June 6, 2026.  In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning July 6, 2025, with all subsequent interest payments to be due on the same day of each month after that.  Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; and then to any late charges.  Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.**  Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding.  All interest payable under this Note is computed using this method.

**PREPAYMENT.**  Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law.   Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due.  Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest.  Rather, early payments will reduce the principal balance due.  Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language.  If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender.  **All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to:  The Citizens Bank of Philadelphia, Carthage Branch, 301 West Main Street, Carthage, MS  39051.**

**LATE CHARGE.**  If a payment is 16 days or more late, Borrower will be charged **4.000% of the regularly scheduled payment or $5.00, whichever is greater.**

**INTEREST AFTER DEFAULT.**  Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

**DEFAULT.**  Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.**  Borrower fails to make any payment when due under this Note.

**Other Defaults.**  Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.**  Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.**  Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.**  The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.**  Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender.  However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Adverse Change.**  A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Events Affecting Guarantor.**  Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**LENDER'S RIGHTS.**  Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.**  Lender may hire or pay someone else to help collect this Note if Borrower does not pay.  Borrower will pay Lender that amount.  This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals.  If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.  This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Mississippi without regard to its conflicts of law provisions.  This Note has been accepted by Lender in the State of Mississippi.**

**RIGHT OF SETOFF.**  To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account).  This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future.  However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by



## PROMISSORY NOTE
### (Continued)

Loan No: ███3125                  Page 2

law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by First Mortgage and Assignment of Rents on Unit 804 in the San Carlos Condominiums located at 365 E Beach Blvd., Gulf Shores, AL 36542 (Parcel: 66-05-21-2-000-161.000.94) **and** All accounts receivables, inventory, and general intangibles now owned or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing: all records of any kind relating to any of the foregoing; proceeds relating to any of the foregoing (including insurance, general intangibles, and account proceed proceeds); whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing.

**PAYMENTS.** All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following person or persons are authorized to authorize payments until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: **ROBERT W. SIMS, Member/Manager of KEY THERAPEUTICS, LLC.** Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

**PRIOR NOTE.** Renewal and extension of Loan Number 33113125.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: Loan Operations The Citizens Bank P O Box 209 Philadelphia, MS 39350.

**LOAN PURPOSE.** THE PURPOSE OF THIS LOAN IS - TO RENEW LOAN NUMBER 33113125.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

KEY THERAPEUTICS, LLC

By: _____
    ROBERT W. SIMS, Member/Manager of KEY THERAPEUTICS, LLC

# COMMERCIAL GUARANTY

**Borrower:** KEY THERAPEUTICS, LLC
232 MARKET ST BUILDING K NUMBER 252
FLOWOOD, MS  39232

**Lender:** The Citizens Bank of Philadelphia
Carthage Branch
301 West Main Street
Carthage, MS  39051
(601) 267-4525

**Guarantor:** ROBERT W. SIMS
203 WINTER TEAL CT
MADISON, MS  39110

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. **It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).**

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, **without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time:** (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any

**COMMERCIAL GUARANTY**
**(Continued)**

Loan No: ███3125            Page 2

nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

    **Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

    **Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

    **Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

    **Governing Law.** This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Mississippi without regard to its conflicts of law provisions.

    **Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

    **Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

    **Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

    **No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in



**COMMERCIAL GUARANTY**
**(Continued)**

Page 3

the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waive Jury.** Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means KEY THERAPEUTICS, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation ROBERT W. SIMS, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means The Citizens Bank of Philadelphia, its successors and assigns.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED JUNE 6, 2025.

**GUARANTOR:**

X _____
ROBERT W. SIMS

LaserPro, Ver. 25.1.20.003 Copr. Finastra USA Corporation 1997, 2025. All Rights Reserved. - MS C:\LPRO\CFI\LPL\E20.FC TR-52602 PR-82



# COMMERCIAL SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,500,000.00 | 06-06-2025 | 06-06-2026 | ███3125 | 1C2A / 3801 | *** | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Grantor:** KEY THERAPEUTICS, LLC
232 MARKET ST BUILDING K NUMBER 252
FLOWOOD, MS 39232

**Lender:** The Citizens Bank of Philadelphia
Carthage Branch
301 West Main Street
Carthage, MS 39051
(601) 267-4525

THIS COMMERCIAL SECURITY AGREEMENT dated June 6, 2025, is made and executed between KEY THERAPEUTICS, LLC ("Grantor") and The Citizens Bank of Philadelphia ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

All accounts receivables, inventory, and general intangibles now owned or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing: all records of any kind relating to any of the foregoing; proceeds relating to any of the foregoing (including insurance, general intangibles, and account proceed proceeds); whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing.

"Collateral" as described hereinabove and as used in this Agreement includes all of Grantor's accounts with Lender (whether checking, savings, or some other account) and funds deposited in any of the same at any time and proceeds therefrom, including, without limitation, account number(s) 2792026 (DDA) 33113125 (LN).

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A) All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender. **This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Grantor may not be indebted to Lender.**

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management or in the members or managers of the limited liability company Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its membership agreement does not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. At the time any account becomes subject to a security interest in favor of Lender, the account shall be a good and valid account representing an undisputed, bona fide indebtedness incurred by the account debtor, for merchandise held subject to delivery instructions or previously shipped or delivered pursuant to a contract of sale, or for services previously performed by Grantor with or for the account debtor. So long as this Agreement remains in effect, Grantor shall not, without Lender's prior written consent, compromise, settle, adjust, or extend payment under or with regard to any such Accounts. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral (or to the extent the Collateral consists of intangible property such as accounts or general intangibles, the records concerning the Collateral) at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, including the sales of inventory, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of Mississippi, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. While



# COMMERCIAL SECURITY AGREEMENT
**Loan No:** ▇▇▇3125        **(Continued)**        **Page 2**

Grantor is not in default under this Agreement, Grantor may sell inventory, but only in the ordinary course of its business and only to buyers who qualify as a buyer in the ordinary course of business. A sale in the ordinary course of Grantor's business does not include a transfer in partial or total satisfaction of a debt or any bulk sale. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**No Prohibited Activities.** Grantor is not engaged in and none of the Collateral is now or will at any time be created by or used in connection with any Prohibited Activities. Grantor shall not make any payments to Lender from funds derived from Prohibited Activities. Grantor agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement. Notwithstanding any provision in this Agreement or any Related Documents to the contrary, no direct or indirect disclosure to Lender and no knowledge of Lender of the existence of any Prohibited Activities shall estop Lender or waive any right of Lender to invoke any remedy under the Agreement or any Related Documents for any Prohibited Activities.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least twenty (20) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. This includes making sure Lender is shown as the first and only security interest holder on the title covering the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless



# COMMERCIAL SECURITY AGREEMENT
**Loan No:** ▮▮▮3125  (Continued)  Page 3

---

prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement.

**GRANTOR'S RIGHT TO POSSESSION AND TO COLLECT ACCOUNTS.** Until default and except as otherwise provided below with respect to accounts, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. Until otherwise notified by Lender, Grantor may collect any of the Collateral consisting of accounts. At any time and even though no Event of Default exists, Lender may exercise its rights to collect the accounts and to notify account debtors to make payments directly to Lender for application to the Indebtedness. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of any Event of Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Any guarantor or Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of any guarantor's or Grantor's property or ability to perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution of Grantor (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or Guarantor dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Mississippi Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or

████████████████████████

# COMMERCIAL SECURITY AGREEMENT
## (Continued)

Loan No: ███3125                               Page 4

Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law. This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Mississippi without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Mississippi.**

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Prohibited Activities.** Notwithstanding anything to the contrary in this Agreement, Grantor shall not be entitled to receive any notice of or right to cure an Event of Default related to any Prohibited Activities.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means KEY THERAPEUTICS, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.



## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Loan No: ████3125        Page 5

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means KEY THERAPEUTICS, LLC.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means The Citizens Bank of Philadelphia, its successors and assigns.

**Note.** The word "Note" means the Note dated March 15, 2024 as renewed and extended by the Note dated June 6, 2025 and executed by KEY THERAPEUTICS, LLC in the principal amount of $2,500,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Prohibited Activities.** The words "Prohibited Activities" mean any activity relating to the use, sale, possession, cultivation, manufacture, storage, distribution, or marketing of cannabis, marijuana, or marijuana-based products which constitutes in any manner a violation of any applicable federal, state, or local law or regulation, regardless of whether applicable conflicting law permits the same.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED JUNE 6, 2025.

GRANTOR:

KEY THERAPEUTICS, LLC

By: _____
    ROBERT W. SIMS, Member/Manager of KEY THERAPEUTICS, LLC

LaserPro, Ver. 25.1.20.003 Copr. Finastra USA Corporation 1997, 2025. All Rights Reserved. - MS C:\LPRO\CFI\LPL\E40.FC TR-52602 PR-82

**RECORDATION REQUESTED BY:**
The Citizens Bank of Philadelphia
Carthage Branch
301 West Main Street
Carthage, MS 39051

**WHEN RECORDED MAIL TO:**
The Citizens Bank of Philadelphia
Carthage Branch
301 West Main Street
Carthage, MS 39051

**SEND TAX NOTICES TO:**
S-7 Properties, LLC
232 Market St Ste K
Flowood, MS 39232-3339 _____ SPACE ABOVE THIS LINE IS FOR RECORDER'S USE ONLY

# ASSIGNMENT OF RENTS

**NOTICE: This Assignment is given as additional security for the Indebtedness, which also is secured by a mortgage or other security instrument on which the recording tax in the full amount of the Indebtedness has already been paid.**

**THIS ASSIGNMENT OF RENTS dated June 6, 2025, is made and executed between S-7 Properties, LLC , whose address is 232 Market Street Building K, Number 252, Flowood, MS 39232-3339 (referred to below as "Grantor") and The Citizens Bank of Philadelphia, whose address is 301 West Main Street, Carthage, MS 39051 (referred to below as "Lender").**

**ASSIGNMENT. For valuable consideration, Grantor hereby assigns, grants a continuing security interest in, and conveys to Lender all of Grantor's right, title, and interest in and to the Rents from the following described Property located in Baldwin County, State of Alabama:**

**See Exhibit "A", which is attached to this Assignment and made a part of this Assignment as if fully set forth herein.**

**The Property or its address is commonly known as 365 E Beach Blvd., Unit 804, Gulf Shores, AL 36542.**

RENEWAL AND EXTENSION. This Assignment of Rents renews and extends the Assignment of Rents recorded as Doc # 2120609 in the Office of the Judge of Probate of Baldwin County, Alabama.

THIS ASSIGNMENT IS GIVEN TO SECURE (1) PAYMENT OF THE INDEBTEDNESS AND (2) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF BORROWER AND GRANTOR UNDER THE NOTE, THIS ASSIGNMENT, AND THE RELATED DOCUMENTS. THIS ASSIGNMENT IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

**GRANTOR'S WAIVERS.** Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

**BORROWER'S WAIVERS AND RESPONSIBILITIES.** Lender need not tell Borrower about any action or inaction Lender takes in connection with this Assignment. Borrower assumes the responsibility for being and keeping informed about the Property. Borrower waives any defenses that may arise because of any action or inaction of Lender, including without limitation any failure of Lender to realize upon the Property, or any delay by Lender in realizing upon the Property. Borrower agrees to remain liable under the Note with Lender no matter what action Lender takes or fails to take under this Assignment.

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Assignment or any Related Documents, Grantor shall pay to Lender all amounts secured by this Assignment as they become due, and shall strictly perform all of Grantor's obligations under this Assignment. Unless and until Lender exercises its right to collect the Rents as provided below and so long as there is no default under this Assignment, Grantor may remain in possession and control of and operate and manage the Property and collect the Rents, provided that the granting of the right to collect the Rents shall not constitute Lender's consent to the use of cash collateral in a bankruptcy proceeding.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that:

**Ownership.** Grantor is entitled to receive the Rents free and clear of all rights, loans, liens, encumbrances, and claims except as disclosed to and accepted by Lender in writing.

**Right to Assign.** Grantor has the full right, power and authority to enter into this Assignment and to assign and convey the Rents to Lender.

**No Prior Assignment.** Grantor has not previously assigned or conveyed the Rents to any other person by any instrument now in force.

**No Further Transfer.** Grantor will not sell, assign, encumber, or otherwise dispose of any of Grantor's rights in the Rents except as provided in this Assignment.

**LENDER'S RIGHT TO RECEIVE AND COLLECT RENTS.** Lender shall have the right at any time, and even though no default shall have occurred under this Assignment, to collect and receive the Rents. For this purpose, Lender is hereby given and granted the following rights, powers and authority:

**Notice to Tenants.** Lender may send notices to any and all tenants of the Property advising them of this Assignment and directing all Rents to be paid directly to Lender or Lender's agent.

**Enter the Property.** Lender may enter upon and take possession of the Property; demand, collect and receive from the tenants or from any other persons liable therefor, all of the Rents; institute and carry on all legal proceedings necessary for the protection of the Property, including such proceedings as may be necessary to recover possession of the Property; collect the Rents and remove any tenant or tenants or other persons from the Property.

**Maintain the Property.** Lender may enter upon the Property to maintain the Property and keep the same in repair; to pay the costs thereof and of all services of all employees, including their equipment, and of all continuing costs and expenses of maintaining the Property in proper repair and condition, and also to pay all taxes, assessments and water utilities, and the premiums on fire and other insurance effected by Lender on the Property.

**Compliance with Laws.** Lender may do any and all things to execute and comply with the laws of the State of Alabama and also all other laws, rules, orders, ordinances and requirements of all other governmental agencies affecting the Property.

**Lease the Property.** Lender may rent or lease the whole or any part of the Property for such term or terms and on such conditions as Lender may deem appropriate.

**Employ Agents.** Lender may engage such agent or agents as Lender may deem appropriate, either in Lender's name or in Grantor's name, to rent and manage the Property, including the collection and application of Rents.

**Other Acts.** Lender may do all such other things and acts with respect to the Property as Lender may deem appropriate and may act exclusively and solely in the place and stead of Grantor and to have all of the powers of Grantor for the purposes stated above.

**No Requirement to Act.** Lender shall not be required to do any of the foregoing acts or things, and the fact that Lender shall have performed one or more of the foregoing acts or things shall not require Lender to do any other specific act or thing.

**APPLICATION OF RENTS.** All costs and expenses incurred by Lender in connection with the Property shall be for Grantor's account and Lender may pay such costs and expenses from the Rents. Lender, in its sole discretion, shall determine the application of any and all Rents received by it; however, any such Rents received by Lender which are not applied to such costs and expenses shall be applied to the Indebtedness. All expenditures made by Lender under this Assignment and not reimbursed from the Rents shall become a part of the Indebtedness secured by this Assignment, and shall be payable on demand, with interest at the Note rate from date of expenditure until paid.

**NO PROHIBITED ACTIVITIES.** Grantor is not engaged in, and the Property shall not be used in connection with, any Prohibited Activities. Neither Borrower nor Grantor shall make any payments to Lender from funds derived from Prohibited Activities. Grantor will include in any agreement for the use, occupancy, or possession of the Property a provision expressly prohibiting any person using, occupying, or possessing the Property from engaging in or permitting others to engage in any Prohibited Activities on the Property. If Grantor becomes aware that any such person is likely engaged in or permitting Prohibited Activities on or at the Property, Grantor shall terminate the agreement and take all actions permitted by law to discontinue or cause the discontinuance of such Prohibited Activities. Borrower and Grantor shall keep Lender fully advised of actions and plans to comply with this section. Borrower and Grantor agree to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Assignment. Notwithstanding any provision in this Assignment or any Related Documents to the contrary, no direct or indirect disclosure to Lender and no knowledge of Lender of the existence of any Prohibited Activities shall estop Lender or waive any right of Lender to invoke any remedy under the Assignment or any Related Documents for any Prohibited Activities.

**FULL PERFORMANCE.** If Grantor pays all of the Indebtedness when due and otherwise performs all the obligations imposed upon Grantor under this Assignment, the Note, and the Related Documents, Lender shall execute and deliver to Grantor a suitable satisfaction of this Assignment and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Property. Any termination fee required by law shall be paid by Grantor, if permitted by applicable law.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Assignment or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Assignment or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Rents or the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Assignment also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of any Event of Default.

**DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Assignment:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Assignment or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**Default on Other Payments.** Failure of Grantor within the time required by this Assignment to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Default in Favor of Third Parties.** Borrower, any guarantor or Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's, any guarantor's or Grantor's property or ability to perform their respective obligations under this Assignment or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Assignment or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Assignment or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Grantor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Borrower's or Grantor's existence as a going business or the death of any member, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against the Rents or any property securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Property Damage or Loss.** The Property is lost, stolen, substantially damaged, sold, or borrowed against.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of any Event of Default and at any time thereafter, Lender may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Borrower or Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty that Borrower would be required to pay.

**Collect Rents.** Lender shall have the right, without notice to Borrower or Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender shall have all the rights provided for in the Lender's Right to Receive and Collect Rents Section, above. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Assignment or the Note or by law.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Assignment, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Assignment, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is

**ASSIGNMENT OF RENTS**
**(Continued)**

Loan No: 3125                                                          **Page 3**

involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Assignment:

**Amendments.** This Assignment, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Assignment. No alteration of or amendment to this Assignment shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Caption Headings.** Caption headings in this Assignment are for convenience purposes only and are not to be used to interpret or define the provisions of this Assignment.

**Governing Law. With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Property, this Assignment will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the State of Alabama. In all other respects, this Assignment will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Mississippi without regard to its conflicts of law provisions. However, if there ever is a question about whether any provision of this Assignment is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Assignment has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of Mississippi.**

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Assignment shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Grantor signing below is responsible for all obligations in this Assignment. Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Assignment.

**Merger.** There shall be no merger of the interest or estate created by this Assignment with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Interpretation.** (1) In all cases where there is more than one Borrower or Grantor, then all words used in this Assignment in the singular shall be deemed to have been used in the plural where the context and construction so require. (2) If more than one person signs this Assignment as "Grantor," the obligations of each Grantor are joint and several. This means that if Lender brings a lawsuit, Lender may sue any one or more of the Grantors. If Borrower and Grantor are not the same person, Lender need not sue Borrower first, and that Borrower need not be joined in any lawsuit. (3) The names given to paragraphs or sections in this Assignment are for convenience purposes only. They are not to be used to interpret or define the provisions of this Assignment.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Assignment unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Assignment shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Assignment. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Assignment, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Prohibited Activities.** Notwithstanding anything to the contrary in this Assignment, neither Borrower nor Grantor shall be entitled to receive any notice of or right to cure an Event of Default related to any Prohibited Activities.

**Notices.** Any notice required to be given under this Assignment shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Assignment. Any party may change its address for notices under this Assignment by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Powers of Attorney.** The various agencies and powers of attorney conveyed on Lender under this Assignment are granted for purposes of security and may not be revoked by Grantor until such time as the same are renounced by Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Assignment to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Assignment. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Assignment shall not affect the legality, validity or enforceability of any other provision of this Assignment.

**Successors and Assigns.** Subject to any limitations stated in this Assignment on transfer of Grantor's interest, this Assignment shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Assignment and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Assignment or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Assignment.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Alabama as to all Indebtedness secured by this Assignment.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Assignment. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Assignment shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Assignment.** The word "Assignment" means the Assignment of Rents recorded as **Doc # 2120609** in the Office of the Judge of Probate of Baldwin County, Alabama as renewed and extended by this Assignment of Rents, as this Assignment of Rents may be amended or modified from time to time, together with all exhibits and schedules attached to this Assignment of Rents from time to time.

**Borrower.** The word "Borrower" means KEY THERAPEUTICS, LLC.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Assignment in the default section of this Assignment.

**Grantor.** The word "Grantor" means S-7 Properties, LLC ·

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Assignment, together with interest on such amounts as provided in this Assignment.

**Lender.** The word "Lender" means The Citizens Bank of Philadelphia, its successors and assigns.

## ASSIGNMENT OF RENTS
### (Continued)

Loan No: ███3125      Page 4

**Note.** The word "Note" means the promissory note dated March 15, 2024 as renewed and extended by the promissory note dated June 6, 2025, **in the original principal amount of $2,500,000.00** from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Prohibited Activities.** The words "Prohibited Activities" mean any activity relating to the use, sale, possession, cultivation, manufacture, storage, distribution, or marketing of cannabis, marijuana, or marijuana-based products which constitutes in any manner a violation of any applicable federal, state, or local law or regulation, regardless of whether applicable conflicting law permits the same.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Assignment" section of this Assignment.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all of Grantor's present and future rights, title and interest in, to and under any and all present and future leases, including, without limitation, all rents, revenue, income, issues, royalties, bonuses, accounts receivable, cash or security deposits, advance rentals, profits and proceeds from the Property, and other payments and benefits derived or to be derived from such leases of every kind and nature, whether due now or later, including without limitation Grantor's right to enforce such leases and to receive and collect payment and proceeds thereunder.

THE UNDERSIGNED ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS ASSIGNMENT, AND NOT PERSONALLY BUT AS AN AUTHORIZED SIGNER, HAS CAUSED THIS ASSIGNMENT TO BE SIGNED AND EXECUTED ON BEHALF OF GRANTOR ON JUNE 6, 2025.

THIS ASSIGNMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS ASSIGNMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GRANTOR:

S-7 PROPERTIES, LLC

By: _____ (Seal)
    Robert W. Sims, Sole Member/Managing Member of
    S-7 Properties, LLC

---

This ASSIGNMENT OF RENTS prepared by:

    Name: Amy Pigg, Commercial Loan Processor
    Address: 301 West Main Street
    City, State, ZIP: Carthage, MS 39051

---

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF ___Mississippi___ )
                                   ) SS
COUNTY OF ___Rankin___ )

I, the undersigned authority, a Notary Public in and for said county in said state, hereby certify that **Robert W. Sims, Sole Member/Managing Member of S-7 Properties, LLC ,** a limited liability company, is signed to the foregoing Assignment and who is known to me, acknowledged before me on this day that, being informed of the contents of said Assignment, he or she, as such member and with full authority, executed the same voluntarily for and as the act of said limited liability company.

Given under my hand and official seal this ___3rd___ day of ___July___, 20__25__.

_____
                                  Notary Public

My commission expires _____

*(Notary seal: STATE OF MISSISSIPPI, NOTARY PUBLIC, ID# 102360, NATALIE BOYDETTE, Commission Expires May 24, 2028, MADISON COUNTY)*

**Exhibit "A"**

Unit 804, of San Carlos, a condominium, according to that certain Declaration and all exhibits attached thereto, including the By-Laws, dated August 25, 2006, and recorded August 30, 2006 at Instrument 997847, and being more particularly described and defined by Architect's Certification Drawings filed in Apartment Book 24, Page 204, et seq., of the records in the Office of the Judge of Probate of Baldwin County, Alabama, TOGETHER WITH the appropriate undivided interest in the common areas and facilities declared in said Declaration to be appurtenant to the above described unit.

# APPRAISAL NOTICE

| Borrower: | KEY THERAPEUTICS, LLC<br>232 MARKET ST BUILDING K NUMBER 252<br>FLOWOOD, MS  39232 | Lender: | The Citizens Bank of Philadelphia<br>Carthage Branch<br>301 West Main Street<br>Carthage, MS  39051<br>(601) 267-4525 |
|---|---|---|---|

Document Date: 03/12/2025

We may order an appraisal to determine the property's value and charge you for this appraisal.  We will promptly give you a copy of any appraisal, even if your loan does not close.

You can pay for an additional appraisal for your own use at your own cost.

By signing below, you acknowledge receipt of this Appraisal Notice.

BORROWER:

KEY THERAPEUTICS, LLC

By: _____
ROBERT   W.   SIMS,   Member/Manager   of   KEY
THERAPEUTICS, LLC

GRANTOR:

S-7 PROPERTIES, LLC

By: _____
Robert W. Sims, Sole Member/Managing Member of
S-7 Properties, LLC

LaserPro, Ver. 25.1.20.003 Copr. Finastra USA Corporation 1997, 2025.   All Rights Reserved.   - MS  C:\LPRO\CFI\LPL\G60.FC  TR-52602  PR-62



[redacted]

# APPRAISAL ACKNOWLEDGMENT AND OF DELIVERY TIMING REQUIREMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,500,000.00 | 06-06-2025 | 06-06-2026 | [redacted]3125 | 1C2A / 3801 | *** | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** KEY THERAPEUTICS, LLC
232 MARKET ST BUILDING K NUMBER 252
FLOWOOD, MS 39232

**Lender:** The Citizens Bank of Philadelphia
Carthage Branch
301 West Main Street
Carthage, MS 39051
(601) 267-4525

**Property Address: 365 E. Beach Blvd, Unit 804 Gulf Shores, AL 36542 DATE: 06/06/2026**

Acknowledgment of Receipt of Appraisal/Valuation Report

By signing below, I acknowledge that I have been provided a copy of the appraisal or valuation report for the above-referenced property. The appraisal or valuation report was provided to me at least three (3) business days prior to closing of the loan.

**BORROWER:**

**KEY THERAPEUTICS, LLC**

By:______________________________
ROBERT W. SIMS, Member/Manager of KEY THERAPEUTICS, LLC

**GRANTOR:**

**S-7 PROPERTIES, LLC**

By:______________________________
Robert W. Sims, Sole Member/Managing Member of S-7 Properties, LLC

LaserPro, Ver. 25.1.20.003 Copr. Finastra USA Corporation 1997, 2025. All Rights Reserved. - MS C:\LPRO\CFI\LPL\G60.FC TR-52602 PR-82

# CERTIFICATION AND AUTHORIZATION

| Borrower: | KEY THERAPEUTICS, LLC<br>232 MARKET ST BUILDING K NUMBER 252<br>FLOWOOD, MS 39232 | Lender: | The Citizens Bank of Philadelphia<br>Carthage Branch<br>301 West Main Street<br>Carthage, MS 39051<br>(601) 267-4525 |
|---|---|---|---|

**Application Date: 03/12/2025**

**CERTIFICATION**

To The Citizens Bank of Philadelphia ("Lender:):

1. Applicant (and Co-Applicant if applicable), has applied for a loan from Lender. In applying for the loan, Applicant provided to Lender various information about Applicant and the requested loan, such as the amount and source of any downpayment, income information, and assets and liabilities. Applicant certifies that all of the information is true and complete. Applicant made no misrepresentations to Lender, nor did Applicant omit any information.

2. Applicant understands and agrees that Lender may verify any information provided to Lender concerning Applicant's application, including, but without limitation, verifications from financial institutions of the information provided.

3. Applicant fully understands that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements when applying for this loan, as applicable under the provisions of Title 18, United States Code,, Section 1014.

**AUTHORIZATION TO RELEASE INFORMATION**

To Whom It May Concern:

1. Applicant has applied for a loan from The Citizens Bank of Philadelphia ("Lender"). As a part of the application process, Lender, any insurer of the loan and any collateral title insurer may verify information Applicant provided to Lender either before or after the Loan closed.

2. Applicant authorizes you to provide to Lender, to any investor to whom Lender may sell Applicant's loan, and to any insurer of the loan any and all information and documentation that they may request.  such information may include, but is not limited to, income; bank, money market, and similar account balances; credit history; and copies of income tax returns.

3. Lender, any investor that purchases the loan, and any insurer of the loan may address and send this authorization to any person or company named in the loan application.

4. A copy of this authorization may be accepted as an original.

5. Your prompt reply to The Citizens Bank of Philadelphia to any investor that purchases the loan, and to any insurer of the loan is appreciated.

**BORROWER:**

KEY THERAPEUTICS, LLC

By: _____

ROBERT  W.  SIMS,  Member/Manager  of  KEY THERAPEUTICS, LLC

# CANNABIS DISCLOSURE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,500,000.00 | 06-06-2025 | 06-06-2026 | [redacted]3125 | 1C2A / 3801 | *** | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** KEY THERAPEUTICS, LLC
232 MARKET ST BUILDING K NUMBER 252
FLOWOOD, MS 39232

**Lender:** The Citizens Bank of Philadelphia
Carthage Branch
301 West Main Street
Carthage, MS 39051
(601) 267-4525

The Federal Controlled Substances Act of 1970 makes the possession, manufacture or distribution of marijuana a federal crime. It also makes it illegal for The Citizens Bank to provide banking services to you if you engage in any such activity involving marijuana. Many states have legalized the use of marijuana for medical, recreational or other purposes, and some banks have elected to provide banking services to marijuana related businesses despite the prohibition under federal law based on promises made by the federal government that it will not enforce those laws in certain circumstances so long as the banks involved dedicate significant resources toward monitoring and reporting on the related marijuana activity. The Citizens Bank is not one of them.

The legalization of marijuana by specific states does not override existing federal laws, and there is a significant risk for banks doing business with marijuana-related businesses that The Citizens Bank has elected to avoid by not providing banking services to marijuana-related businesses. Marijuana-related businesses may include businesses that indirectly provide goods and services to the marijuana industry and/or receive marijuana related revenue as well as those that directly possess, manufacture or distribute marijuana. For example, a customer of the bank that owns real estate that leases space to a marijuana dispensary or any other marijuana related business would be a marijuana related business that The Citizens Bank is prohibited from provided banking services to under existing federal law.

By signing below, I acknowledge that I understand The Citizens Bank policy for not banking marijuana businesses, and I agree, as a condition to my loan with The Citizens Bank, to not engage in marijuana related activity in connection with my loan from The Citizens Bank. A breach of my obligations stated herein shall be considered a default of my promissory note and any other related loan documents, including but not limited to a deed of trust related to my loan.

BORROWER:

KEY THERAPEUTICS, LLC

By: ______________________________
ROBERT W. SIMS, Member/Manager of KEY THERAPEUTICS, LLC

GRANTOR:

S-7 PROPERTIES, LLC

By: ______________________________
Robert W. Sims, Sole Member/Managing Member of S-7 Properties, LLC

LaserPro, Ver. 25.1.20.003 Copr. Finastra USA Corporation 1997, 2025. All Rights Reserved. - MS C:\LPRO\CFI\LPL\G60.FC TR-52602 PR-82



[redacted]

# AGREEMENT TO PROVIDE INSURANCE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,500,000.00 | 06-06-2025 | 06-06-2026 | [redacted]3125 | 1C2A / 3801 | *** | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** KEY THERAPEUTICS, LLC
232 MARKET ST BUILDING K NUMBER 252
FLOWOOD, MS 39232

**Lender:** The Citizens Bank of Philadelphia
Carthage Branch
301 West Main Street
Carthage, MS 39051
(601) 267-4525

**Grantor:** S-7 Properties, LLC
232 Market St Ste K
Flowood, MS 39232-3339

**INSURANCE REQUIREMENTS.** Grantor, S-7 Properties, LLC ("Grantor"), understands that insurance coverage is required in connection with the extending of a loan or the providing of other financial accommodations to KEY THERAPEUTICS, LLC ("Borrower") by Lender. These requirements are set forth in the security documents for the loan. The following minimum insurance coverages must be provided on the following described collateral (the "Collateral"):

Collateral: **365 E Beach Blvd., Unit 804, Gulf Shores, AL 36542.**
**Type:** Fire and extended coverage.
**Amount:** Full Insurable Value.
**Basis:** Replacement value.
**Endorsements:** Standard mortgagee's clause with stipulation that coverage will not be cancelled or diminished without a minimum of 20 days prior written notice to Lender, and without disclaimer of the insurer's liability for failure to give such notice.
**Latest Delivery Date:** By the loan closing date.

**INSURANCE COMPANY.** Grantor may obtain insurance from any insurance company Grantor may choose that is reasonably acceptable to Lender. Grantor understands that credit may not be denied solely because insurance was not purchased through Lender.

**FLOOD INSURANCE.** Flood Insurance for the Collateral securing this loan is described as follows:

**Real Estate at 365 E Beach Blvd., Unit 804, Gulf Shores, AL 36542.**
Should the Collateral at any time be deemed to be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area. Grantor agrees to obtain and maintain flood insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan. Flood insurance may be purchased under the National Flood Insurance Program, from private insurers providing "private flood insurance" as defined by applicable federal flood insurance statutes and regulations, or from another flood insurance provider that is both acceptable to Lender in its sole discretion and permitted by applicable federal flood insurance statutes and regulations.

**FAILURE TO PROVIDE INSURANCE.** Grantor agrees to deliver to Lender, on the latest delivery date stated above, evidence of the required insurance as provided above, with an effective date of June 6, 2025, or earlier. Grantor acknowledges and agrees that if Grantor fails to provide any required insurance or fails to continue such insurance in force, Lender may do so at Grantor's expense as provided in the applicable security document. The cost of any such insurance, at the option of Lender, shall be added to the indebtedness as provided in the security document. GRANTOR ACKNOWLEDGES THAT IF LENDER SO PURCHASES ANY SUCH INSURANCE, THE INSURANCE WILL PROVIDE LIMITED PROTECTION AGAINST PHYSICAL DAMAGE TO THE COLLATERAL, UP TO AN AMOUNT EQUAL TO THE LESSER OF (1) THE UNPAID BALANCE OF THE DEBT, EXCLUDING ANY UNEARNED FINANCE CHARGES, OR (2) THE VALUE OF THE COLLATERAL; HOWEVER, GRANTOR'S EQUITY IN THE COLLATERAL MAY NOT BE INSURED. IN ADDITION, THE INSURANCE MAY NOT PROVIDE ANY PUBLIC LIABILITY OR PROPERTY DAMAGE INDEMNIFICATION AND MAY NOT MEET THE REQUIREMENTS OF ANY FINANCIAL RESPONSIBILITY LAWS.

**AUTHORIZATION.** For purposes of insurance coverage on the Collateral, Grantor authorizes Lender to provide to any person (including any insurance agent or company) all information Lender deems appropriate, whether regarding the Collateral, the loan or other financial accommodations, or both.

**GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS AGREEMENT TO PROVIDE INSURANCE AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED JUNE 6, 2025.**

**GRANTOR:**

**S-7 PROPERTIES, LLC**

By: ______________________________
Robert W. Sims, Sole Member/Managing Member of S-7 Properties, LLC

**FOR LENDER USE ONLY**
**INSURANCE VERIFICATION**

DATE: ____________________ PHONE ____________________

AGENT'S NAME: ____________________
AGENCY: ____________________
ADDRESS: ____________________
INSURANCE COMPANY: **Lexington Insurance Company**
POLICY NUMBER: **017194681-03**
EFFECTIVE DATES: ____________________

COMMENTS: ____________________

LaserPro, Ver. 25.1.20.003 Copr. Finastra USA Corporation 1997, 2025. All Rights Reserved. - MS C:\LPRO\CFI\LPL\I10.FC TR-52602 PR-82



# AGREEMENT TO PROVIDE INSURANCE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,500,000.00 | 06-06-2025 | 06-06-2026 | ███ 3125 | 1C2A / 3801 | *** | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Grantor:** KEY THERAPEUTICS, LLC
232 MARKET ST BUILDING K NUMBER 252
FLOWOOD, MS  39232

**Lender:** The Citizens Bank of Philadelphia
Carthage Branch
301 West Main Street
Carthage, MS  39051
(601) 267-4525

**INSURANCE REQUIREMENTS.** Grantor, KEY THERAPEUTICS, LLC ("Grantor"), understands that insurance coverage is required in connection with the extending of a loan or the providing of other financial accommodations to Grantor by Lender. These requirements are set forth in the security documents for the loan. The following minimum insurance coverages must be provided on the following described collateral (the "Collateral"):

Collateral:

**Type:** All risks, including fire, theft and liability.
**Amount:** Full Insurable Value.
**Basis:** Replacement value.
**Endorsements:** Lender loss payable clause with stipulation that coverage will not be cancelled or diminished without a minimum of 20 days prior written notice to Lender.
**Latest Delivery Date:** By the loan closing date.

**INSURANCE COMPANY.** Grantor may obtain insurance from any insurance company Grantor may choose that is reasonably acceptable to Lender. Grantor understands that credit may not be denied solely because insurance was not purchased through Lender.

**FAILURE TO PROVIDE INSURANCE.** Grantor agrees to deliver to Lender, on the latest delivery date stated above, proof of the required insurance as provided above, with an effective date of June 6, 2025, or earlier. Grantor acknowledges and agrees that if Grantor fails to provide any required insurance or fails to continue such insurance in force, Lender may do so at Grantor's expense as provided in the applicable security document. The cost of any such insurance, at the option of Lender, shall be added to the indebtedness as provided in the security document. GRANTOR ACKNOWLEDGES THAT IF LENDER SO PURCHASES ANY SUCH INSURANCE, THE INSURANCE WILL PROVIDE LIMITED PROTECTION AGAINST PHYSICAL DAMAGE TO THE COLLATERAL, UP TO AN AMOUNT EQUAL TO THE LESSER OF (1) THE UNPAID BALANCE OF THE DEBT, EXCLUDING ANY UNEARNED FINANCE CHARGES, OR (2) THE VALUE OF THE COLLATERAL; HOWEVER, GRANTOR'S EQUITY IN THE COLLATERAL MAY NOT BE INSURED. IN ADDITION, THE INSURANCE MAY NOT PROVIDE ANY PUBLIC LIABILITY OR PROPERTY DAMAGE INDEMNIFICATION AND MAY NOT MEET THE REQUIREMENTS OF ANY FINANCIAL RESPONSIBILITY LAWS.

**AUTHORIZATION.** For purposes of insurance coverage on the Collateral, Grantor authorizes Lender to provide to any person (including any insurance agent or company) all information Lender deems appropriate, whether regarding the Collateral, the loan or other financial accommodations, or both.

**GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS AGREEMENT TO PROVIDE INSURANCE AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED JUNE 6, 2025.**

**GRANTOR:**

**KEY THERAPEUTICS, LLC**

By: _____
ROBERT W. SIMS, Member/Manager of KEY THERAPEUTICS, LLC

---

FOR LENDER USE ONLY
INSURANCE VERIFICATION

DATE: _____     PHONE _____

AGENT'S NAME: _____
AGENCY: _____
ADDRESS: _____
INSURANCE COMPANY: _____
POLICY NUMBER: _____
EFFECTIVE DATES: _____

COMMENTS: _____

LaserPro, Ver. 25.1.20.003 Copr. Finastra USA Corporation 1997, 2025.  All Rights Reserved.  - MS  C:\LPRO\CFI\LPL\I10.FC  TR-52002  PR-82



[redacted]

# DISBURSEMENT REQUEST AND AUTHORIZATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,500,000.00 | 06-06-2025 | 06-06-2026 | [redacted]3125 | 1C2A / 3801 | *** | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** KEY THERAPEUTICS, LLC
232 MARKET ST BUILDING K NUMBER 252
FLOWOOD, MS 39232

**Lender:** The Citizens Bank of Philadelphia
Carthage Branch
301 West Main Street
Carthage, MS 39051
(601) 267-4525

**LOAN TYPE.** This is a Fixed Rate (8.550%) Nondisclosable Loan to a Limited Liability Company for $2,500,000.00 due on June 6, 2026.

**PRIMARY PURPOSE OF LOAN.** The primary purpose of this loan is for:

☐ **Personal, Family, or Household Purposes or Personal Investment.**

☒ **Business (Including Real Estate Investment).**

**SPECIFIC PURPOSE.** The specific purpose of this loan is: TO RENEW LOAN NUMBER 33113125.

**REAL ESTATE DOCUMENTS.** If any party to this transaction is granting a security interest in any real property to Lender and Borrower is not also a party to the real estate document or documents (the "Real Estate Documents") granting such security interest, Borrower agrees to perform and comply with the Real Estate Documents just as if Borrower has signed as a direct and original party to the Real Estate Documents. This means Borrower agrees to all the representations and warranties made in the Real Estate Documents. In addition, Borrower agrees to perform and comply strictly with all the terms, obligations and covenants to be performed by either Borrower or any Grantor or Trustor, or both, as those words are defined in the Real Estate Documents. Lender need not tell Borrower about any action or inaction Lender takes in connection with the Real Estate Documents. Borrower assumes the responsibility for being and keeping informed about the property. Borrower also waives any defenses that may arise because of any action or inaction of Lender, including without limitation any failure of Lender to realize upon the property, or any delay by Lender in realizing upon the property.

**DISBURSEMENT INSTRUCTIONS.** Borrower understands that all loan proceeds have previously been disbursed.

| | |
|---|---|
| **Amount paid to Borrower directly:** | $2,546,519.84 |
| $2,546,519.84 Deposited to Loan Account # 33113125 | |
| **Other Funds Contributed:** | ($46,519.84) |
| $46,519.84 Borrower to Pay Interest | |
| **Note Principal:** | $2,500,000.00 |

**CHARGES PAID IN CASH.** Borrower has paid or will pay in cash as agreed the following charges:

| | |
|---|---|
| **Prepaid Finance Charges Paid in Cash:** | $5,450.00 |
| $450.00 Documentaion Fee | |
| $5,000.00 Origination Fee | |
| **Other Charges Paid in Cash:** | $39,414.85 |
| $74.00 Recording | |
| $16.50 Credit Report Fee | |
| $39,324.35 Attorney Fee | |
| **Total Charges Paid in Cash:** | $44,864.85 |

**FINANCIAL CONDITION. BY SIGNING THIS AUTHORIZATION, BORROWER REPRESENTS AND WARRANTS TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN BORROWER'S FINANCIAL CONDITION AS DISCLOSED IN BORROWER'S MOST RECENT FINANCIAL STATEMENT TO LENDER. THIS AUTHORIZATION IS DATED JUNE 6, 2025.**

**BORROWER:**

**KEY THERAPEUTICS, LLC**

**By:** ______________________________
ROBERT W. SIMS, Member/Manager of KEY THERAPEUTICS, LLC

LaserPro, Ver. 25.1.20.003 Copr. Finastra USA Corporation 1997, 2025. All Rights Reserved. - MS C:\LPRO\CFI\LPL\I20.FC TR-52602 PR-82